UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PINK GOOSE (CAYMAN) LTD.,

Plaintiff,

- against -

SUNWAY TRADERS LLC, SUNWAY GROUP, SUNWAY TRADING GROUP LTD., SUNWAY GROUP INTERNATIONAL HOLDINGS, SUNWAY GROUP IMPORT, SUNWAY LOGISTICS, and LINTON EQUITIES B.V.I.,

Defendants.

08 CV 2351

ECF CASE (HB)

**VERIFIED COMPLAINT**

Plaintiff, PINK GOOSE (CAYMAN) LTD. (hereafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy, and Lennon, LLC, as and for its Verified Complaint against the Defendants, SUNWAY TRADERS LLC, SUNWAY GROUP, SUNWAY TRADING GROUP LTD., SUNWAY GROUP INTERNATIONAL HOLDINGS, SUNWAY GROUP IMPORT, SUNWAY LOGISTICS and LINTON EQUITIES B.V.I. alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2. At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law.

3. Defendants Sunway Group, Sunway Trading Group Ltd., Sunway Group International Holdings, Sunway Group Import, Sunway Logistics and Linton Equities B.V.I (hereinafter "Sunway Defendants") are foreign corporations, or other business entities, organized under, and existing by virtue of, foreign law and are engaged in the importation of bananas into Russia.

4. Defendant Sunway Traders LLC (hereinafter "Sunway Traders") is a liability company organized under, and existing by virtue of, the laws of Delaware and is engaged in the importation of bananas into Russia.

5. Plaintiff is the owner of the M/V ARCTIC GOOSE, which it chartered to Defendant Sunway Traders pursuant to a charter party contract dated July 4, 2001 for the carriage of a cargo of bananas to Russia. Disputes arose under the charter party in respect of Sunway Traders' failure to pay outstanding sums for vessel demurrage and vessel detention that were due and owing to Plaintiff. Sunway Traders breached the charter party when it failed to pay these outstanding amounts to Plaintiff.

6. Pursuant to the arbitration clause of the charter party, Plaintiff commenced London arbitration proceedings against Sunway Traders, who were the charterers, and Prodmix-Yug Ltd., who was the consignee. On August 7, 2002 the arbitrator made an award in Plaintiff's favor in the sum of $78,494.79 with respect to demurrage and $572,250.00 with respect to damages for detention. Plaintiff was also awarded its costs and fees. Sunway Traders and Prodmix-Yug Ltd. were also ordered to pay the arbitrator's fee of £4,460. *See arbitration award attached as Exhibit 1.*

7. In response to the award against it, Sunway Traders failed not only to pay any part of the award, but also actively thwarted all of Plaintiff's attempts to collect by continuing its

business of importing bananas into Russia but under various aliases and/or through various other related company names including Sunway Group, Sunway Trading Group Ltd., Sunway Group International Holdings, Sunway Group Import, Sunway Logistics, and Linton Equities B.V.I..

8. Plaintiff brings this action and prays for the issuance of an ex parte order of maritime attachment pursuant to Supplemental Admiralty Rule B of the Federal Rule of Civil Procedure against the Defendants to obtain jurisdiction and to obtain pre-judgment security for its claim that was the subject of the arbitration.

9. Plaintiff was awarded the following amounts in the arbitration:

| | | |
|---|---|---|
| A. | Demurrage claim | $78,494.79 |
| B. | Awarded interest on demurrage claim at 4%, compounded quarterly from 10/2/01-10/2/11 | $38,373.26 |
| C. | Detention claim | $572,250.00 |
| D. | Awarded interest on detention claim at 4%, compounded quarterly from 10/27/01-10/2/11 | $283,150.11 |
| E. | Arbitrator's fee of £4,460. | $8,953.43 |
| F. | Awarded interest on payment of Abitrators fee at 6% compounded Quarterly from 10/27/01 to 10/2/11 | $7,385.27 |
| **Total** | | **$988,606.86** |

10. Upon information and belief, Sunway Defendants are aliases, alter-egos, joint venturers and/or successors in interest of Sunway Traders.

11. Upon information and belief, Sunway Traders was merely a shell-corporation through which the other Sunway Defendants conducted their business of chartering vessels and importing bananas into Russia, or vice versa.

12. Upon information and belief, Sunway Traders and the Sunway Defendants share or shared common ownership, operation, and premises.

13. Upon information and belief, Sunway Traders and the Sunway Defendants are or were situated at the same addresses in St. Petersburg, Russia, *e.g.*, Maly Ave., Petrogradskaya Storona, and/or 106 Kroverskaya 29/37, 191119.

14. Upon information and belief, in an effort to frustrate creditors such as the Plaintiff, Sunway Traders reorganized itself into Sunway Group and/or Sunway Trading Group Ltd. and/or Sunway Group International Holdings based in St. Petersburg, Russia, which companies currently carry out or direct the same business of Sunway Trading, *i.e.*, importing bananas into Russia.

15. Upon information and belief, the assets and liabilities of Sunway Traders were assumed by the Sunway Defendants.

16. Upon information and belief, Sunway Defendants have no separate, independent identity from Sunway Traders.

17. Upon information and belief, Sunway Traders is owned, operated and controlled by the Sunway Defendants.

18. On their website, the Sunway Defendants confirm that their business of importing bananas into Russia predated the formation of the "Sunway Group" and, in fact, existed at a time when Sunway Traders was the only "Sunway" company carrying on such activities.

19. Upon information and belief, Sunway Traders and/or the individual companies within the Sunway Group are under-capitalized.

20. Upon information and belief, Sunway Group and the Sunway Defendants are several companies which are operated, controlled and managed as a single economic enterprise

known as the "Sunway Group" and/or the "Sunway Trading Group" and/or Sunway Group International Holdings which is ultimately controlled by common and overlapping directors, officers, and managers from their base of operations in St. Petersburg, Russia.

21. Among the common and/or overlapping directors, officers, and/or managers of Sunway Trading and the Sunway Defendants are Mr. Igor Khaiak, Mr. Sergey Okhremenko, and Mr. Shalmi Benjaminov. By way of example, Mr. Shalmi Benjaminov, who is the president and majority shareholder of Sunway Traders, is also the president and CEO of the Sunway Group and/or Sunway Trading Group Ltd. and/or Sunway Group International Holdings.

22. Upon information and belief, Sunway Logistics and Linton Equities are companies that act as the chartering arm of Sunway Traders and the Sunway Defendants and all these companies are effectively one and the same.

23. By email of October 16, 2007, one or all of the Sunway Defendants within the Sunway Group recognized their overlapping relationship with Sunway Traders when they inquired about the possibility of chartering one of Plaintiff's ships. In respect of their efforts to charter Plaintiff's ship, Sunway Defendants' email stated that any future charter must be "subject to Owners [Plaintiff's] official confirmation that they will not act by any means against Charterers/shippers/receivers for any matters not connected with this charterparty." This is a reference to the dispute that was the subject of the London arbitration and is the subject of the instant lawsuit. *See email of October 16, 2007 from Sunway Group to Plaintiff attached as Exhibit 2.*

24. Based on the foregoing, as well as other activities of the Sunway Defendants, Sunway Traders and the Sunway Defendants should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the

other, and all assets of the Sunway Defendants susceptible to attachment and/or restraint for the debts of Sunway Trading.

25.    By virtue of the foregoing, the Sunway Defendants are properly considered a party to the subject contract as the alter ego or successor in interest of Sunway Traders.

26.    The Sunway Defendants are the alter egos of Sunway Traders because they dominate and disregard Sunway Traders' corporate form to the extent that the Sunway Defendants are actually carrying on Sunway Traders' business and operations as if the same were their own, or vice versa.

27.    In the alternative, Sunway Traders and the Sunway Defendants are partners and/or are joint venturers.

28.    In the further alternative, Sunway Traders and the Sunway Defendants are affiliated companies such that the Sunway Defendants are now, or will soon be, holding assets belonging to Sunway Traders, or vice versa.

29.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

30.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendants, in the amount **$988,606.86** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C. That this Court recognize and confirm the arbitration award, or alternatively enforce any foreign judgment confirming the arbitration award, rendered on the claims set forth herein as a Judgment of this Court.

D. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E. That this Court enter judgment against SUNWAY TRADERS LLC, SUNWAY GROUP, SUNWAY TRADING GROUP LTD., SUNWAY GROUP INTERNATIONAL

HOLDINGS, SUNWAY GROUP IMPORT, SUNWAY LOGISTICS and LINTON EQUITIES B.V.I. in the amount of $988,606.86;

F. That this Court award the Plaintiff its attorneys' fees and costs of this action; and

G. That the Plaintiff have such other, further and different relief as the Court

Dated: New York, NY
March 6, 2008

The Plaintiff,
PINK GOOSE (CAYMAN) LTD.,

By: ______________________

Nancy R. Peterson
Charles E. Murphy
Anne C. LeVasseur
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050
Fax (212) 490-6070
cem@lenmur.com
pfl@lenmur.com
nrp@lenmur.com

ATTORNEY'S VERIFICATION

State of New York )
) ss.: City of New York
County of New York )

1. My name is ~~Charles E. Murphy.~~ Nancy R. Peterson

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: New York, NY
March 6, 2008

Nancy R. Peterson

Exhibit 1

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN

PINK GOOSE (CAYMAN) LIMITED — Claimants (Owners)

and

SUNWAY TRADERS — First Respondents (Charterers)

PRODMIX-YUG LTD — Second Respondents, Consignees under Bills of Lading (Consignees)

M.V. "ARCTIC GOOSE"

CHARTER PARTY DATED 4 JULY 2001

BILLS OF LADING NOS.1-4 DATED 18 JULY 2001

FINAL ARBITRATION AWARD

WHEREAS:

1. By a fixture as evidenced by a fixture recapitulation dated 4 July 2001 based on an amended GENCON 'Box Type' Charter Party the Claimants (hereinafter referred to as "the Owners") chartered the "ARCTIC GOOSE" to the First Respondents (hereinafter referred to as "the Charterers") for the carriage of up to a full cargo of fresh green bananas in cartons from Ecuador to St Petersburg/North Continent/Lower Baltic. After loading at Puerto Bolivar, Bills of Lading Nos.1, 2, 3 and 4 were issued with the Second Respondents (hereinafter referred to as "the Consignees") named on the face of the Bills of Lading as Consignees. The discharge was subsequently varied to Mediterranean and Black Sea.

2. Box 25 of the Charter Party provided:-

"Law and Arbitration (....Place of Arbitration) (if not filled in 19(a) shall apply)(Cl.19)".

Clause 19 of the Charter Party provided:-

"Law and Arbitration

(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed

shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final...."

3. Disputes did arise between the parties as detailed hereunder and on 18 September 2001 the Owners' solicitors appointed me, the undersigned, Timothy Rayment of 47 Castelnau, London SW13 9RT as arbitrator under the Charter Party and the Bills of Lading. I am a full member of the London Maritime Arbitrators Association and The Baltic Exchange. On the same day, their solicitors called upon the Charterers to appoint an arbitrator of their choice within 14 days.

4. I now set out in considerable detail the challenge to my jurisdiction made by Remedy Law Office ("Remedy") who were both the Charterers' and the Consignees' solicitors in St Petersburg. The reason for this detail is that, during exchanges subsequent to my Interim Award where I held that I did have jurisdiction on all the substantive matters of the Owners' claim, Remedy continued to challenge my jurisdiction. As I have said, that was despite the fact that I had issued an Award where I held that I did have jurisdiction of these matters and furthermore they had been sent a copy of the Award on 15 October 2001. There was no evidence that they had lodged an appeal against my decision. Additionally, I considered that as far as the matter of jurisdiction was concerned, I was, in any event, 'functus officio' and therefore could not assist in their continuing challenges.

5. On 2 October, Remedy sent a message wherein they advised that the Consignees had commenced

arbitration proceedings against the Owners in the Arbitration Court of Krasnodarskiy Region of Russia. It was evident that the Charterers were initially not involved in those proceedings although they become a party at a later stage.

6. Remedy applied to me for a stay in the arbitration proceedings in respect of the Charter Party. They argued that there was a lack of jurisdiction in the arbitration in London and they contended that, until a decision was reached regarding the matter of jurisdiction between the Consignees and the Owners in the Arbitration Court of Krasnodarskiy Region of Russia, I should not proceed.

7. The Owners did not agree. They submitted that the Charter Party and the Bills of Lading, the latter by incorporating the terms, conditions, exceptions and arbitration clause of the Charter Party, provided for arbitration in London and therefore there was no need to stay the proceedings.

8. It was clear, therefore, that the parties were in dispute as to a) the correct place for arbitration under the Bills of Lading and b) whether I had jurisdiction with Remedy intimating that point b) applied both to the Bills of Lading and the Charter Party. To avoid any misunderstanding and for the sake of clarity, I have considered both the Charter Party and the Bills of Lading.

9. Remedy submitted that although proceedings had been commenced by the Consignees in the Russian Court on 31 August, which was before the Owners appointed me as arbitrator, no

applications from the Owners objecting to the jurisdiction of the Russian Court had yet been considered by that Court.

10. The Owners rejected that submitting that they had made an application in Russia disputing the jurisdiction of the Russian Court. They contended that, even if the Russian Court did decide that it had jurisdiction, it did not alter the fact that under English law the law governing both the Charter Party and the Bills of Lading gave jurisdiction to me.

11. Remedy requested that the arbitration proceedings in London be stayed until the Russian Court gave its decision for the following three reasons:-

a) the proceedings in Russia had been commenced before the Owners had appointed their arbitrator in London; and

b) no applications had been considered at this time by the Russian Court with regard to the jurisdiction of the Court and no decisions of any such kind had come into force; and

c) there was a lack of jurisdiction of the arbitration in London until the Russian Court gave its decision regarding jurisdiction.

Remedy further submitted that the parties should be free as to how their disputes were resolved as provided for by Section 1(b) of the Arbitration Act 1996.

12. The Owners accepted that as being correct but contended that the parties had agreed both

in the Charter Party and the Bills of Lading that all disputes should be referred to London arbitration and accordingly that is where the disputes should be determined and therefore the Consignees should discontinue the proceedings in Russia.

13. I was not persuaded that Remedy's reliance on Section 1(b) was of assistance. It was not disputed that the parties had freely entered into the fixture and they had obviously reached agreement that arbitration under the Charter Party was to be in London with English law to apply.

14. During the exchanges of submissions Remedy, on behalf of the Charterers, raised no objection to my appointment as arbitrator under the Charter Party. The Owners advised Remedy that if they failed to appoint their own arbitrator within the 14 day period provided for by Clause 19(a) of the Charter Party then they would proceed to appoint me as sole arbitrator.

15. Remedy made no argument against that and merely applied for a stay of the arbitration proceedings. Subsequently, on 9 October, I advised the parties that I had accepted the appointment as sole arbitrator in accordance with Section 17 of the Arbitration Act 1996.

16. The seat of this arbitration is London, England and the London Maritime Arbitrators Association Terms (1997) apply, my having accepted my appointment on those Terms.

17. On 15 October 2001 I published an Interim Final Declaratory Arbitration Award wherein I

18

declared and held that I had jurisdiction in both of the matters namely a) between the Owners and the Charterers under the Charter Party and b) between the Owners and the Consignees under the Bills of Lading and English law was to apply in both instances.

18. Subsequent to that Interim Award the Owners claimed the following:-

(a) demurrage of US$78,494.79 from the Charterers;

(b) a declaration that the Owners are not liable to the Consignees and/or the Charterers for any damage or shortage arising out of the Charter Party and the Bills of Lading issued pursuant thereto;

(c) a declaration that the Charterers and the Consignees are obliged to indemnify the Owners in respect of any amounts which the Owners may be required to pay to either the Consignees or the Charterers in respect of the above cargo damage or alleged shortage; and

(d) damages for detention from the Charterers and the Consignees for the period 2 September to 21 December 2001 in the sum of US$572,250.00.

19. The Owners also claimed interest and costs. The Charterers and the Consignees denied liability and counterclaimed for the alleged damaged cargo, for the alleged shortlanding and associated costs. Although no quantum accompanied their claim as such it was evident

19

from the Owners' submissions that the Charterers and the Consignees had lodged a claim in the sum of US$550,127.84. That claim was contained in a fax sent to the Owners on 3 September 2001 (the day after completion of discharge) and it was in effect a settlement offer which clearly was not taken up. (Although it was of no relevance in view of my decision regarding jurisdiction, it was evident that the Consignees were claiming in the Russian arbitration court a sum of US$582,358.94 as an indemnification of damages and 6,000 roubles in respect of interest.) Both parties served written submissions and documentation and neither party applied for an oral hearing. The Owners requested a Reasoned Award and accordingly my Reasons are set out in the document attached hereto which forms part hereof.

20. NOW I, the said arbitrator Timothy Rayment, having taken upon myself the burden of this arbitration, having carefully and conscientiously read and considered the submissions and documents served and the evidence adduced by them

DO HEREBY MAKE, ISSUE AND PUBLISH THIS MY FINAL ARBITRATION AWARD, NAMELY

A) I FIND AND HOLD that the Owners' claim for demurrage against the Charterers succeeds in full in the sum of US$78,494.79. Additionally, the Owners' claim against the Charterers and the Consignees succeeds in full in the sum of US$572,250.00. The Charterers and the Consignees claims fail and are hereby dismissed.

20

B) I FURTHER FIND, HOLD AND DECLARE that:-

i) the Owners are not liable to the Charterers and/or the Consignees for any cargo damage or shortage arising out of the carriage of the cargo of bananas pursuant to the Charter Party dated 4 July 2001 and the Bills of Lading issued pursuant thereto.

ii) the Owners are hereby indemnified by the Charterers and the Consignees in respect of any amounts which the Owners may be required to pay to either the Charterers or the Consignees in respect of any cargo damage or shortage arising out of the carriage of the cargo of bananas pursuant to the Charter Party dated 4 July 2001 and the Bills of Lading issued pursuant thereto.

C) I THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith pay to the Owners the sum of US$78,494.79 (seventy eight thousand four hundred and ninety four United States Dollars and seventy nine cents) together with interest thereon at the rate of 4.00 (four) per cent per annum compounded at three monthly rests from 2 October 2001 until the date of payment.

D) I FURTHER AWARD AND ADJUDGE that the Charterers and the Consignees shall forthwith pay to the Owners the sum of US$572,250.00 (five hundred and seventy two thousand two hundred and fifty United States Dollars) together with interest thereon at the rate of 4 (four) per cent per annum compounded at three monthly rests from 27 October 2001 until the date of payment.

21

E) I FURTHER AWARD AND ADJUDGE that the Charterers and the Consignees shall bear their own costs and they shall also bear the Owners' costs in the reference which, unless agreed, shall be determined by me as set out in Section 63 of the Arbitration Act 1996. The Charterers and Consignees shall also pay the costs of this my Final Arbitration Award (including interlocutories) in the sum of £4,460.00 (four thousand four hundred and sixty pounds Sterling) PROVIDED ALWAYS that if, in the first instance, the Owners shall have paid any part of the said costs of this my Final Arbitration Award they shall be entitled to an immediate refund from the Charterers and the Consignees of the sum so paid together with interest thereon at the rate of 6.00 (six) per cent per annum compounded at three monthly rests from the date of payment until the date of reimbursement.

GIVEN UNDER MY HAND in London this 7th day of August 2002.

..............................
Timothy Rayment

Witness

# Exhibit 2

62

**Andrew Hamill**

---

**From:** Bo RAMMER [brammer@monaco-shipping.com] on behalf of Monaco Shipping [mss@monaco-shipping.com]

**Sent:** den 15 oktober 2007 10:47

**To:** shipping

**Subject:** viviana / Sunway

From: Monaco Shipping Services / Bo Rammer

Andy/Bo
cc Mats

For Viviana chrtrs can offer usd 140 per pallet bss min 2500, usd 100 for excess on 6ttl wwdaps sshex fri17/mon08 uu bss 2500 plts, prorata more , 5 pct ttl, subject to Owners official confirmation that they will not act by any means against Charterers/Shippers/Receivers for any matters not connected with this Charter Party and for the whole period of this CP.

Pls advise

Best Regards / MSS

Phone : +377 – 97970500
Fax : +377 – 97970505
Mobile : +377 - (0)6 07 93 02 93
Email : mss@monaco-shipping.com

**Andrew Hamill**

**From:** Bo RAMMER [brammer@monaco-shipping.com] on behalf of Monaco Shipping [mss@monaco-shipping.com]

**Sent:** den 16 oktober 2007 12:10

**To:** shipping

**Subject:** viviana/sunway

From: Monaco Shipping Services / Bo Rammer

Andy/Bo

Ref our ph con and conversation with Mats.

We offered on yr behalf as follows:

-accnt Sunway (pls advise full style)
-Viviana as described
-min 2500 plts upto fcc
-load 1gsp Morocco chopt, 1gsb aaaa
-laycan 31/10-1/11
-discharge st pete, 1gsb aaaa
-freight usd 155 per pallet fios for upto min 2500 plts, any pallet in excess usd 135 per pallet fios
-8 ttl ww days shex with friday 5pm/monday 8m clause bends
-dem usd 7500 pdpr fd
-slings and airbags as onboard
-gencon -94 sub details5 pct ttl here

Owners confirm that they will not act by any means against Charterers/Shippers/Receivers for any matters not connected with this Charter Party for the whole period of this voyage.

end

Best Regards / MSS

Phone : +377 – 97970500
Fax : +377 – 97970505
Mobile : +377 - (0)6 07 93 02 93
Email : mss@monaco-shipping.com