UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PINK GOOSE (CAYMAN) LTD.,                          :
                                                   :   08 CV 2351 (HB)
                              Plaintiff,            :
                                                   :   ECF CASE
           - against -                             :
                                                   :
SUNWAY TRADERS LLC,                                :   **DECLARATION OF**
SUNWAY GROUP, SUNWAY TRADING GROUP LTD.,:          **CHARLES E. MURPHY**
SUNWAY GROUP INTERNATIONAL HOLDINGS,               :
SUNWAY GROUP IMPORT, SUNWAY LOGISTICS,             :
and LINTON EQUITIES B.V.I.,                        :
                                                   :
                              Defendants.          :
-----------------------------------------------------------------X

CHARLES E. MURPHY, having been duly sworn, deposes and states the following upon

the penalties of perjury as per 28 U.S.C. § 1746:

1.      I am a member admitted to the Bar of this Honorable Court and am a partner in

the firm of Lennon, Murphy & Lennon LLC, attorneys for the Plaintiff, Pink Goose (Cayman)

Ltd.

2.      I submit this Declaration in opposition to Motion to Vacate Maritime Attachment

filed by Sunway-Group Co. Ltd.

3.      Attached hereto as Exhibit 1 is a true and accurate copy of the transcript of Rule

E(4)(f) hearing dated September 29, 2006 conducted by Judge Castel in *Route Holding Inc. v.*

*IOOI*, 06 Civ. 3428 (PKC)(S.D.N.Y. 2006).

4.      Attached hereto as Exhibit 2 is a true and accurate copy of Judge Berman's Order

entered June 21, 2007 in *Flora Maritime Ltd. v. Inter Eltra Int'l* GMBH, 06 Civ. 6372

(RMB)(S.D.N.Y. Jun. 21, 2007).

5.      Attached hereto as Exhibit 3 is a true and accurate copy of Judge Karas's Order in *Good Challenger Navagante S.A. v. Metalexportimport S.A.*, 06 CV 1847 (KMK)(S.D.N.Y. July 17, 2006).

6.      Attached hereto as Exhibit 4 is a true and accurate copy of Judge Koeltl's Order in *MTC Levant-Line GmbH, Breman, v. Pan-Pacific Int'l & Transportation Co. Ltd.*, 06 CV 3506 (JGK)(S.D.N.Y. Jan. 15, 2008).

Executed at Southport, CT this 9th day of May, 2008.

Charles E. Murphy
Charles E. Murphy

## AFFIRMATION OF SERVICE

I hereby certify that on May 9, 2008 a copy of the foregoing Declaration of Charles E. Murphy was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: Charles E. Murphy
Charles E. Murphy

# EXHIBIT 1

69TVROUA

69TVROUA                    Argument                                          1

1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    --------------------------------x
2
3    ROUTE HOLDING INC., BEAM
3    COMPANY INC.,
4
4                    Plaintiffs,
5
5              v.                    /            06 CV 03428 (PKC)
6
6    INTERNATIONAL OIL OVERSEAS
7    INC. a/k/a IOOI, MARINA WORLD
7    SHIPPING CORP.,
8
8                    Defendants.
9
9    --------------------------------x
10                                               New York, N.Y.
10                                               September 29, 2006
11                                               11:30 a.m.
11
12    Before:
12
13                    HON. P. KEVIN CASTEL,
13
14                                               District Judge
14
15                          APPEARANCES
15
16    TISDALE & LENNON LLC
16         Attorneys for Plaintiffs
17    NANCY R. PETERSON
17    PATRICK F. LENNON
18
18    FREEHILL HOGAN & MAHAR LLP
19         Attorneys for Defendants
19    MICHAEL E. UNGER
20    LAWRENCE J. KAHN
20
21
22
23
24
25

                                                                             2

69TVROUA                    Argument
1              (In open court)
2              (Case called)
3              THE COURT:  This is Route Holding, Inc. v.
4    International Oil Overseas, Inc.
5              Is the plaintiff ready?
6              MS. PETERSON:  Yes, your Honor.
7              THE COURT:  State your appearance please.
8              MS. PETERSON:  My name is Nancy Peterson from the firm
9    Tisdale & Lennon, representing the plaintiffs Route Holding and
10   Beam Company.
11             THE COURT:  All right.  And for the defendant?
12             MR. UNGER:  Good morning, your Honor.  Michael Unger
                          Page 1

69TVROUA

13  from Freehill, Hogan & Mahar on behalf of the defendant Marina
14  World Shipping.  With me is my associate Larry Kahn.
15          THE COURT:  Good to see you.  Good to see you again,
16  Mr. Kahn.
17          MR. KAHN:  Good morning, your Honor.
18          THE COURT:  Good morning.  All right.  We are here on
19  the defendant's motion to vacate the maritime attachment.
20  Since the issuance of the maritime attachment in this case, we
21  now all have the benefit of the Second Circuit's decision in
22  Aqua Stoli, 460 F.3d 434, and also Judge Wood's very clear and
23  helpful decision in Tide Line, Inc. against the Eastrade
24  Commodities, Inc., and Transclear, S.A.  That was an opinion
25  issued by Judge Wood on August 15 -- I'm sorry, August 5th,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

69TVROUA                   Argument
1  2006; docket number is 06 cv 1979.  And as of seven minutes
2  ago, it had not yet appeared on Westlaw.
3          It does seem clear to me that we know what we're doing
4  here this morning in that the attachment was issued pursuant to
5  Supplemental Rule B.
6          We're now at the hearing under Rule E(4)(f), and it is
7  the party who obtained the ex parte attachment's burden to show
8  why the arrest or attachment should not be vacated or other
9  relief granted consistent with these rules.  So the party
10  obtaining the attachment may proceed.
11          MS. PETERSON:  Your Honor, Aqua Stoli set forth the
12  burden that plaintiff needs to satisfy in order to maintain the
13  attachment.
14          In order for Rule B attachment to issue, a plaintiff
15  must show that it has met the following four technical
16  requirements:
17          That it has alleged a maritime claim; that the
18  defendant is not found in the district; that the plaintiff has
19  attached defendant's funds within the district; and that no
20  other statutory bar to maritime attachment exists.
21          In addition, Aqua Stoli stands for the proposition
22  that the plaintiff's burden does not change at the Rule E
23  hearing.  The burden to obtain an attachment is the same as the
24  burden to maintain an attachment.  Judge Wood further clarifies
25  that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

69TVROUA                   Argument
1          THE COURT:  Well, let's back up for a second.  I'm not
2  sure that I agree with your statement of what Aqua Stoli held.
3  If you look at -- well, I'm not going to be able to give you an
4  exact page number; I don't have an F.3d version of it.  But the
5  text preceding Footnote 5, it recites that the plaintiff has to
6  show that it "has," not alleges, has a valid prima facie
7  admiralty claim against the defendant.  That's slightly
8  different than -- and maybe more than slightly different than
9  alleges a claim.
10          MS. PETERSON:  Right.  But Judge Wood clarifies in her
11  opinion that what having a prima facie claim amounts to is
12  properly alleging the elements of a maritime claim, and then an
13  alter ego claim.
14          She expressly stated that it is inappropriate to
15  engage in a fact-intensive inquiry as to the facts underlying
16  either the maritime claim or the alter ego allegations.
17          THE COURT:  But she points out that there is a

Page 2

69TVROUA

18 heightened pleading standard in a case brought, I guess
19 invoking maritime or admiralty jurisdiction, is that correct?
20        MS. PETERSON:  The heightened standard is to make the
21 defendant aware what he is pleading.
22        In the case of Tide Line, there was no alter ego
23 allegation made.  The only allegation that was made was that
24 the defendant was a paying agent of the interconnected entity.
25        In the case here, the plaintiff has alleged all the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

69TVROUA                    Argument
1 elements of federal common-law alter ego claim; namely, that
2 IOOI is an alter ego of Marina World Shipping; and that IOOI
3 dominates and controls Marina World Shipping to the extent that
4 it actually conducts business through Marina World Shipping.
5 It's completely separate factual -- it's distinguishable from
6 that case.
7        After we had satisfied our burden, the defendant has
8 three basis upon which it can vacate the attachment according
9 to Aqua Stoli; namely, that the defendant can be found in a
10 convenient adjacent jurisdiction that the defendant can obtain
11 personal jurisdiction in a district where the plaintiff is
12 located or that the plaintiff has obtained sufficient security.
13        Aqua Stoli explicitly listed the three bases upon
14 which the defendant may vacate an attachment.  It left the door
15 open for some equitable concerns; however, those equitable
16 concerns are not here today.  Defendant is a debtor who's not
17 paying its debts.  And if our case is borne out, as we suggest
18 it will be, it will turn out that IOOI and Marina World
19 Shipping are the same company who are avoiding paying their
20 debts to the plaintiffs.
21        Defendant is relying on outdated case law when it
22 suggests that we must prove a probable cause or a reasonable
23 basis, reasonable grounds standard for making our alter ego
24 allegations.  Once we have satisfied the basic elements of a
25 maritime claim and an alter ego claim, we have satisfied our

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

69TVROUA                    Argument
1 burden in that regard.
2        Plaintiff has alleged a maritime claim against IOOI
3 that it has breached the maritime contract, and it has alleged
4 the alter ego claim against Marina World Shipping.
5 Furthermore, in subsequent submissions, we have submitted a
6 raft of evidence showing a relationship between IOOI and Marina
7 World Shipping, which, according to both Judge Casey, in the
8 recent case of Maersk v. Neewra, is you can review in order to
9 determine if we had made adequate allegations.  In addition,
10 Judge Kaplan, in a recent case of Metalinvest v. Burwil
11 Resources also held that you review the entire record to
12 determine if we have met our basic pleading allegations.
13        As the plaintiff has satisfied its burden to show that
14 it has a prima facie claim, and defendant has not met its
15 burden to show the three reasons for vacatur, the attachment
16 should be upheld and the motion to vacate denied.
17        THE COURT:  Thank you, Ms. Peterson.  Let me hear from
18 Mr. Unger.
19        MR. UNGER:  Good morning, your Honor.  Let me begin by
20 referring the Court to the advisory committee notes of Rule B.
21 Under those notes, it says contrary to whatever interpretation
22 plaintiffs want to put on Aqua Stoli, the defendant can attack

Page 3

69TVROUA

23  the pleadings for insufficiency or any other defect in terms of
24  the process.
25          Here, the defect is that the complaint is plainly
                ·SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                                    7

69TVROUA                Argument
1   insufficient to meet the standards required under Rule 8(a),
2   let alone the higher standard required under Rule 9(b).
3           The case law is such, and, in particular, I refer the
4   Court to In Re: Currency Conversion Fee Anti --
5           THE COURT: If I may just have you pause for a second.
6   Why do you invoke Rule 9(b)?
7           MR. UNGER: Rule 9(b) is the specificity of pleading
8   rule, your Honor.
9           THE COURT: I'm familiar with that.
10          MR. UNGER: And here, the courts have said that
11  veil-piercing claims are generally subject to the pleading
12  requirements imposed by Rule 8(a), which requires only a short
13  and plain statement of the claim, showing that the pleader is
14  entitled to relief.
15          However, when a veil-piercing claim is based on
16  allegations of fraud, the heightened pleading standard Rule B
17  is the lens through which those allegations have to be
18  examined. Okay.
19          Here, they haven't alleged fraud.
20          THE COURT: So that goes back to my question. Why are
21  you talking to me about Rule 9(b)?
22          MR. UNGER: I just refer to Rule 9(b), but what I'm
23  saying is it doesn't even reach the lower standard of Rule 8.
24          THE COURT: But we're in agreement Rule 9(b) does not
25  control in this case?
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                                    8

69TVROUA                Argument
1           MR. UNGER: That's correct, your Honor.
2           THE COURT: Okay. Thank you.
3           MR. UNGER: I apologize if it was confusing. But the
4   case I was referring to, In Re: Currency Conversion Fee
5   Antitrust Litigation, which is 265 F. Supp. 2d 385 Second
6   Circuit -- I'm sorry, Southern District 2003.
7           The Court stated in that case that purely conclusory
8   allegations cannot suffice to state a claim based on veil
9   piercing or alter ego liability, even under the liberal notice
10  pleading standard under Rule 8(a).
11          The plaintiff has to come in, and the plaintiff has to
12  demonstrate with proof, credible proof, that there is an alter
13  ego relationship between the two defendants that they've named.
14  Plaintiff only has a real cause of action and a real gripe with
15  IOOI with whom it had its contract, because IOOI didn't pay up
16  or hasn't agreed to post security, and I don't know exactly
17  where plaintiff and IOOI are in terms of their arbitration.
18          Plaintiff in this action decided that they were going
19  to come into court and add MWS, Marina World, as a defendant,
20  and that's a tactic that they are using in order to try to
21  strongarm either a settlement or the posting of security by
22  IOOI in connection with the London arbitration and the merits
23  of that dispute.
24          Turning back to the Aqua Stoli case. It's incorrect
25  to say that there were only three bases on which to challenge
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                         Page 4

69TVROUA
9

69TVROUA          Argument
1  an attachment.  The Second Circuit specifically said in Aqua
2  Stoli that among the bases to challenge are, and it proceeds to
3  list the three examples that counsel for the plaintiff cited.
4       THE COURT:  And then they go on to further define the
5  universe by saying, "We also believe vacatur is appropriate in
6  other limited circumstances," which are well-described in the
7  opinion.  And they also describe what circumstances do not
8  qualify for vacating the attachment.  Go ahead.
9       MR. UNGER:  Here, your Honor, what we're challenging,
10 effectively, is that there is no maritime claim.  And,
11 therefore, the Court lacks subject-matter jurisdiction in
12 respect to the claims against Marina World.  And the reason the
13 Court lacks subject-matter jurisdiction is because there is no
14 alter-ego relationship between the two named defendants.
15      THE COURT:  Where do I find your subject-matter
16 jurisdiction argument laid out?
17      MR. UNGER:  It's not specifically set forth as such in
18 our papers, your Honor; but what we do argue is that there is a
19 defect in the pleadings.  And that's the defect.  The defect is
20 that there is a lack of jurisdiction here.  And there's a lack
21 of jurisdiction because there is no, in fact, alter-ego
22 relationship between the companies; and there is no -- the way
23 that it's pled in the complaint, that doesn't suffice under
24 Rule 8(a) to state a maritime claim.
25      The Aqua Stoli case says, in effect, that plaintiff
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

69TVROUA          Argument
1  has to show that it has a valid maritime claim, okay.  And if
2  that's the case, you're allowed to test the validity of whether
3  that claim that they are alleging is valid.
4       Here, this Court has the right to look at the
5  evidence.  And plaintiff having the burden of proof, they
6  haven't shown a maritime claim against Marina World.  And the
7  reason they haven't is that the evidence that they have put
8  forth, and let's look at what they put forth, before they ever
9  filed the claim, all they knew was there were a couple of
10 payments that had been made over eight years by Marina World on
11 behalf of IOOI.  And Mr. Bakri from Marina World explains in
12 his several declarations why that was done.  That's been
13 unchallenged.  And I don't believe that that gave a good-faith
14 basis to file this complaint in the first place.
15      But even if you get past that and you look at the rest
16 of the evidence, what do we have?  A couple more payments we
17 learn have been made.  But that's it.  Then you get into all
18 the plaintiff's smoke-and-mirrors in terms of trying to tie
19 Marina World and IOOI together.  And, quite frankly, your
20 Honor, they don't even come close.
21      The evidence that they show at best is based on
22 speculation, rumor, innuendo, hearsay from unnamed "market
23 sources" and investigations that were commenced.  They give you
24 a four-year old report in connection with IOOI and its supposed
25 relationship with the Bakri group, which Mr. Bakri explains is
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

69TVROUA          Argument
1  basically a loose association of companies that try to
2  capitalize on the goodwill of one another.
3       You have, in addition to that, plaintiff coming in
Page 5

69TVROUA

4  with all kinds of suggestions in terms of the fact that there
5  are shared addresses. IT information that's shared.  None of
6  this adds up to putting Marina World being so dominated or
7  controlled by IOOI or the converse, that they can meet the
8  ten-point tests that are set out in terms of what you have to
9  show in order to have an alter-ego claim.
10      At best, all plaintiff has done is shown, if you want
11  to accept it, that IOOI may have some kind of relationship with
12  the Bakri group, Bakri navigation, and any of the 12 or 13
13  other companies that are named throughout the course of the
14  papers.  But what's not in any of that is Marina World in this
15  web that they've painted.  Marina World is out here.  And
16  there's no evidence which ties Marina World directly to IOOI,
17  or to IOOI through the Bakri group, or any of the Bakri group
18  companies.
19      Effectively, if you follow plaintiff's argument, up on
20  the west side of Manhattan you have the Potamkin Auto Group.
21  And he's got ten different dealerships.  And if I buy a
22  Chrysler from Potamkin Chrysler, and I don't like it, under
23  plaintiff's theory, I could allege that their alter egos and go
24  after Potamkin Chevy.  Why?  Because Mr. Potamkin has his hand
25  in a whole bunch of these dealerships.  Mr. Potamkin may own

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

69TVROUA                    Argument

1  the various buildings or have a company that owns the various
2  buildings the dealerships are in.  That doesn't get you over
3  the hump.
4      There's no good-faith basis to have brought this
5  claim.  And they haven't shown it even when they've had the
6  burden of showing it, that there is an alter ego relationship.
7      Thank you, your Honor.
8      THE COURT:  Thank you, Mr. Unger.  Let me hear from
9  the plaintiff.  And I guess a question I would like answered is
10  does supplemental Rule E(2)(a) apply as to the pleading.  And
11  let me hear as to how does the plaintiff view that rule as
12  affecting its pleading obligation here.
13      MS. PETERSON:  What do you explicitly mean by Rule
14  E(2)(a)?  Do you mean the pleading requirement?
15      THE COURT:  All right.  There is a requirement that,
16  "The complaint state the circumstances from which the claim
17  arises with such particularity that the defendant or claimant
18  will be able, without moving for a more definite statement, to
19  commence an investigation of the facts and to frame a
20  responsive pleading."
21      And Second Circuit has held that this standard is more
22  stringent than the pleading requirements of the Federal Rules
23  of Civil Procedure.  That's what I'm referring to.
24      MS. PETERSON:  Your Honor, first, I believe that we
25  have satisfied that burden; and that we have stated the facts

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

69TVROUA                    Argument

1  and circumstances for having the breach of the contract and the
2  reasons behind us attaching the funds of Marina World Shipping;
3  namely, that they are in an alter ego relationship such that we
4  do not have to move for a more definite statement.
5      And, subsequently, we have submitted considerable
6  evidence in our various submissions and declarations clarifying
7  our pleadings and putting forth more evidence.
8      In addition, I don't believe that the standard -- that

Page 5

69TVROUA

 9  we should apply a motion-to-dismiss standard at the Rule E
10  hearing. We're not judging the sufficiency of the pleadings in
11  terms of a motion to dismiss any set of facts upon which relief
12  can be granted. We're looking at a Rule E special hearing at
13  which we're seeing if the elements of the claim have been
14  alleged, and if the circumstances has also been alleged,
15  according to Rule B(a)(2).
16       Judge Casey explicitly addressed this in the case of
17  Maersk v. Neewra, where he said you can look at the entire
18  record to determine a pleading burden, unlike a motion to
19  dismiss; and that if we were to apply any set of facts or look
20  at the facts, Rule E would completely subsume Rule 12(b)(6).
21  There would be no difference, included there should be a
22  difference in the standard.
23       If the defendants would like to challenge the facts
24  underlying our pleadings, they should raise a motion to dismiss
25  or a motion for summary judgment. However, that is the
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

14

69TVROUA                        Argument
 1  appropriate form in which to challenge them. Right now we're
 2  looking at the bare bones of the complaint and our supplemental
 3  submissions.
 4       May I add a few -- address their argument?
 5       First of all, as to the subject-matter jurisdiction
 6  argument that they have made, the defendant does not dispute
 7  that we have alleged a maritime claim against IOOI. We have
 8  alleged an alter-ego claim against Marina World Shipping.
 9  Therefore, it's an alter-ego maritime claim. In the
10  subject-matter jurisdiction, it's not relevant and wasn't
11  briefed by the defendants.
12       THE COURT: In other words, what you're saying is even
13  if for some reason I accepted everything that the defendants
14  said and tomorrow granted a motion to dismiss Marina World from
15  this case, this Court's subject-matter jurisdiction would not
16  evaporate?
17       MS. PETERSON: Exactly.
18       THE COURT: Thank you. Go ahead.
19       MS. PETERSON: As to the evidence, where they are
20  attacking the evidence as hearsay and in the declarations, they
21  are holding us to a trial standard. This is the Rule E
22  hearing. You can submit any sort of evidence at this stage to
23  support your allegations. And we can submit case law to
24  support that, if your Honor would like.
25       In addition, there is no case law to suggest that we
            SOUTHERN DISTRICT REPORTERS, P.C.
                   (212) 805-0300

15

69TVROUA                        Argument
 1  have to submit proof at this stage of the hearing to support
 2  our allegations. Aqua Stoli and Judge Wood found that proof at
 3  this stage is inappropriate; and that would be going directly
 4  against her decision, I feel, to require to submit all facts at
 5  this stage prior to discovery or being able to use discovery
 6  tools to obtain evidence.
 7       And even assuming arguendo that the defendants are
 8  correct that we have to make some sort of evidentiary showing,
 9  which we vigorously deny, we have shown significant evidence
10  that IOOI and Marina World Shipping are, in fact, alter egos.
11       Even without the benefit of discovery, we have
12  uncovered 15 payments being made by Marina World Shipping on
13  behalf of IOOI. There's been no evidence submitted to show
                        Page 7

69TVROUA

14   that there was -- Mr. Bakri claims that there's an assignment
15   of payment. However, there's absolutely no paper, there's no
16   evidence of a debt being assumed from Marina World Shipping to
17   IOOI, there's no evidence of an assignment actually being made,
18   and the people that received the payments can confirm that they
19   were never informed of an assignment. The only evidence is a
20   self-serving statement that a payment assignment can be made.
21        And it suspends disbelief to believe that in these 15
22   separate incidences that we know about, they executed
23   assignments of payment. In addition, IOOI refers to Marina
24   World Shipping's account as its own. In the two instances
25   where IOOI owed money to a creditor, and it informed them that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

69TVROUA           Argument

1   it would be sending money from its bank, when the confirmation
2   came through, it was from Marina World Shipping. It is
3   referring to Marina Shipping as its own account and using it as
4   its piggy bank. Its role is to sign the maritime documents;
5   Marina World Shipping's job is to pay the debts. And in this
6   way, it completely insulates IOOI and the Bakri family-at-large
7   from liability.
8        IOOI and Marina World Shipping reside at the same
9   location in Saudi Arabia at the Al Dulas Bakri Building owned
10   by a Bakri corporation. Mr. Bakri has submitted a lease
11   allegedly showing that this is an arm's length transaction that
12   Marina World Shipping leases from the owner. However, this
13   lease does not specify an office, a floor. This is a lease
14   that specifies that they have leased somewhere in the Bakri
15   building. This has no evidence to show that, in fact, they
16   maintain a separate office or in any way separate from IOOI.
17        In addition, the directors of IOOI are all apparently
18   employed by the Bakri family. Marina World Shipping directors
19   are made up of all Bakri family members. IOOI's directors are
20   all apparently employees of the Bakri corporations. One is in
21   the legal department of a Bakri-owned corporation; one is a
22   member of and works for a self-described company in the Bakri
23   organization; and the other one works in another separate
24   subsidiary of a Bakri corporation. There's clear ties between
25   these directors.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

69TVROUA           Argument

1        Marina World Shipping and IOOI are one entity; the two
2   pockets in the same pair of pants.
3        The maritime report, which defendants claim is four
4   years old -- which is four years old, but which is equally
5   relevant today, shows that the Bakri family uses IOOI as their
6   chartering arm. They use it to enter into transactions. And,
7   as I said, Marina World Shipping is the piggy bank. They are
8   almost like two departments; they are the same company.
9        And, finally, the audit that Mr. Bakri submitted
10   allegedly to show that it has above-the-board records, reveals
11   that it enters into related party transactions regarding ship
12   charters. What these transactions are, I am unsure. However,
13   upon a minimal amount of discovery, I believe we can find out.
14   However, this in no way establishes that they are separate from
15   IOOI.
16        And, in addition, again, upon a minimal amount of
17   discovery, we believe we can uncover many more payments made on
18   behalf of Marina World Shipping -- made on behalf of IOOI by

Page 8

69TVROUA

19  Marina World Shipping.
20      The owners in this case have approached people in
21  order to find out about more payments; however, they came to
22  them and said we have a confidentiality clause in our charter
23  party.  So they couldn't help even if they wanted to.  Upon
24  being awarded discovery, we can certainly clarify how often
25  Marina World Shipping is certainly paying on behalf of IOOI.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

69TVROUA                Argument
1      And, as such, I believe plaintiff has met its burden,
2  either under the defendant's alleged pleading requirements or
3  under whatever Judge Wood's pleading requirements in Tide Line.
4  And for that reason, the attachment should be upheld.
5      THE COURT:  Thank you.  It is the plaintiff's burden,
6  and so the plaintiff gets to go first and last; but, Mr. Unger,
7  I'll give you an opportunity briefly if there's something
8  additional you wanted to say.
9      MR. UNGER:  A couple real quick points, your Honor.
10  We're back to the has versus alleges argument in looking at
11  what they talked about.  The evidence, it doesn't have to be
12  admissible at this stage, but it has to be credible.  And it
13  has to support the allegations.  And, quite frankly, the
14  evidence that they have does neither.
15      The allegation that Marina World hasn't supplied any
16  paper to document the assignments, it's not Marina World who
17  has the burden of proof, it's the plaintiff.  And it was never
18  challenged by the plaintiffs, okay.  The fact that IOOI says we
19  have instructed our bankers, I don't know why, but it certainly
20  is not compelling evidence that there is an alter-ego
21  relationship.  And, in fact, the argument that Marina World is
22  used as IOOI's bank is undermined by the fact that IOOI paid
23  the settlement in the prior case, the Garda Shipping case,
24  which is referred to in the papers, out of its own funds.
25  They're holding the lease to U.S. standards rather than Saudi

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

69TVROUA                Argument
1  standards; yet they don't have any evidence to show you what
2  the practice is in terms of Saudi leasing of offices.
3  Mr. Bakri is the only evidence that is before the Court, and
4  Mr. Bakri explains what happens.  Okay.
5      They never closed the circle between IOOI, the Bakri
6  group, and Marina World.  The four-year old report is not
7  relevant.
8      In terms of any suggestion as to discovery, discovery
9  has never been asked for prior to today, and it shouldn't be.
10  In terms of the suggestion that the motion should be held only
11  in terms of a summary judgment standard, basically that allows
12  the plaintiff then in any instance, with even the barest
13  whisper of a connection between two companies, to say, A is the
14  alter ego of B; and that alleged alter ego can't challenge it
15  until it's gone through miles and miles of legal hoops and
16  legal proceedings, effectively all the way to trial.
17      If Marina World had not challenged the money being
18  attached in this instance, look at what would have happened.
19  Plaintiff would have had to get a judgment -- I'm sorry, an
20  award in London against IOOI, and then seek to confirm that
21  award.  And then plaintiff would still have the burden of
22  proving down the road that IOOI and MWS are alter egos in order
23  to go ahead and collect a judgment here against MWS.

Page 9

69TVROUA

24      So it goes beyond the realm of common sense to say
25   that they shouldn't have to have that ability to go ahead at
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

20

69TVROUA                    Argument
1    this early stage and have some credible evidence that the two
2    are linked in order to have taken the step that they have done.
3           MR. KAHN:  Your Honor, if I could be heard on just one
4    brief point brought up by plaintiffs regarding the Maersk v.
5    Neewra case, which was recently decided by Judge Casey, and the
6    dismissal standard that we're also seeking here.
7           As Mr. Unger said, the Court would still have
8    jurisdiction over the case generally, but only against IOOI if
9    the case is dismissed against Marina World.
10          And what occurred in the Maersk v. Neewra case, if you
11   look at it carefully, you'll see that the plaintiffs are
12   expanding what was actually said in that case.  In the Maersk
13   v. Neewra case, what happened was the defendant moved to vacate
14   the attachment on maritime attachment grounds, and then also
15   sought to dismiss a RICO cause of action on the grounds that it
16   was not sufficiently pled.  And the Court held that it was
17   improper at that time to attack the RICO cause of action in an
18   E(4)(f) hearing.  The Court found that there was no basis to do
19   that, particularly where the defendant had not yet appeared.
20          One slightly complicating wrinkle in that case was
21   that the defendant, who appeared only in the guise of garnishee
22   and not as the defendant, it was proven at the E(4)(f) hearing
23   that the garnishee actually was the defendant.  He was playing
24   a name game; he had essentially multiple IDs with slightly
25   different spellings of his name.  And Judge Casey saw through
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

21

69TVROUA                    Argument
1    that and saw this is all the same person.
2           But with respect to the standard for dismissal, Judge
3    Casey held that what was going on in that case was that it was
4    improper in the context of an E(4)(f) maritime hearing
5    concerning whether or not an attachment should be vacated to
6    challenge whether a RICO cause of action was sufficiently pled
7    under 9(b).
8           And so the reading urged by the plaintiffs here I
9    think is over-expansive, goes well beyond what Judge Casey
10   actually decided in the Maersk v. Neewra matter.
11          Thank you.
12          THE COURT:  Thank you.  On May 4th, 2006, I signed an
13   order directing the clerk to issue maritime attachment against
14   property of IOOI and Marina World.  Thereafter, I scheduled an
15   initial pretrial conference in this case, and had a conference
16   held on July 14th.  The defendant indicated a desire to move to
17   vacate the attachment, and I set a schedule for the motion to
18   be made four days later, set a date for replies, responses and
19   replies, and set a date for a hearing of August 1, 2006.
20          And there is certainly nothing unusual or
21   inappropriate about it, but I do want to make it plain for the
22   record, subsequently I received requests to adjourn the
23   hearing, including a letter request by Mr. Unger dated July
24   31st, which caused me to move it till August 28th.  And then a
25   further request from Ms. Peterson that it be adjourned to a
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

22

69TVROUA
69TVROUA                    Argument
1   later date, and it was moved to today.  So that's what brings
2   us here today.
3           This is the hearing required under Rule E(4)(f) of the
4   supplemental rules for certain admiralty and maritime claims.
5   And the rule provides that whenever property is arrested or
6   attached, any person claiming an interest in it shall be
7   entitled to a prompt hearing at which the plaintiff shall be
8   required to show why the arrest or attachment should not be
9   vacated, or other relief granted consistent with these rules.
10          In the very recent decision of the Second Circuit in
11  Aqua Stoli, which is 2006 Westlaw, 2129336, and that is now
12  recorded at 460 F.3d 434 Second Circuit, July 31, 2006, the
13  Court had occasion to examine the historical underpinnings of
14  maritime attachment and the process by which maritime
15  attachment may be vacated.
16          I have spent some time with that opinion in examining
17  it, studying it, and I'm not going to endeavor to summarize it
18  here today.  But I do note that the holding of the Court is
19  that in addition to having to meet the filing and service
20  requirements of Rule B and E, an attachment should issue if the
21  plaintiff shows that, one, it has a valid prima facie admiralty
22  claim against the defendant; two, the defendant cannot be found
23  within the district; three, the defendant's property may be
24  found within the district; and, four, there is no statutory or
25  maritime law bar to the attachment.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

69TVROUA                    Argument
1           And conversely says, Aqua Stoli, a district court must
2   vacate an attachment if the plaintiff fails to sustain his
3   burden of showing that he has satisfied the requirements of
4   Rule B and E.
5           The Court also outlined certain other limited
6   circumstances which do not appear to be relevant here.
7   Specifically, it outlined a circumstance where the defendant is
8   subject to suit in a "convenient adjacent jurisdiction, and
9   where the plaintiff could obtain in personam jurisdiction over
10  the defendant in the district where the plaintiff is located,
11  or the plaintiff has already obtained sufficient security for
12  the potential judgment by attachment or otherwise."
13          Those circumstances, i.e., the limited circumstances,
14  have no application in this case.
15          I conclude that the plaintiff has met the requirement
16  that the defendant cannot be found within the district; that
17  the defendant's property may be found within the district; and
18  that there is no statutory or maritime law bar to the
19  attachment.  I consider, however, whether a valid prima facie
20  admiralty claim against the defendant has been asserted.
21          Now, there is much discussion, and I suppose it will
22  be a continuing discussion, as to how a district court is to
23  determine whether there is a valid prima facie admiralty claim.
24  I think it is fair to say that after Aqua Stoli, it cannot
25  credibly be argued that there is a probability of success on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

69TVROUA                    Argument
1   the merits type standard.  But I really don't, in this case,
2   have to spend too much time with whether it is something to be
3   determined solely from the face of the pleadings or whether
4   this Court can and should consider matters outside the four
                            Page 11

69TVROUA

 5  corners of the pleading, because under either standard, I find
 6  that the plaintiff has alleged a valid prima facie admiralty
 7  claim.
 8       I'm mindful of the dictates of supplemental Rule
 9  E(2)(a), that there must be at least enough particularity so
10  that the plaintiff -- or, rather, the defendant can commence an
11  investigation of the facts and frame a responsive pleading; and
12  that this is a higher pleading requirement than the Rule 8(a)
13  requirement.
14       Here, the plaintiff alleges that MWS is the alter ego
15  of IOOI, but it does not simply leave it as a conclusory
16  allegation.  It goes on to allege that the reason it believes
17  it is the alter ego is because IOOI dominates and disregards
18  MWS's corporate form to the extent that MWS is actually
19  carrying on IOOI's business and operations as if the same were
20  its own.  It further goes on to allege that MWS, acting as
21  paying agent, acts as paying agent or arranges for other
22  nonparties to satisfy the debts and obligations of IOOI.
23       It seems to me that is a sufficient allegation.  If
24  and to the extent it is not a sufficient allegation, I look to
25  the declaration of Hara Anastasatou.

69TVROUA              Argument

 1       Now, the declaration referenced goes into the issue of
 2  common ownership and control, alleging that the two are a
 3  single economic entity.  Some of the facts that are set forth
 4  there are consistent with alter ego, but they could also be
 5  consistent with one shareholder owning two separate
 6  corporations.  There's nothing in law that prohibits a single
 7  shareholder from doing business through separate corporations,
 8  provided the separate corporate form is maintained.
 9       But what I find impressive about the declaration is it
10  gives considerable particularity and description to instances
11  where MWS made a payment on behalf of IOOI, it gives chapter
12  and verse, it gives the details, it gives the time, the place,
13  and the circumstances, and it gives a number of examples.  And
14  so I find paragraphs 20 through 43 of the declaration to be of
15  particular help and utility.
16       The prerequisites for piercing the corporate veil are
17  as clear in federal maritime law as in shoreside law.  That's a
18  point that has been made in the Kirno Hill case; and it's clear
19  that the veil will be pierced only if a corporation is used by
20  another entity or individual to perpetrate a fraud or, the
21  operative word being "or," was so dominated that its corporate
22  form was disregarded and the notion that a way to prove veil
23  piercing is by showing that the alleged alter ego so dominated
24  and disregarded its alter ego's corporate form, that the alter
25  ego is actually carrying on the controlling party's business

69TVROUA              Argument

 1  instead of its own, is an extremely well-recognized,
 2  well-established means of demonstrating corporate veil
 3  piercing.
 4       I look specifically to pages 25 to 27 of Judge Wood's
 5  well-reasoned and thoughtful opinion in Tide Line, including
 6  the citation up to the factors outlined in William Passalacqua
 7  Builders v. Resnick.
 8       Unlike Tide Line, of course, this is a case where the
 9  alter ego allegation is on the face of the complaint.  Whether

69TVROUA

10     I look at it in terms of the complaint or I look at it in terms
11     of the complaint taking into account the plaintiff's
12     submissions, as well as the defendant's submissions, and the
13     argument presented here today, I conclude that there is a valid
14     prima facie admiralty claim; that all other requirements of
15     Rule B and E have been met; that there is not a limited
16     circumstance, as outlined in Aqua Stoli, for vacating the
17     attachment under the limited circumstances doctrine.
18             So I conclude that the plaintiff has, at this hearing,
19     met each and every element of the plaintiff's burden; and,
20     therefore, the motion to vacate the attachment is denied.
21             Is there anything further?
22             MS. PETERSON:  No, your Honor.
23             MR. UNGER:  No, your Honor.
24             THE COURT:  Thank you all very much.
25                         *     *     *

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X
FLORA MARITIME LTD.,                              :
                                                 :
                           Plaintiff,            :
                                                 :    06 Civ. 6372 (RMB)
             -against-                           :
                                                 :    **ORDER**
INTER ELTRA INTERNATIONAL GMBH,                  :
INTER ELTRA GROUP, INTER ELTRA                   :
GLOBAL STL, ELTRA-ZAREVODAR,                     :
MISHAN AGRO, ALPHAMATE LIMITED,                  :
AGROCOM TRADERS AND BROKERS                      :
OHG, AGROCOM BROKERS AND                         :
TRADERS OHG, RENE EIKEL, MICHAELA                :
EIKEL, NATHALIE EIKEL, and ANDREY                :
LYUMBIMOV,                                       :
                                                 :
                           Defendants.           :
------------------------------------------------------X

## I. Background

On or about August 22, 2006, Flora Maritime Ltd. ("Plaintiff") filed a complaint

("Complaint") against Inter Eltra International GMBH ("Inter Eltra"), alleging that Inter Eltra

breached a maritime contract (the "charter-party"), dated August 11, 2006, to ship a cargo of

barley on Plaintiff's vessel, and seeking damages of $370,000 and "issuance of process of

maritime attachment so that it may obtain security for its claims." (Complaint at 4-5.) On the

same day, the Court ordered that process of maritime attachment be issued pursuant to Rule B of

the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure ("Rule B"). (See Order dated Aug. 22, 2006.) On or about August 23, 2006, Plaintiff

amended the Complaint to seek damages of $510,940. (See First Amended Verified Complaint

dated Aug. 23, 2006.)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 21, 2006

On or about September 29, 2006, Plaintiff, with permission of the Court (see Memo Endorsed letter dated Sept. 29, 2006), filed a Second Amended Verified Complaint which added as a defendant Agrocom Traders and Brokers OHG and Agrocom Brokers and Traders OHG ("Agrocom"). (See Second Amended Verified Complaint dated Sept. 29, 2006.) On or about March 12, 2007, Plaintiff, again with permission of the Court (see Memo Endorsed letter dated Mar. 7, 2007), filed a Third Amended Verified Complaint which added as defendants Inter Eltra Group, Inter Eltra Global SRL, Eltra-Zarevodar, Mishan Agro, Alphamate Limited, Rene Eikel, Michaela Eikel, Nathalie Eikel, and Andrey Lyumbimov. (See Third Amended Verified Complaint ("Third Am. Compl."), dated Mar. 12, 2007.) The Second and Third Amended Verified Complaints state that Plaintiff "has a valid in personam claim" against the added defendants "based upon alter ego liability." (Third Am. Compl. at 8.) On September 29, 2007, and again on March 13, 2007, the Court ordered that process of maritime attachment be issued pursuant to Rule B against all defendants. (See Orders dated Sept. 29, 2006; Mar. 13, 2007.)

By Order to Show Cause, dated May 2, 2007, defendants Agrocom, Alphamate Limited, Rene Eikel, Michaela Eikel, Nathalie Eikel, and Andrey Lyubimov ("Defendants" or "Moving Defendants") filed a motion to vacate the maritime attachments against them ("Motion to Vacate") pursuant to Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule E"), arguing that (1) "[P]laintiff's alter ego allegations are too conclusory, too superficial and too lacking in evidentiary substance to support admiralty jurisdiction" and (2) the Third Amended Verified Complaint and the Order for Issuance of a Process of Maritime Attachment dated March 13, 2007 ("March 13 Order"), "are

defective in several crucial respects." (Def. Mem. at 1, 3, 16 ("those documents do not identify all of the moving defendants" and "there is no defendant GUJARAT in this case").)[1]

On or about May 10, 2007, Plaintiff opposed Defendants' Motion to Vacate, arguing that "Plaintiff has adequately alleged a prima facie alter-ego claim against the Moving Defendants," whose arguments to the contrary "ignore the recent case law of this district and are unavailing." (Pl. Mem. at 3.)[2]

On May 10, 2007, the Court held a post-attachment hearing pursuant to Rule E. (See Hearing Transcript, May 10, 2007.)

**For the reasons stated below, Defendants' Motion to Vacate is denied.**

## II.  Legal Standard

Rule B is "a relatively broad maritime attachment rule, under which the attachment is quite easily obtained," and a maritime attachment "may be vacated only in certain limited circumstances." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 443-45 (2d Cir. 2006). An attachment should not be vacated if the plaintiff shows that it "has satisfied the requirements of Rules B and E," including, among other things, that "it has a valid prima facie admiralty claim against the defendant." Id. at 445. A plaintiff "need not provide any supporting evidence" to oppose a motion to vacate an attachment, "its complaint should suffice," and "the basis of defendant's argument" to vacate an attachment "may [not] be that plaintiff has not provided sufficient evidence of such a claim." Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870, at *16, 22 (S.D.N.Y. Aug. 15, 2006).

---

[1] Defendants' memorandum of law states that Plaintiff incorrectly sued Defendant Andrey Lyubimov as "Andrey Lyumbimov." (Def. Mem. at 1.)

[2] Plaintiff does not address Defendants' claim that the Third Amended Verified Complaint and March 13 Order contain defects.

3

### III.    Analysis

#### (1)    Alter Ego Claims

Defendants argue that the Third Amended Verified Complaint "does not assert any involvement by the moving defendants in the charter-party," and "[P]laintiff has offered <u>no</u> evidence of any kind to support its alter ego allegations involving the moving defendants." (Def. Mem. at 10, 13 (emphasis original).)  Plaintiff responds that it has "properly alleged a legally sufficient claim for alter-ego liability against the moving defendants" and "has set forth facts upon which its claim is based." (Pl. Mem. at 11.)

To establish a prima facie admiralty claim, Rule E requires that a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. Rule E(2)(a).

The Third Amended Verified Complaint cites several grounds for Plaintiff's claim that Defendants are alter egos of Inter Eltra, including, among others, "such unity of ownership" that "the corporate form of [Inter Eltra] has been disregarded"; "overlapping ownership, management, personnel and purposes" such that Inter Eltra and Defendants "did not operate at arms length"; "common addresses [and] common contact information"; and "intermingling of funds." (Third Am. Compl. at 7-8.)  These factors are "among the list of factors a court may consider when alter ego status has been pled, and are sufficient to state a valid admiralty claim." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., 06 Civ. 15375, 2007 U.S. Dist. LEXIS 18562, at *11 (S.D.N.Y. Mar. 15, 2007); see also Wm. Passalacqua Builders v. Resnick Developers S., 933 F.2d 131, 139 (2d Cir. 1991).  Defendants "can hardly argue that [they] ha[ve] been unable to commence an investigation of the facts and frame a responsive pleading, because [they] ha[ve]

4

already done both." Wajilam Exp. (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

Defendants' argument that Plaintiff has failed to offer "evidence of any kind to support its alter ego allegations" is unpersuasive. (See Def. Mem. at 13.) Among other things, Plaintiff submitted a number of exhibits in support of its alter ego claims, including financial statements and other documents which indicate overlapping ownership and management among Inter Eltra and the Moving Defendants. (See Plaintiff's Declaration in Opposition to Defendants' Motion, Ex. 3-4.) Defendants' "arguments go to the ultimate merits of the claims," World Reach Shipping Ltd. v. Indus. Carriers Inc., No. 06 Civ. 3756, 2006 U.S. Dist. LEXIS 83224, at *7 (S.D.N.Y. Nov. 9, 2006), while, at this stage, the Court must "look only to Plaintiff's pleadings, and not to any evidence submitted by the parties, to determine whether Plaintiff has made a legally sufficient claim." SPL Shipping Ltd., 2007 U.S. Dist. LEXIS 18562, at *10. In conformity with the requirements of Rule B and E, Plaintiff has "allege[d] sufficient facts to support an inference" of alter ego liability. Wajilam Exp. (Singapore) Pte. Ltd., 475 F. Supp. 2d at 283.

### (2)    Defective Pleadings

Defendants argue that "in paragraph Forty-fifth of its Third Amended Verified Complaint," Plaintiff states that Defendants "'are the alter-egos of Defendant GUJARAT'," although "there is no defendant in this case named GUJARAT." (Def. Mem. at 16-17.) Defendants argue that "[a]lthough this undoubtedly is a typographical error," it occurs "in the very paragraph asserting the ultimate allegation of alter ego liability to sustain maritime jurisdiction over the moving defendants." (Def. Mem. at 17.) Defendants also state that the

March 13 Order "does not name [all] of the moving defendants." (Def. Mem. at 16.) Plaintiff does not dispute Defendants' arguments that Plaintiff's submissions contain defects.

Pursuant to the "liberal policy in non-habeas civil proceedings of allowing amendments to correct a defective pleading," the Court will allow Plaintiff ten days from the date of this Order to correct these errors by filing a Fourth Amended Verified Complaint, along with a request for an amended Order for Issuance of a Process of Maritime Attachment pursuant to Rule B. See Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 815 (2d Cir. 2000).

## IV.   Conclusion and Order

For the reasons stated herein, Defendants' Motion to Vacate is denied. Defendants' assets shall remain attached per the terms of the March 13 Order, which is construed to apply to all named defendants. Plaintiff shall file a Fourth Amended Verified Complaint and a request for an amended Order for Issuance of a Process of Maritime Attachment in accordance with the determinations in this Order, on or before July 5, 2007.

Dated: New York, New York
June 21, 2007

RICHARD M. BERMAN, U.S.D.J.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GOOD CHALLENGER NAVAGANTE
S.A.,

                     Plaintiff,

-v-

METALEXPORTIMPORT S.A. and
S.C. METALEXPORTIMPORT S.A.,

                     Defendants.

---

Case No. 06-CV-1847 (KMK)

ORDER

---

KENNETH M. KARAS, District Judge:

Having considered the submissions of the parties, and after conducting oral argument on July 6, 2006, IT IS HEREBY ORDERED THAT:

Defendant's Motion to Vacate the attachment of funds held by Plaintiff is DENIED.

The Court will not recite the facts, as it is assumed that the Parties are familiar with the facts of the case.

"Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supplemental Admiralty & Maritime R. E(4)(f). At such a hearing, Plaintiff bears the burden of proof. *See Ulises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F. Supp. 2d 318, 322 (S.D.N.Y. 2006). "'The post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant.' Therefore, the plaintiff must present evidence showing that the attachment was reasonable." *Id.* at 322-23 (quoting *Salazar v. Atlantic Sun*, 881 F.2d 73, 79-80

(3rd Cir. 1989)). Specifically, the plaintiff must demonstrate either that the attachment is necessary for the plaintiff to obtain jurisdiction in a convenient district, or that the plaintiff needs the security of the attachment to satisfy any judgment it may win in the underlying action. *Id.* at 323.

## Timeliness

Defendant first argues that Plaintiff's attempts to attach the remaining funds awarded in the 1983 arbitration are untimely. Specifically, Defendant argues that under the United Nations Convention on Recognition and Enforcement of Foreign Arbitration Awards ("Convention"), the arbitration award cannot be enforced in the United States, as more than three years have passed since it was awarded. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."). According to Defendant, this dispute falls under the Convention because Good Challenger seeks enforcement or recognition of an arbitration award in a nation other than the nation where the award was made. *See Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 196 (2d Cir. 1999) (citing Convention).

In this case, the arbitration award was originally granted in 1983. However, Plaintiff's Complaint seeks to enforce the judgment of the arbitration award, granted by the English court in 1993 and served on S.C. Metalexportimport on August 15, 2001, with permission from the English courts. This judgment was entered on January 17, 2003. A further award of costs was ordered in 2005. Section 207, however, "applies only to 'enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards,'" which are

2

governed by principles of comity. *Sarhank Group v. Oracle Corp.*, No. 01 Civ. 1285, 2004 WL 324881, at *3 (S.D.N.Y. Feb. 19, 2004). Therefore, the time limitations for Plaintiff's action would not be governed by § 207, and instead, would be governed by New York's statute of limitations.

Defendant, however, argues that the statute of limitations to enforce the English judgment has run. While the New York statute of limitations is twenty years, N.Y. C.P.L.R. § 211(b), New York's borrowing statute dictates that where the Plaintiff is not a resident of New York, the Court should apply whichever statute of limitations is shorter after comparing New York and the jurisdiction where the action arose. *See* N.Y. C.P.L.R. § 202. Both the arbitration award and the judgment Plaintiff seek to enforce were obtained in England, thus, the six-year English statute of limitations applies. As the judgment was entered in England in 2003, this statute of limitations has not yet run.

Nevertheless, Defendant argues that even if the statute of limitations has not run, Plaintiff's action should be barred by laches. In maritime actions, "the matter should not be determined merely by . . . the statute of limitations. The equities of the parties must be considered as well." *Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 66 (2d Cir. 1963). Therefore, "the court must weigh the legitimacy of [Plaintiff's] excuse, the inference to be drawn from the expiration of the state statute, and the length of the delay, along with evidence as to prejudice if the defendant comes forward with any." *Id.* at 66-67. Plaintiff has the burden of persuasion as to the reasons for its own delay as well as the lack of prejudice to Defendant. *Id.*

Defendant points to the ten-year gap between the 1983 arbitration award and the 1993 English judgment, as well as Plaintiff's eight-year delay in serving the English judgment, and

3

argues that it was prejudiced by these delays. Defendant specifically points to the interest accrued during this period of delay. Plaintiff asserts that there was no prejudice to Defendant due to the delay, as Defendant was aware of, and contested, all of the enforcement actions against Defendant. (Pl.'s Opp'n 14) Defendant's objection does not appear to be an appropriate factor in measuring prejudice. Instead, in considering laches, courts tend to look at whether the defendant would be prejudiced in the litigation. *See e.g. Hill v. W. Bruns & Co.*, 498 F.2d 565, 568-69 (2d Cir. 1974) (considering whether records could have been lost due to the delay). As accrued interest is a natural effect of a judgment which goes unsatisfied for a long period of time, this cannot act to invalidate the attachment.

## Enforceability of the English Judgment

Defendant argues that the 2001 English judgment should not be enforced because of a 1995 judgment by a Romanian court that the 1983 arbitration award should not be enforced in Romania, which was appealed to and affirmed by the Romanian High Court of Justice in 1998. (Def.'s Ex. 2, 3, 4) In New York, a foreign judgment "need not be recognized if . . . [it] conflicts with another final and conclusive judgment." N.Y. C.P.L.R. § 5304(b)(5); *see also Ocean Warehousing B.V. v. Baron Metals & Alloys, Inc.*, 157 F. Supp. 2d 245, 248 (S.D.N.Y. 2001). However, while Defendant argues that the Romanian court meant that the award was barred under English law, the Bucharest Commercial Court itself stated, "[T]hus, the request of claimant to approve the enforcement *in Romania* of the arbitration decision pronounced by the London Maritime Arbitration . . . is rejected . . . ." (Def.'s Ex. 2 at 5 (emphasis added); *see also* Ex. 3, 4 (echoing same)) The judgment entered in English court considered only the enforcement of the arbitration award under English law, and in doing so rejected *dicta* in the Romanian court

4

decision suggesting that the action was time-barred under English law. Thus, each decision actually considered whether the arbitration award could be enforced under the laws of the country in which the court sat, and thus they do not conflict.

Even if the two judgments did conflict, "[i]t is well settled that the last-in-time rule should be applied to conflicting sister-state judgments." *Byblos Bank Europe, S.A. v. Syrketi*, No. 2006 N.Y. Slip Op. 26179, 2006 WL 1222351, at *4 (N.Y. Sup. Ct. 2006). Even if, as Defendant asserts, the English Court would have had to apply res judicata to the prior judgment, (which is not completely evident under New York law, *see Byblos*, 2006 WL 1222351, at *5) there is no evidence that the English court did not do so, even if it did not specifically mention res judicata.

Either way, this Court is only charged with determining whether there were "reasonable grounds" for issuing an attachment. *See Ullises Shipping*, 416 F. Supp. 2d at 322. As Plaintiff has demonstrated the necessity of such an attachment, Defendant's res judicata arguments are best considered on a motion to dismiss, and not at this stage, where only the validity of the attachment itself is at issue.

### Validity of the PMAG at Time Served

Plaintiff served a copy of the PMAG issued on March 9, 2006 on Citibank every day afterwards, in accordance with *Reibor Int'l Ltd v. Cargo Carriers Ltd.*, 759 F.2d 262 (2d Cir. 1985). Defendant argues that the PMAG became void on March 9 since Citibank did not hold any of Defendant's money on that date, and because Plaintiff did not obtain a new PMAG before the April 6 transfer was received by Citibank.

There is no Second Circuit decision which specifically addresses whether a new PMAG

5

needs to be issued by the Clerk for every day of a Maritime Attachment until the day the financial institution has the property. Cases in this District have, however, held that *Reibor*'s requirement that service and attachment be separated by "just a few hours," *Reibor*, 759 F.2d at 267, permits service and attachment to both be in the same day, particularly where, as here, the garnishee's bank agrees to accept fax service of the PMAG once per business day and that such service would be effective for the remainder of that day. *See Ullises Shipping Corp.*, 415 F. Supp. 2d at 328; *Ythan Ltd. v. Americas Bulk Trans. Ltd.*, 336 F. Supp. 2d 305, 307 (S.D.N.Y. 2004). Defendant argues that these cases were wrongly decided, however, the Court is unpersuaded.

Further, it was not improper for Plaintiff to authorize Citibank to attach the funds under a slightly different name than that contained in the PMAG. This case is easily distinguishable from *Contichem v. Parsons Shipping*, 229 F.3d 426, 435 (2d Cir. 2000), cited by Defendant. The party seeking attachment in *Contichem* manipulated the use of temporary restraining orders and PMAGs to stop its own transfer to the garnishee. Here, Plaintiff simply told Citibank to attach funds Plaintiff honestly believed belonged to the party against whom they had obtained a PMAG. "Admiralty has not permitted technical niceties to defeat rights of foreign attachment." *Esso Standard (Switzerland) v. The Steamship Arosa Sun*, 184 F. Supp. 124, 128 (S.D.N.Y. 1960), and then expeditiously amended its Complaint to include the additional entity. Therefore, the attachment is not to be vacated on grounds of faulty service.

## Ownership of the Transferred Property

Defendant argues that the second transfer was not yet its property, as it was in transit from the transferor to Defendant. This question was already resolved in *Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd.*, 2003 WL 23021974, at *3 (S.D.N.Y. 2003), which holds that it is

6

proper to attach both transfers from and to the defendant. *See also Vanvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.*, No. 06 Civ. 1849, 2006 WL 1030227 (S.D.N.Y. Apr. 20, 2006); *Ythan Ltd.*, 336 F. Supp. 2d at 309. The attachment thus should not be vacated on this ground.

In addition, Defendant argues that the attached property was "after-acquired," and therefore ineligible for Rule B attachment. *See Contichem*, 229 F.3d at 433 (recognizing "well-established prohibition against maritime attachments of after-acquired property"). However, where the plaintiff and the garnishee bank agree to have service be effective for the entire day, as in this case, the transfer of funds is not "after" the service of process, and therefore not "after-acquired." *See Ythan*, 336 F Supp. 2d at 307-08. Thus, Plaintiff was entitled to continue serving the writ of attachment until it obtained the full amount allowed by the PMAG.

## Forum Non Conveniens and Jurisdiction

Defendant argues that the attachment should be vacated on grounds of forum non conveniens. However, "[t]he very nature of Rule B assumes that the defendant cannot be found in this district. *Forum non conveniens* concerns do not automatically trump . . . Rule B. . . . If complaints of inconvenience could remove an action from this forum, then the Rule would be rendered hollow." *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1352-53 (M.D. Fla. 2001). Thus, the attachment will also not be vacated on forum non conveniens. Further, as Rule B assumes that there is no personal or *quasi in rem* jurisdiction over the defendant, *c.f. Metal Transp. Corp. v. Account No. 232-2-405842 at Chase Manhattan Bank, N.A., In Rem*, No. 89 Civ. 8505, 1990 WL 103987, at *1 (S.D.N.Y. July 16, 1990) (holding that where personal jurisdiction over defendant exists, there are grounds to vacate

7

maritime attachment), there is no jurisdictional problem with the attachment. While personal

jurisdiction would be required for a recovery greater than that available through the attachment,

see *Orbis Marine Enters. v. TEC Marine Lines, Ltd.*, 692 F. Supp. 280, 285 (S.D.N.Y. 1988),

Plaintiff does not seek such relief here and thus, personal jurisdiction is not necessary.

SO ORDERED.

Dated:      July 17, 2006
            New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

8

# EXHIBIT 4

Transcript of the hearing

1

81FGMTCC
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

MTC LEVANT-LINE GmbH, BREMEN,

        Plaintiff,

        v.                   06 CV 3506 (JGK)

PAN-PACIFIC INTERNATIONAL &
TRANSPORTATION CO., LTD., et
al.,

        Defendants.

----------------------------------x

                       New York, N.Y.
                       January 15, 2008
                       2:45 p.m.

Before:

               HON. JOHN G. KOELTL,

                       District Judge

                APPEARANCES

CHALOS, O'CONNOR & DUFFY LLP
     Attorneys for Plaintiff
BY:  OWEN FRANCIS DUFFY, III

SEWARD & KISSEL LLP
     Attorneys for Defendants Finecom Shipping Ltd.
BY:  PAULA ODYSSEOS
     BRUCE G. PAULSEN

            SOUTHERN DISTRICT REPORTERS, P.C.
                (212) 805-0300

2

81FGMTCC
       (Case called)
       (In open court)
       THE DEPUTY CLERK:  Will counsel please state their
appearances for the record.
       MR. DUFFY:  Your Honor, Owen Duffy, Chalos, O'Connor &
Duffy, for the plaintiff MTC Levant.
       MR. PAULSEN:  Your Honor, Bruce Paulsen of Seward &
Kissel for Finecom, and with me is Paula Odysseos.
       THE COURT:  All right.  I've read the papers.  This is
a motion to vacate the attachment.  I'll listen to the parties.
I've read the papers.
       MR. PAULSEN:  Do you have any particular order, your
Honor?

Page 1

Transcript of the hearing

```
14          THE COURT:  No.  I would assume you'd go first but --
15          MR. PAULSEN:  Yeah.  Why don't I go ahead.
16          Your Honor, on behalf of Finecom, the fact that it hit
17   us between the eyes really when we received the plaintiff's
18   answering papers in response to our motion was the fact that an
19   arbitration award has already been granted in London and not
20   against our client.  The award is against --
21          THE COURT:  Did it really come as a shock to you?
22   Wouldn't you have received some notice if your client was
23   actually a party to the arbitration?
24          MR. PAULSEN:  Yes.  And our client received notice.
25   Finecom is not a party and didn't participate and is now being
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              3

8IFGMTCC
```
 1   sought to --
 2          THE COURT:  And your client wasn't a party to the
 3   charter party, so it --
 4          MR. PAULSEN:  That's correct.
 5          THE COURT:  -- didn't come at a complete shock to you.
 6   I mean, you were able to recoil from the shock between the
 7   eyes.
 8          MR. PAULSEN:  Well, indeed, your Honor.  I guess what
 9   the surprise was was that security was being sought in aid of a
10   pending London arbitration, and we did not know that an award
11   had come down.  And in fact, we're now looking at what is more
12   akin to an enforcement or a confirmation of an award than for
13   security in aid of a pending arbitration that has concluded
14   that did not include our party, that did not seek to include
15   our party.
16          THE COURT:  Okay.  Let me step back just for a second.
17   And all of you are experts in this area, but the complaint is a
18   maritime claim against Pan-Pacific for breach of the charter
19   party, a maritime contract, first claim.
20          Second claim, an alleged alter ego claim seeking to
21   hold the other defendants liable for the liability of
22   Pan-Pacific, also alleged to be a maritime claim.  Had there
23   been no arbitration clause at all, the plaintiff could have
24   successfully gotten a maritime attachment, a Rule B attachment,
25   based upon a prima facie case of an admiralty claim against the
```
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              4

8IFGMTCC
```
 1   other party to the charter party and a claim against the
 2   alleged alter egos as being liable in admiralty law as alter
 3   egos of the primary party, putting aside the arbitration for a
 4   moment.  Isn't that right?
 5          MR. PAULSEN:  They could have taken any sort of
 6   action --
 7          THE COURT:  Well, including bringing a maritime action
 8   in this court against the party to the charter party and the
 9   alleged alter egos.
10          MR. PAULSEN:  There certainly would be no stopping
11   them from doing so.
12          THE COURT:  And seeking a Rule B attachment in aid of
13   the maritime claim.  Right?
14          MR. PAULSEN:  As security for the maritime claim.
15          THE COURT:  As security for the maritime claim.
16   Right?
17          MR. PAULSEN:  Correct.
18          THE COURT:  The first claim in this case alleges a
```
                              Page 2

Transcript of the hearing
19  maritime claim and also alleges that there is an arbitration.
20  I mean, the complaint itself alleges only an arbitration
21  against Pan-Pacific and asks that the Court await, or language
22  to that effect, the -- it says, Plaintiff has commenced an
23  arbitration proceeding in London against Pan-Pacific and
24  reserves its right to arbitrate the substantive matters herein
25  before the LMAA arbitration panel. That's part of its claim
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

⊐                                                                    5

81FGMTCC
1  for breach of -- one paragraph of its breach of contract claim
2  against Pan-Pacific.
3      So then the question becomes if everything that I laid
4  out for you before would allow the plaintiff to seek and obtain
5  a Rule B attachment against the alleged alter egos, what is it
6  about the fact that there was an arbitration in London that now
7  precludes the Court from granting the attachment or requires
8  the Court to vacate the attachment?
9      MR. PAULSEN: In this connection, your Honor, I think
10 we are in fairly new territory. I suppose I could take what
11 you're saying and say that they haven't said in their complaint
12 that they're going to bring an action against the alter ego
13 somewhere else, perhaps in China --
14      THE COURT: Well, why isn't this action an action
15 against the alter ego, the second claim?
16      MR. PAULSEN: It is an action, but to paraphrase Judge
17 Wood in Tide Line, where in that case in both of her decisions
18 from August of '06, you had a situation where the London
19 arbitration was pending, but the alter egos were not named as
20 parties.
21      THE COURT: Right.
22      MR. PAULSEN: And the larger question is, well, how do
23 we deal with that.
24      THE COURT: Okay. I realize she raised the question.
25 It wasn't dispositive. She maintained the attachment against
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

⊏                                                                    6

81FGMTCC
1  the alter ego. She raised it as a question. It's an
2  interesting question, which I now turn to you for an answer,
3  some rationale, if you will, for why a complaint in this court
4  which on its face appears to allege an admiralty claim against
5  Finecom as an alter ego of the contracting party to a maritime
6  contract, what is there out there that says you can't grant a
7  Rule B attachment? What's the principle of law? What's the
8  issue that precludes the attachment?
9      You say, well, they may bring an action somewhere.
10 Who knows? London, wherever. They brought this action. They
11 brought this maritime action within the admiralty jurisdiction
12 of the court alleging that your client is the alter ego of the
13 party to the charter party and that you're liable on that
14 maritime claim.
15      Now, I assume this action is not going to be brought
16 in London or somewhere else. It's brought here in this
17 district. That's the second claim. And so it will proceed, an
18 action against your client alleging that your client is liable
19 for the liability under the first claim. And it's a maritime
20 action, and it will go forward.
21      MR. PAULSEN: My understanding of the historical
22 purpose of Rule B, as set forth in Aqua Stoli and a number of
23 the other decisions on the subject, is that its purpose,
                        Page 3

Transcript of the hearing
24    because of the transitory nature of shipping, is to provide a
25    mechanism to obtain security for a maritime claim.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

81FGMTCC
1            THE COURT:  Right.
2            MR. PAULSEN:  So we have that mechanism being invoked
3    here ostensibly in aid of a London arbitration which has
4    already been --
5            THE COURT:  Why is the second claim in aid of the
6    London arbitration?  The second claim against your client is an
7    alter ego claim, maritime claim which says your client, the
8    defendant, is liable to the plaintiff on a maritime claim based
9    upon the theory of alter ego, and the Rule B attachment is
10   there in order to provide the plaintiff with security against
11   an absent defendant who cannot be found within this district.
12   And it seems to fall squarely within the purposes of a Rule B
13   attachment, namely, security for a maritime claim.
14           MR. PAULSEN:  A maritime claim here?
15           THE COURT:  Here, right, in this court, plaintiff
16   against defendant, maritime claim pending in this court, I
17   mean, which is why I began with the question why does the fact
18   that there is an arbitration in London between the parties to
19.  the first claim mean that somehow the Court is deprived of the
20   statutory basis for a Rule B attachment in connection with the
21   second claim?  What's the legal principle?
22           MR. PAULSEN:  I would reiterate that my understanding
23   is that the principle is to obtain security, and I suppose
24   historically a Rule B attachment in New York has been in aid of
25   a proceeding elsewhere, almost always London, sometimes

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

81FGMTCC
1    somewhere else.
2            THE COURT:  But it doesn't have to be, does it?
3            MR. PAULSEN:  I've got to say that issue has not been
4    briefed, and as I stand here --
5            THE COURT:  Well, sure it has.  I mean, that's really
6    the gist of the disagreement between the parties.
7            Let me ask you another question.  You have raised in
8    your papers the New York convention.
9            MR. PAULSEN:  Right.
10           THE COURT:  And you say that the New York convention
11   would prevent, at least as I read your papers, any -- would
12   preclude the second cause of action.  And I don't see any cases
13   that say that the New York convention would preclude the second
14   cause of action, namely, an alter ego claim against Finecom,
15   and I don't really see why that would be true.
16           MR. PAULSEN:  Again, our brief was couched on the
17   notion that this action, both causes of action, including the
18   prayer for relief at the end, are based on an attempt to obtain
19   security in aid of a London arbitration that has concluded, and
20   this was, in effect, an attempt to confirm a foreign arbitrable
21   award in New York which would make the convention applicable.
22   And there's been no evidence in this forum of an agreement to
23   arbitrate between the parties.  I mean, that's the thrust of
24   that argument.
25           THE COURT:  It would not be uncommon, when you try and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

Transcript of the hearing

81FGMTCC
1  force the results of an arbitration award against an alter ego,
2  for the alter ego to be a nonparty to the arbitration.
3          MR. PAULSEN: Well, the Second Circuit in the Orion
4  case indicated that seeking to pierce the veil in a
5  confirmation phase is inappropriate, and English law supports
6  that.
7          THE COURT: But the Second Circuit in Orion also said
8  you can have another cause of action against the alter ego to
9  attempt to enforce the arbitration. They seem to say in that
10  same proceeding to enforce the arbitration award. So they left
11  open the possibility of going out and suing the alter ego for
12  the arbitration award. They explicitly left that open.
13          They just had a problem with what they thought -- what
14  the Court of Appeals said was a straightforward action to
15  enforce the arbitration award and to include both the party to
16  the arbitration award and the alter ego.
17          And so I come back to this complaint and, if anything,
18  the second cause of action doesn't purport to be based on
19  somehow an enforcement of the arbitration award as opposed to
20  an action against the alter ego based on maritime law such that
21  they are liable for the breach of the maritime contract as the
22  alter egos of Pan-Pacific Transportation.
23          Now, that may well leave open the issue of are you
24  bound by the arbitration award, or does the plaintiff have to
25  prove in this case both the breach of the contract and your
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    10

81FGMTCC
1  alter ego liability. Those are interesting questions. Perhaps
2  that was what Judge Wood was getting at in the issues that she
3  raised, but she said, okay, you can file an amended complaint
4  alleging alter ego liability. And so they did.
5          MR. PAULSEN: Right.
6          THE COURT: And what the eventual scope and the proof
7  of that claim is doesn't have to be decided now. Why isn't it
8  perfectly right that they have alleged a prima facie admiralty
9  claim for which they get a Rule B attachment and now you all
10  can go out and prove whatever has to be proven with respect to
11  their allegations against your client?
12          MR. PAULSEN: If I could just read briefly from the
13  prayer for relief in the complaint: Notwithstanding the fact
14  that the substantive liability of the plaintiff Levant for the
15  alleged breach of the maritime contract will be determined by a
16  panel of maritime arbitrators in London, England, there are now
17  or will be during the pendency of this action certain assets
18  belonging to the defendants... and so on and so forth, and goes
19  forth to seek relief in attachment under Rule B and so on and
20  so forth.
21          So I'm not so sure that at least the plaintiff has
22  couched this complaint in the manner that you're reading and
23  certainly not the way I read it.
24          Now, it's true that Judge Wood -- and I'm not seeing
25  the language. Here we go. It is described on page *51 of the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    11

81FGMTCC
1  first decision in Tide Line where she described a larger issue,
2  which said: Which, although it does not in and of itself
3  require that the attachment be vacated, poses a problem for the
4  unfolding of this action. And you're right, she doesn't go on
                        Page 5

Transcript of the hearing

5  and say much more about it beyond that.
6          I think that in this case, that larger question is
7  even larger, since there is no manner in this way that our
8  client could be brought into the London arbitration. It's
9  over. It's done.
10          THE COURT: So, what, I accept the proposition -- and
11  the complaint was not ambiguous on the subject. The complaint
12  made it clear that the plaintiff had brought an arbitration in
13  London against Pan-Pacific. The complaint never said that the
14  plaintiff brought an arbitration against the other parties.
15          MR. PAULSEN: And the same is true in Tide Line. It
16  was the allegations of the complaint that described the
17  arbitration in London as not being against the nonparties.
18          THE COURT: Is there any case that has dismissed or
19  vacated or refused to grant a Rule B attachment against an
20  alleged alter ego of a party to an arbitration which involved
21  an admiralty claim?
22          MR. PAULSEN: Where there already has been an award?
23          THE COURT: Either way, where there's been an award or
24  while the arbitration is going on.
25          MR. PAULSEN: Could you read the question back? I'm
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                                    12

81FGMTCC
1  sorry.
2          THE COURT: Sure. Is there any case which a court
3  vacated a Rule B attachment or refused to grant a Rule B
4  attachment because the party against whom the attachment was
5  sought was alleged to be an alter ego of a party to an
6  arbitration proceeding or was not a party to an arbitration
7  proceeding?
8          In other words, the result you're asking me to reach,
9  is there any court which has done that based upon the fact that
10  you can't have a Rule B attachment against a nonparty to an
11  arbitration, you can't have a prima facie case of alleged alter
12  ego liability when that alter ego was not itself a party to the
13  arbitration.
14          MR. PAULSEN: I know of no ruling --
15          THE COURT: Okay.
16          MR. PAULSEN: -- or contract, for that matter.
17          THE COURT: There are several cases in this district
18  which have allowed such Rule B attachments.
19          MR. PAULSEN: Maybe I'm reading your question a little
20  bit too far, but I know of now no cases that would answer your
21  question in that manner.
22          THE COURT: Judge Karas' case allowed Rule B
23  attachment against an alter ego.
24          MR. PAULSEN: That was a nonparty, but that was where
25  the arbitration was pending.
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                                    13

81FGMTCC
1          THE COURT: What difference does that make?
2          MR. PAULSEN: They could bring that alter ego into the
3  arbitration, if need be, and obtain an award.
4          THE COURT: Judge Karas wasn't clear, if I recall it
5  right, that it was so clear that you could bring a nonparty in.
6  I mean, there's Second Circuit law that says you can get a
7  nonparty in, but not clear that a London arbitrator -- and the
8  parties weren't clear. I mean, the parties said that they
9  weren't clear before Judge Karas and --
                          Page 6

Transcript of the hearing

10         MR. PAULSEN: That's my recollection.
11         THE COURT: And then he cited two other decisions from
12  other judges in the district which also have given Rule B
13  attachments.
14         MR. PAULSEN: Right. Although I don't think -- in
15  fact, I'm reasonably certain that in none of those cases was
16  the arbitration finished. They were pending, which is the
17  usual scenario. There are certainly a number of decisions out
18  there and quite a number of alter ego decisions just in the
19  last two years.
20         THE COURT: But what I'm trying to understand -- and I
21  realize that all of you regularly deal with these things and
22  are the experts in the field -- is why it makes a difference,
23  why the principle is not pretty straightforward that alleged
24  alter ego liability on the ultimate contract in a maritime
25  claim states a prima facie claim and you can have a Rule B
              SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

14

81FGMTCC
1  attachment.
2         The Rule B attachments aren't limited to -- the anchor
3  for a Rule B attachment is a maritime claim. It's not an
4  arbitration. If the parties never had an arbitration, if it
5  didn't include an arbitration provision, they could still have
6  a Rule B attachment, and the case just proceeds here. And what
7  I'm having trouble seeing is why it makes any difference at all
8  to the language of the Rule B attachment and the purpose of the
9  Rule B attachment that two of the parties in the case are
10  parties to the London arbitration.
11         As I said, Rule B isn't limited to arbitrations, and
12  so it's hard to see why the existence of an arbitration should
13  limit the court's power to issue an attachment under Rule B.
14  There's nothing in the language of Rule B that suggests that.
15         MR. PAULSEN: What I'd suggest is that it would be an
16  expansion of the traditional scope of Rule B as security.
17         THE COURT: But it's security for a maritime claim,
18  irrespective of whether there's an arbitration.
19         MR. PAULSEN: That is correct.
20         THE COURT: Okay. Mr. Duffy.
21         MR. DUFFY: Your Honor, just to address the
22  arbitration point, if I understood you correctly, the Judge
23  Karas case you were referring to was the T&O Shipping case?
24         THE COURT: Right.
25         MR. DUFFY: I think there's been countless cases where
              SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

15

81FGMTCC
1  courts have allowed the Rule B maritime attachment for a
2  maritime claim in aid of London arbitration. And I think one
3  particular point that needs to be emphasized in this case is
4  when we filed this complaint in February -- this was an amended
5  complaint in February of 2007 -- we didn't have an arbitration
6  award, and we didn't have even the arbitration initiated in
7  that instance.
8         In March we attached $150,000 worth of the defendant
9  Finecom's funds. We gave them notice of the attachment. I
10  didn't receive any response in March, April, May, June. In the
11  meantime, my clients went ahead with the arbitration. The
12  arbitrators sent out the notices to the defendant, and
13  eventually he issued an arbitration award.
14         Now go back --
                    Page 7

Transcript of the hearing
15          THE COURT:  The defendant Pan-Pacific?
16          MR. DUFFY:  The defendant Pan-Pacific.  And you go
17 back to the underlying basis of a Rule B maritime attachment as
18 set forth in Aqua Stoli, but it goes back to the Swift &
19 Packers case from the Supreme Court.  It's to establish
20 jurisdiction and to establish a fund for securities so that an
21 eventual award --
22          THE COURT:  It's not "and."  It's "or."
23          MR. DUFFY:  "Or," yes, your Honor.  Or a fund from
24 which an eventual judgment can be satisfied.
25          Now, that's what we did in this case.  We established
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

81FGMTCC
1 the attachment.  We established jurisdiction over their
2 property to the amount of $150,000.  We have an arbitration
3 award.  What he's dealing with is kind of separate from what
4 I'm dealing with.  I mean, he's saying right now we shouldn't
5 have our money attached because we weren't a party to the
6 arbitration.  We have a maritime claim against them.  Yes, it
7 is a valid maritime attachment.
8          I may have to go to the next step and take the
9 arbitration award and come back to the court and say would you
10 please confirm this award on notice and everything.  They may
11 object to it.  Then, once I get the arbitration award, I have
12 to prove the case that they are, in fact, the alter ego.
13          But right now we're at a Rule E hearing where they're
14 just trying to determine whether or not the attachment should
15 be vacated or not, and we're limited to the four Aqua Stoli
16 factors, which goes back to the prima facie claim, not found
17 within the district, property of the defendant.  We have all of
18 those.
19          The only issue that I see here is whether or not we
20 have a valid prima facie claim against them, and I would submit
21 to you that we do.  And do you want me to keep going on this,
22 your Honor?
23          THE COURT:  Well, the prima facie claim is the claim
24 that's set out in the second claim for relief in your amended
25 complaint --
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

81FGMTCC
1          MR. DUFFY:  Yes, your Honor.
2          THE COURT:  -- it's alter ego liability.
3          MR. DUFFY:  Yes, your Honor.
4          THE COURT:  And how you'll eventually prove that is
5 not really before me at the moment.  Isn't that right?
6          MR. DUFFY:  That's correct, your Honor.  I know that
7 Judge Wood raised an issue about that, but I believe there's at
8 least two other cases.  One that I'm very familiar with was the
9 Cecil Maritima case where the court just said, okay, you've
10 overcome the -- in that case he didn't apply the reasonable
11 grounds, but he said you maintained the attachment.  Now go and
12 prove your case.
13          And I believe there was another one that was World
14 Shipping where the court said right now I'm at a Rule E
15 hearing.  I look at this under either the reasonable grounds or
16 the prima facie case.  What happens after that, you go out and
17 do your discovery, and whether or not you can prove your case
18 for an alter ego liability is another thing, but right now
19 we're here at a different juncture in the case.
Page 8

Transcript of the hearing
20      THE COURT:  How do you eventually, with respect to
21  count two -- I have to look at count two and ask whether that
22  states a prima facie case for an admiralty claim.  Right?
23           MR. DUFFY:  Uh-huh.
24      THE COURT:  -- sufficient to maintain the attachment
25  against Finecom.  Right?
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                          18

81FGMTCC
1          MR. DUFFY:  That's correct.  There's two counts in the
2  Southern District.
3           THE COURT:  I know.  One is reasonable grounds.  One
4  is --
5          MR. DUFFY:  Yes.  So I won't go into all of that.  I
6  assume you're familiar with it.  And I would note that I was
7  before you once before with the other defendant Pan-Pacific,
8  and you did apply a reasonable grounds test in that case.  And
9  I understand your logic on that.  I would also ask you to
10  recognize that on the same day, Judge Buchwald issued a
11  decision that applied the prima facie case.
12          THE COURT:  I think the cases are more in favor of
13  prima facie these days.  Go ahead.
14          MR. DUFFY:  That's my argument to your Honor, but I
15  believe even in this case under the reasonable grounds
16  standard, we still meet the burden in this case.
17          THE COURT:  Okay.  How do you expect to eventually
18  prove count two?
19          MR. DUFFY:  I'm going to have to get a little creative
20  on discovery, and if they don't want to defend the discovery, I
21  have their property here.  And then I believe they have an
22  impetus to participate in discovery.  They can't just ignore
23  it.  I believe the words to -- I'm trying to remember the
24  judge's name, but I forget it.  But it was in the Cecil
25  Maritima case.  I believe it was Judge Stein said to me you've
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

                                                          19

81FGMTCC
1  got to deal with this.  You just can't let it go away, and I
2  had to deal with it.  I was on the defendant's side that time.
3  No, it wasn't Judge Stein.  It was Judge Hellerstein.
4          THE COURT:  My recollection, with respect to the other
5  defendant who was dismissed, is that you eventually agreed to
6  that, that you really did have the wrong defendant in that
7  case.
8          MR. DUFFY:  We dismissed him, your Honor.  We had a
9  different view of how this whole thing played out, and a lot of
10  it wasn't clear to us until this fellow from Pan-Pacific came
11  in.  And he wound up presenting evidence which this Court
12  characterized as persuasive and laying out what was going on in
13  this situation, and eventually we went back and regrouped.  And
14  we said, look, we're not going to ever win a case against that
15  defendant.  Let's just let him out of the case.  And we did.
16          But based on the evidence that he gave, we went back
17  and started looking at the underlying transaction, and things
18  started to fall into place.  And that's why I came back and I
19  asked you if I could amend my complaint to name these fellows
20  Finecom and Sinoriches.
21          THE COURT:  Is there, based upon your experience,
22  anything in the New York convention that precludes a claim for
23  alter ego liability?
24          MR. DUFFY:  Absolutely not, your Honor.  I've never
                           Page 9

Transcript of the hearing
25    heard that before.  And, I mean, I think I have seen cases
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

81FGMTCC
1    afterwards.  I think Orion was the case that was dealing with
2    it.  And I don't know why I still don't understand the logic of
3    it, but they said, well, you can't do them all at once.  You've
4    got to have one proceeding to confirm the award.  Then you have
5    to have another proceeding to enforce the alter ego liability.
6    And that's what I understood that case to say.
7          THE COURT:  The decision was somewhat unclear on that,
8    and I question whether it could have been an issue of
9    jurisdiction, but the Court didn't explain, other than to say
10   that the decision to enforce the arbitration award would be a
11   streamlined, straightforward decision.
12         MR. DUFFY:  Well, you've got to look at it in two
13   steps, your Honor.  I come in with an arbitration award, and I
14   say, okay, this arbitration award was rendered in London.  I
15   come in under the convention.  Contracting state, you have
16   jurisdiction to confirm the award.  Now, do you have
17   jurisdiction to confirm the award against all other parties?
18   Not necessarily.  But you have jurisdiction over Finecom to the
19   to the amount of quasi in rem jurisdiction to the amount of
20   $150,000 where you can enforce the award to them in that
21   amount, and that's because I established quasi in rem
22   jurisdiction with the attachment.
23         THE COURT:  Okay.  Anything else?
24         MR. DUFFY:  Did you want to hear any further points on
25   the alter ego claim, the reasonable basis for a prima facie
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

81FGMTCC
1    standard?
2          THE COURT:  No.
3          MR. PAULSEN:  Judge, just one brief comment on just
4    the last thing that Mr. Duffy said that, yes, the jurisdiction
5    is up to $150,000.  It's quasi in rem, but we don't believe he
6    can enforce the award against that without --
7          THE COURT:  I'm sorry?
8          MR. PAULSEN:  We do not believe that he can enforce
9    the arbitration award obtained in London against that amount.
10         THE COURT:  You mean up to that amount?
11         MR. PAULSEN:  Up to that amount or for any amount
12   because he has not named our client as a party to that
13   proceeding.
14         THE COURT:  Why?
15         MR. PAULSEN:  We've had our conversation about it,
16   but, I mean, if he is saying he can enforce that award against
17   the $150,000 without more, without a finding somehow that our
18   client is liable for the amount of that award --
19         THE COURT:  The issue would be whether you can enforce
20   against an alter ego an arbitration award.
21         MR. PAULSEN:  Right, where the alter ego was not a
22   party.
23         THE COURT:  Where the alter ego was not a party to the
24   arbitration itself.  Is the alter ego found by the party who is
25   the counterpart to the alter ego?  Even if that were not
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

81FGMTCC

Page 10

Transcript of the hearing
1   true -- and I don't see any cases on that -- the plaintiff
2   would still have the plaintiff's claim, which in this case it
3   would not be a difficult claim, it seems to me, just based on
4   the papers, to prove a breach of the charter party and then
5   alter ego liability for that liability up to $150,000, even if
6   they could not use as part of their proof the fact that there
7   was an arbitration award.
8           MR. PAULSEN:  Correct.  Correct.  It was the reference
9   to the award that I was addressing.
10          THE COURT:  So if you accept that, then it's
11  preeminently clear that the attachment shouldn't be vacated.
12  All of this is just over what's the proof that the plaintiff is
13  going to have to put on to sustain the second claim, the alter
14  ego liability of your client to the plaintiff.  Can the
15  plaintiff rely on the finding of liability in the London
16  arbitration and proceed directly to the issue of alter ego
17  liability, or does the plaintiff also have to prove, as part of
18  the second claim, that there was a breach of the charter party
19  and that the damages were in excess of $150,000?
20          MR. PAULSEN:  Right.  And we'd certainly argue that he
21  could not rely on the award to that effect.
22          THE COURT:  Okay.  But all of that just means that
23  it's eminently clear that the result today has to be to deny
24  the motion to vacate the attachment.
25          MR. PAULSEN:  We are still of the mind, your Honor --
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              23

81FGMTCC
1           THE COURT:  What?
2           MR. PAULSEN:  We're still of the mind, your Honor, as
3   we expressed earlier, that we don't believe that that's in the
4   nature of the moving attachment based on its historical
5   perspective, but we understand what you're saying.
6           THE COURT:  Okay.  I don't want to repeat myself too
7   much on this, but the one thing I still don't understand is you
8   keep on saying that it's not within the historical scope of a
9   Rule B attachment.  And, again, I turn to all of you as the
10  experts.  I had thought that a Rule B attachment is there to
11  have security for jurisdiction over a maritime claim.  A
12  maritime claim is broader than a London arbitration.  Just
13  because the overwhelming number of the Rule B attachments we
14  get these days are in aid of London arbitration where the
15  parties decide to have London solicitors argue it out in London
16  doesn't mean that Rule B attachments are somehow limited to
17  London arbitrations.  Rule B attachments are broader.  They're
18  to provide security or jurisdiction for maritime claims, and
19  maritime claims aren't limited to London arbitrations.  Isn't
20  that right?
21          When you talk about the historical purpose of Rule B
22  attachments, I thought the historical purpose of Rule B
23  attachments, going back many years, was not in aid of London
24  arbitrations but, rather, in aid of the jurisdiction of this
25  court to have security for jurisdiction over sailing ships
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              24

81FGMTCC
1   which could leave the New York harbor.
2           MR. DUFFY:  Your Honor, I would just add in there I am
3   familiar with a few recent cases besides London arbitration.
4   We've done them in other places, but we've had a couple
5   situations where there were oral maritime contracts, and nobody
                        Page 11

Transcript of the hearing
 6   ever specified a forum.  And there was a dispute over whether
 7   they even agreed to London arbitration.  So the attachment was
 8   initiated here, got jurisdiction over the parties' property and
 9   said if you don't want to agree to litigate this someplace
10   else, we're going to litigate it before the Southern District
11   of New York because they now have jurisdiction.  And that's the
12   way I've always understood it to work.
13          THE COURT:  Okay.  All right.  I'm prepared to decide.
14          The defendant Finecom Shipping Ltd., "Finecom," moves
15   pursuant to Rule E(4)(f) of the Supplemental Rules of Certain
16   Admiralty and Maritime Claims to vacate an order of maritime
17   attachment issued by this court on May 10, 2007.  On February
18   14, 2007, the plaintiff, MTC Levant-Line GmbH, Bremen, "MTC
19   Levant-Line" hereinafter, filed an Amended Verified Complaint
20   against the defendant, alleging breach of a charter party,
21   amended complaint paragraphs 10 to 17, and seeking an ex parte
22   order of attachment in aid of a London arbitration against
23   Pan-Pacific International Trading & Transportation Co.,
24   "Pan-Pacific Transportation," the actual signatory to the
25   charter party, Id. at paragraph 13.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

ℑ                                                                    25

        81FGMTCC
 1          The Court reviewed the verified complaint and attorney
 2   affidavit and, after determining that the conditions of
 3   Supplemental Rule B appeared to exist, including that the
 4   defendant Finecom, along with the eight other defendants, was
 5   the alter ego of Pan-Pacific Transportation, entered an order
 6   dated February 15, 2007 authorizing process of maritime
 7   attachment and garnishment as against $150,000 of assets
 8   belonging to Finecom.
 9          The parties subsequently appeared before the Court.
10   Subsequent to that appearance, an arbitration award was
11   obtained in London against defendant Pan-Pacific Transportation
12   for demurrage related to the charter of the M/V Yelena
13   Shatrova.  See affidavit of Owen F. Duffy dated September 21,
14   2007, Duffy affidavit, Exhibit 34.  See also Duffy affidavit,
15   Exhibit 15.  On September 7, 2007, defendant Finecom moved to
16   vacate the attachment.
17          Rule E(4)(f) provides that, quote, whenever property
18   is arrested or attached, any person claiming an interest in it
19   shall be entitled to a prompt hearing at which the plaintiff
20   shall be required to show why the arrest or attachment should
21   not be vacated or other relief granted consistent with these
22   rules, unquote.
23          In order to obtain an attachment, apart from
24   satisfying the filing and service requirements of Rules B and
25   E, the plaintiff bears the burden of showing that, quote, one,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

ℑ                                                                    26

        81FGMTCC
 1   it has a valid prima facie admiralty claim against the
 2   defendant; two, the defendant cannot be found within the
 3   district; three, the defendant's property may be found within
 4   the district; and four, there is no statutory or maritime law
 5   bar to the attachment, unquote.  Aqua Stoli Shipping Ltd., v.
 6   Gardner Smith Pty Ltd., 460 F.3d 434, 445, Second Circuit 2006;
 7   Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., No.
 8   05 cv 7955, 2006 Westlaw 3019558, at *2, Southern District of
 9   New York, October 23, 2006.
10          The Court must vacate an attachment if the plaintiff
                            Page 12

Transcript of the hearing
11  fails to sustain its burden of demonstrating that the
12  requirements of Rule B and E are satisfied. Aqua Stoli, 460
13  F.3d at 445; Mediterranea Di Navigazione Spa v. Int'l
14  Petrochemical Group, S.A., No. 06 cv 6700, 2007 Westlaw
15  1434985, at *1, Southern District of New York, May 15, 2007.
16          The defendant's challenge to the order of attachment
17  essentially rests on two grounds. First, the defendant argues
18  that the attachment must be vacated because an arbitration
19  award that does not name Finecom has been awarded in the London
20  arbitration, and moreover, that the plaintiff could not enforce
21  the award against Finecom pursuant to the United Nations'
22  Convention on the Recognition and Enforcement of Foreign
23  Arbitrable Awards, "New York Convention," 9 USC Section 201.
24  Second, the defendant argues that Finecom is not the alter ego
25  of the judgment debtors and thus the plaintiff fails to make a
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

]                                                               27

81FGMTCC
1   prima facie claim under Rule B.
2           The defendant argues that the attachment should be
3   vacated because Finecom was not named as a party in the
4   underlying arbitration. Specifically, the defendant contends
5   that the Court may not use Rule B to attach the funds of a
6   foreign defendant who is alleged to be the alter ego of a party
7   to a foreign arbitration wherein an award was issued. The
8   defendant's argument is not properly focused on the issue
9   before the Court at this time.
10          The plaintiff asserts that it will seek to have the
11  underlying arbitration award against the defendant Pan-Pacific
12  Transportation confirmed against Finecom on the basis that
13  Finecom was an alter ego of the other defendant. The issues on
14  this motion are limited to whether the plaintiff satisfied the
15  elements of a Rule B attachment. Claims based on allegations
16  of alter ego may satisfy the prima facie admiralty case prong
17  if the plaintiff seeks to enforce an arbitration award in an
18  admiralty case against an alter ego of a party against whom the
19  arbitration award was made. See SPL Shipping Ltd. v. Gujatat
20  Cheminex Ltd., No. 06 cv 15375, 2007 Westlaw 831810, at *3,
21  Southern District of New York, March 15, 2007. If the
22  plaintiff has made out a prima facie case, the attachment may
23  not be vacated at this stage, even though the defendant was not
24  a named party to the London arbitration.
25          The defendant contends that Tide Line, Inc. v.
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

]                                                               28

81FGMTCC
1   Eastrade Commodities, Inc., No. 06 cv 1979, 2005 U.S. District
2   LEXIS 95879, Southern District of New York, August 15, 2006,
3   "Tide Line I," suggests that Rule B is not the proper mechanism
4   to enforce an award against the defendant who is not named in
5   the arbitration and the issue of alter ego was not litigated in
6   the foreign arbitration. The defendant reads too much into
7   Tide Line.
8           In Tide Line, Chief Judge Wood dismissed a Rule B
9   attachment obtained by the plaintiff Tide Line against an
10  alleged alter-ego party, Transclear, on the grounds that the
11  plaintiff insufficiently pleaded that the entity was the alter
12  ego of the named defendant Eastrade Commodities, Inc. Chief
13  Judge Wood stayed the release of the funds, however, and
14  provided an opportunity to the plaintiff to amend its complaint
15  to allege alter ego, which the plaintiff successfully did. Id.
                        Page 13

Transcript of the hearing

16    at *49 to 50.
17          The defendant suggests that the Tide Line case stands
18    for the proposition that the plaintiff may not proceed against
19    Finecom in federal court because Finecom was not named in the
20    London arbitration. The defendant points to Chief Judge Wood's
21    discussion of how Tide Line could proceed against Transclear in
22    the district court on the basis of alter-ego theory when
23    Transclear was not named to the arbitration proceeding in
24    London. Chief Judge Wood noted that it was unclear how Tide
25    Line could attach property and litigate the liability of the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    29

81FGMTCC
1    alleged alter-ego defendant not named in an arbitration. Id.
2    at *54. Chief Judge Wood also noted, however, that, quote,
3    this does not suggest that Tide Line does not have a prima
4    facie claim against Transclear, unquote. Id. at *55.
5          See also Tide Line, Inc., v. Transclear, S.A., No. 06
6    cv 1979, 2006 U.S. District LEXIS 60770, at *3, Southern
7    District of New York, August 25, 2006, "Tide Line II," granting
8    Tide Line's request for leave to file an amended complaint and
9    noting that the issue needed to be further explored and did not
10   render the granting of an opportunity to amend the complaint
11   futile.
12         In any event, Tide Line was settled before the Court's
13   decision on the motion to vacate and therefore does not stand
14   for the proposition, as the defendant claims, that Rule B
15   cannot be used to attach the funds of an entity who is alleged
16   to be an alter ego of a party to a foreign arbitration.
17         Further, although the defendant rightly points out
18   that the Court of Appeals has expressed that a motion to
19   confirm an arbitrable award is generally an inappropriate
20   occasion for a district court to consider an alter-ego theory
21   of liability, see Orion Shipping & Trading Co. v. Eastern
22   States Petroleum Corp., 312 F.2d 299, 301, Second Circuit 1963,
23   that case concerned a commercial arbitration award sought to be
24   enforced under the Federal Arbitration Act. The decision
25   expressly found that the prevailing party in an arbitration
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    30

81FGMTCC
1    could bring a separate action against an alleged alter ego of a
2    party found to be liable in the arbitration. See Id. at *301.
3          There is nothing in Orion that would prevent an
4    alter-ego claim being asserted against a nonparty to an
5    arbitration when the claim was properly within the admiralty
6    jurisdiction of the Court. Other cases have since noted that
7    Orion does not serve as a complete bar to confirmation of an
8    award against a nonparty to the arbitration. See Gvozdenovic
9    v. United Airlines, Inc., 933 F.2d 1100, Second Circuit 1991,
10   stating Orion Shipping is inapplicable in labor arbitration
11   context; District Council No. 9 v. Apc Printing, Inc., 272
12   F.Supp.2d 229, 237-38, Southern District of New York 2003,
13   noting other courts have found Orion does not preclude a
14   finding of alter ego on a motion to confirm; Cf. Promotora De
15   Navegacion S.A. v. Sea Containers Ltd., 131 F.Supp.2d 412, 422,
16   Southern District of New York 2000.
17         The defendants do not cite any cases standing for the
18   proposition that the plaintiff may not enforce an arbitration
19   award against an alter ego where the Court's jurisdiction is
20   based on its admiralty jurisdiction, and several judges in this
                              Page 14

Transcript of the hearing
21    court have affirmed maritime attachments against alleged alter
22    egos of parties against whom arbitration awards were entered.
23    See SPL Shipping Ltd. at *3, collecting cases.
24         In any event, the only question presently before the
25    Court, as in Tide Line, is whether the plaintiff has made a
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

31

81FGMTCC
1    prima facie alter-ego claim sufficient to attach the funds of
2    the defendant under Rule B.
3         The Court now looks to whether the plaintiff has
4    alleged a prima facie alter-ego case against the defendant
5    Finecom.  Although the defendant argues that the plaintiff must
6    show that reasonable grounds exist for the attachment, the
7    Court will follow the majority of the courts in this district
8    in applying the prima facie standard to evaluate whether
9    pleadings make out a prima facie case of alter ego, as this
10   standard more closely complies with the Second Circuit Court of
11   Appeals' rejection of the "broader Rule E4(f) inquiry" that the
12   reasonable grounds test calls for.
13         See Aqua Stoli, 460 F.3d at 436; see also Wilhelmsen
14   Premier Marine Fuels AS v. UBS Provedores Pty Ltd., 07 cv 5798,
15   2007 Westlaw 2872477, at *9, Southern District of New York,
16   September 28, 2007; Dolco Investments, Ltd. v. Moonriver
17   Development, Ltd., 486 F.Supp.2d 261, 266, Southern District of
18   New York 2007; SPL Shipping Ltd., 2007 Westlaw 831810, at *3;
19   Tide Line, 2006 U.S. District LEXIS 95870, at *53; but see
20   Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475
21   F.Supp.2d 275, 283-84, Southern District of New York 2006,
22   applying a "reasonable grounds" standard.
23         While as a general matter the existence of a corporate
24   relationship alone is insufficient to bind a nonparty to an
25   agreement, the corporate veil will be pierced in order to, A,
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

32

81FGMTCC
1    prevent fraud or other wrong or, B, where a parent dominates a
2    subsidiary to such a degree as to demonstrate an abandonment of
3    corporate separateness.  See Thomson-CSF S.A. v. American
4    Arbitration Association, 64 F.3d 773, 777, Second Circuit 1995.
5         The Court of Appeals has enumerated several factors to
6    help courts determine whether a corporation is dominated and
7    controlled.  Quote, one, the absence of the formalities and
8    paraphernalia that are part and parcel of the corporate
9    existence, i.e., issuance of stock, election of directors,
10   keeping of corporate records and the like; two, inadequate
11   capitalization; three, whether funds are put in and taken out
12   of the corporation for personal rather than corporate purposes;
13   four, overlap in ownership, officers, directors, and personnel;
14   five, common office space, address and telephone numbers of
15   corporate entities; six, the amount of business discretion
16   displayed by the allegedly dominated corporation; seven,
17   whether the related corporations deal with the dominated
18   corporation at arm's length; eight, whether the corporations
19   are treated as independent profit centers; nine, the payment or
20   guarantee of debts of the dominated corporation by other
21   corporations in the group; and ten, whether the corporation in
22   question had property that was used by other of the
23   corporations as if it were its own, unquote.
24         William Passalacqua Builders, Inc. v. Resnick
25   Developers South, Inc., 933 F.2d 131, 139, Second Circuit 1991;
                         Page 15

Transcript of the hearing
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

81FGMTCC
1   Tide Line, Inc., 2006 U.S. District LEXIS 95870, at *37-36.
2   The district court should exercise only a very limited inquiry
3   into the underlying facts in light of the Aqua Stoli decision.
4   As Chief Judge Wood noted in Tide Line, it is not necessary for
5   the plaintiff to submit evidence as to these factors but only
6   for the pleadings to allege sufficiently alter-ego status.
7   Tide Line, 2006 U.S. District LEXIS 95870, at *38-39.
8        The plaintiff's verified amended complaint more than
9   sufficiently makes a prima facie case for alter ego.  In the
10  amended complaint, the plaintiff alleges that Finecom
11  controlled and dominated Pan-Pacific Transportation, that
12  Pan-Pacific Transportation was undercapitalized and had no
13  tangible assets or independent discretion, that Finecom's funds
14  were intermingled with Pan-Pacific Transportation and that
15  Finecom is the alter ego of Pan-Pacific Transportation and, as
16  such, is liable for the breach of the maritime contract.  See
17  amended complaint paragraphs 18 to 32.
18       These allegations include several factors courts can
19  consider when determining whether a corporation is dominated
20  and controlled by another, and are sufficient to satisfy the
21  requirements of the prima facie standard for alter ego.  See
22  SPL Shipping Ltd., 2007 Westlaw 831810, at *4.
23       It should also be noted that the plaintiff has
24  presented reasonable grounds for its allegations of a prima
25  facie case.  Therefore, the defendant's motion to vacate the
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

34

81FGMTCC
1   attachment, and to the extent that it is a motion to dismiss
2   the allegations in the first amended complaint also, is denied.
3        So ordered.  Now it would appear that a scheduling
4   order is appropriate, since the case is going forward.  How
5   long to complete discovery?  And what about the other
6   defendants, or is Finecom the only defendant that's been --
7        MR. DUFFY:  Finecom is the only defendant that we've
8   been able to attach funds of, your Honor.
9        THE COURT:  I imagine that Finecom wants to proceed
10  expeditiously because it has money at stake.
11       MR. PAULSEN:  I'd expect that would be the case,
12  although we're talking about discovery that is cross-border and
13  takes time.
14       THE COURT:  I usually don't do scheduling conferences
15  on the record, so I'm prepared to go off the record unless the
16  parties want this on the record.
17                        o0o
18
19
20
21
22
23
24
25

              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300