UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

PINK GOOSE (CAYMAN) LTD.,                    :
                                             :        08 CV 2351 (HB)
                        Plaintiff,           :
                                             :        ECF CASE
        - against -                          :
                                             :
SUNWAY TRADERS LLC,                          :
SUNWAY GROUP, SUNWAY TRADING GROUP LTD.,:
SUNWAY GROUP INTERNATIONAL HOLDINGS,    :
SUNWAY GROUP IMPORT, SUNWAY LOGISTICS,   :
and LINTON EQUITIES B.V.I.,                  :
                                             :
                        Defendants.          :

-------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO VACATE MARITIME ATTACHMENT


                    LENNON, MUPRHY & LENNON, LLC
                    The GrayBar Building
                    420 Lexington Avenue, Suite 300
                    New York, New York 10170
                    (212) 490-6050
                    (212) 490-6070

                    *Attorneys for Plaintiff*
                    *Pink Goose (Cayman) Ltd.*


Charles E. Murphy, Esq.
Anne C. LeVasseur, Esq.

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

STATEMENT OF FACTS .................................................................................................3

ARGUMENT.....................................................................................................................6

POINT ONE
PINK GOOSE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL
ADMIRALTY RULES B AND E(4)(f) ..............................................................................6

POINT TWO
PLAINTIFF HAS ALLEGED AN ADMIRALTY CLAIM AGAINST SUNWAY
GROUP FOR BREACH OF CHARTER PARTY ............................................................14

POINT THREE
SUNWAY GROUP'S RELIANCE ON *STOLT-NIELSON V. EDIBLE OIL TRADING*
IS MISPLACED BECAUSE ITS FACTS ARE EASILY DISTINGUISHABLE............................20

POINT FOUR
ASSUMING *ARGUENDO* THAT PINK GOOSE MUST CONFIRM THE AWARD
IN THE UNITED KINGDOM UNDER ENGLISH LAW, THE ATTACHMENT
SHOULD BE SUSTAINED BECAUSE A CLAIM TO CONFIRM WOULD BE
PURSUANT TO THE CHARTER PARTY ..............................................................22

CONCLUSION.................................................................................................................23

## INTRODUCTION

Plaintiff, Pink Goose (Cayman) Ltd. ("Pink Goose" or "Plaintiff"), by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this memorandum of law in opposition to Sunway-Group Co. Ltd.'s ("Sunway Group") motion to vacate maritime attachment. Pink Goose's attachment against Sunway Group should be sustained because this Court validly issued the attachment order pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure ("Rule B") and in accord with the United States Court of Appeals for the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith*, 460 F.3d 434 (2d Cir. 2006). The attachment order was proper because: (1) Pink Goose has a valid *prima facie* admiralty claim against Sunway Group arising out of a charter party contract dated July 4, 2001 for the carriage of a cargo of bananas to Russia; (2) Sunway Group cannot be found within the Southern District of New York or within any other federal judicial district; (3) Sunway Group concedes that it has a property interest in the funds attached in the District; and (4) there is no statutory bar to the attachment. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Accordingly, for the reasons set forth herein, Pink Goose has satisfied its burden under Supplemental Admiralty Rule E(4) to show cause why the attachment should not be vacated.

In its Verified Complaint, Pink Goose alleged a valid *prima facie* admiralty claim that Sunway Group is either the alter ego or successor-in-interest of Sunway Traders, LLC ("Sunway Traders") and, therefore, that Sunway Group is liable for Sunway Traders' breach of a charter party with Pink Goose for the M/V ARCTIC GOOSE dated July 4, 2001. On August 7, 2002, Pink Goose, the vessel's owner, obtained a London arbitration award against Sunway Traders, the vessel's charterer, in the sum of $78,494.79 in respect of demurrage, *i.e.*, liquidated damages

1

for delay in loading and/or discharging cargo, and $572,250.00 in respect of detention. The award further provided that Sunway Traders was required to pay all costs and fees incurred in the arbitration. Importantly, Sunway Group does not dispute that a properly pled alter ego claim that alleges breach of a maritime contract constitutes a valid *prima facie* admiralty claim.

Sunway Group's argument is a narrow one. It contends that Pink Goose does not have an admiralty claim notwithstanding that Pink Goose has already obtained an arbitration award against Sunway Traders and notwithstanding that Sunway Group does not challenge the sufficiency of the alter ego and successor-in-interest allegations in the Verified Complaint. Instead, Sunway Group bases its argument on the fact that the arbitration award is more than three years old and, therefore, is not entitled to confirmation pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified in the Federal Arbitration Act at 9 U.S.C. § 201 *et seq.* ("New York Convention"). Specifically, Sunway Group argues that "an action to confirm the London arbitration award as a judgment of this Court is barred by statute and any claim on the arbitration award that the plaintiff might bring in London to confirm the award to a judgment of the English court is not an admiralty claim under English law, and thus not the subject of an admiralty claim as required by Rule B." *See Sunway Group Memorandum of Law at 2.*

Respectfully, Sunway Group's argument is fatally flawed because *inter alia* the United States Court of Appeals for the Second Circuit has specifically held that a request made of this Court to recognize and enforce a British foreign judgment that confirms a maritime arbitration award arises under this Court's admiralty and maritime jurisdiction. In *Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir 1987), which itself was a Rule B case, the Second Circuit held that a claim for enforcement of a British judgment, which judgment

2

confirmed a London arbitration award, asserted a maritime claim since an admiralty court has

jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim. *Id.*

citing *International Sea Food Ltd. v. M/V Campeche*, 566 F.2d 482 (5th Cir 1978). Based on the

foregoing, even assuming *arguendo* that Pink Goose will be required to seek confirmation of the

2002 arbitration award in the United Kingdom, under U.S. law Pink Goose has nevertheless

alleged a valid *prima facie* admiralty claim.[1]  Additionally, as is demonstrated by the

accompanying declaration by Michael Smith, the position is the same under English law, *i.e.*,

any English action to confirm the arbitration award would itself be considered within that court's

admiralty jurisdiction.  For these reasons, and for the reasons explained more fully below, the

attachment should be sustained.

## STATEMENT OF FACTS

Pink Goose is the owner of the M/V ARCTIC GOOSE, which it chartered to Sunway

Traders pursuant to a charter party contract dated July 4, 2001 for the carriage of a cargo of

bananas to Russia. *Verified Complaint at ¶ 5.*  Disputes arose under the charter party in respect

of Sunway Traders' failure to pay outstanding sums for vessel demurrage and vessel detention

that were due and owing to Pink Goose. *Id.*  Sunway Traders breached the charter party when it

failed to pay these outstanding amounts to Pink Goose. *Id.*

Pursuant to the arbitration clause of the charter party, Pink Goose commenced London

arbitration proceedings against Sunway Traders, who were the charterers, and Prodmix-Yug

Ltd., who was the consignee. *Verified Complaint at ¶ 6.*  On August 7, 2002 the arbitrator made

---

[1] In point of fact, Pink Goose is not limited to seek confirmation of the arbitration award in the U.S. or U.K. as
Sunway Group suggests.  Instead, Pink Goose may bring foreign confirmation proceedings in any number of
countries where Sunway Group conducts its business.  *See, e.g. Flame Maritime Ltd. v. Hassan Ali Rice Export Co.*,
2007 U.S. Dist. LEXIS 64470, 07 Civ. 4426 (WHP)(S.D.N.Y. Aug. 31, 2007)(Court sustained Rule B attachment in
support of Pakistani action that confirmed London arbitration award where the award was time-barred under New
York Convention).  Thus, Sunway Group's contention that English law must apply to any foreign confirmation
proceedings is incorrect.

an award in Pink Goose's favor in the sum of $78,494.79 with respect to demurrage and $572,250.00 with respect to damages for detention. *Id.* Sunway Traders was ordered to pay costs and fees incurred in the arbitration. *Id.* The arbitration award is attached as Exhibit 1 to the Verified Complaint. *Id.* In response to the award against it, Sunway Traders failed not only to pay any part of the award, but also actively thwarted all of Pink Goose's attempts to collect by continuing its business of importing bananas into Russia but under various aliases and/or through various other related company names including Sunway Group. *Verified Complaint at ¶ 7.*

Pink Goose initiated this action and prayed for the issuance of an ex parte order of maritime attachment pursuant to Supplemental Admiralty Rule B of the Federal Rule of Civil Procedure against the defendants, including Sunway Traders and Sunway Group, to obtain jurisdiction and to obtain pre-judgment security for its claim that was the subject of the arbitration. *Verified Complaint at ¶ 8.*

Pink Goose alleged that Sunway Group is the alias, alter-ego, partner, joint venturer and/or successor-in-interest of Sunway Traders. *Verified Complaint at ¶ 10-28.* In this regard, Sunway Traders was merely a shell-corporation through which the other defendants, including Sunway Group, conducted its business of chartering vessels and importing bananas into Russia, or vice versa. *Verified Complaint at ¶ 11.* The Verified Complaint alleged with particularity that Sunway Traders and Sunway Group share or shared common ownership, operation, and premises in St. Petersburg, Russia. *Verified Complaint at ¶ 12-21.* It was further alleged that in an effort to frustrate creditors such as Pink Goose, Sunway Traders reorganized itself into Sunway Group, which currently carries out or directs the same business of Sunway Traders. *Verified Complaint at ¶ 14.*

Pink Goose further alleged with particularity that Sunway Traders and Sunway Group are or were operated, controlled and managed as a single economic enterprise which is ultimately controlled by common and overlapping directors, officers, and managers from their base of operations in St. Petersburg, Russia. *Verified Complaint at ¶ 21.* Among the common and/or overlapping directors, officers, and/or managers are Mr. Igor Khaiak, Mr. Sergey Okhremenko, and Mr. Shalmi Benjaminov. *Id.* By way of example, Mr. Shalmi Benjaminov, who is the president and majority shareholder of Sunway Traders, is also the president and CEO of Sunway Group.

The Verified Complaint further alleged that by email of October 16, 2007, one or all of the defendants within the Sunway Group recognized their overlapping relationship with Sunway Traders when they inquired about the possibility of chartering one of Pink Goose's ships. *Verified Complaint at ¶ 23.* The email stated that any future charter must be "subject to Owners [Pink Goose's] official confirmation that they will not act by any means against Charterers/shippers/receivers for any matters not connected with this charterparty." *Id.* This is a reference to the dispute that was the subject of the London arbitration and is the subject of the instant lawsuit. *Id.* The email dated October 16, 2007 is attached to the Verified Complaint as Exhibit 2. *Id.*

Based on the foregoing, the Verified Complaint alleged that Sunway Traders and Sunway Group should be considered as a single economic unit with no corporate distinction between them, rendering each liable for the debts of the other, and all assets of the Sunway Group susceptible to attachment and/or restraint for the debts of Sunway Trading. *Verified Complaint at ¶ 24.*

The Verified Complaint prayed for issuance of Rule B attachment in the total amount of $988,606.86 against all defendants. *Verified Complaint at ¶ 30, prayer for relief at B.* It also prayed that this Court recognize and confirm the arbitration award, or alternatively enforce any foreign judgment confirming the arbitration award, rendered on the claims set forth herein as a judgment of this Court. *Verified Complaint prayer for relief at C.* It further prayed that this Court enter judgment against Sunway Traders and Sunway Group in the amount of $988,606.86. *Verified Complaint prayer for relief at E.*

On March 14, 2008, this Court issued an Ex Parte Order of Maritime Attachment in the amount of $988,606.86. Pursuant to that Order, the following garnishee banks attached the following amounts on the following dates: American Express Bank attached $395,000 on March 19, 2008; HSBC attached $67,900 on March 19, 2008; Citibank attached $300,000 and $100,000 on April 2, 2008; and Deutsche Bank attached $125,706.86 on April 2, 2008. Thus, Pink Goose is presently fully secured in the amount of $988,606.86.

## ARGUMENT

### POINT ONE

### PINK GOOSE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Pink Goose has carried its burden to demonstrate that this Court's attachment order was validly issued. Under Supplemental Admiralty Rule B, an order of maritime attachment must issue upon a minimal *prima facie* showing provided that the defendant cannot be found within the district in which the assets are sought to be attached. Supplemental Admiralty Rule B provides, in relevant part:

> If a defendant is not found within the district…, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the

process. The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. Rule B(1). As recently summarized by the Court of Appeals for the

Second Circuit:

To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. [Fed.R.Civ.P. Supp. Rule B(1).] If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the defendant's property located within the district. The order of attachment may be requested and granted ex parte, though notice of the attachment to the defendant via appropriate service is required. Id. Supp. Rules B(2), E(3).

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 438. "The power to grant attachments in admiralty is an

inherent component of the admiralty jurisdiction given to the federal courts under Article III of

the Constitution," and its "historical purpose has been two-fold: first, to gain jurisdiction over an

absent defendant; and second, to assure satisfaction of a judgment." *Id. Accord Winter Storm*

*Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, in respect of a defendant's right to challenge the validity of a maritime

attachment under Supplemental Admiralty Rule E(4)(f), the Second Circuit held in *Aqua Stoli*

that a plaintiff need only demonstrate that the attachment order was properly issued, *i.e.*, (1) that

it has a valid *prima facie* admiralty claim; (2) the defendant cannot be found within the district;

(3) the defendant's property may be found in the district; and (4) there is no statutory bar. Once

the plaintiff has made such a showing, a properly issued attachment order may be vacated only if

the defendant can prove any of four limited circumstances, none of which Sunway Group has

7

alleged or proved in this case. This standard was later restated and followed by Chief Judge

Wood in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y.

2006) where the court held:

> Furthermore, "[w]henever property is arrested or attached, any person claiming an
> interest in it shall be entitled to a prompt hearing at which the plaintiff shall be
> required to show why the arrest or attachment should not be vacated or other
> relief granted consistent with these rules." Rule E(4)(f) of the Supplemental
> Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil
> Procedure (Supplemental Rule E(4)(f)"). The Court of Appeals for the Second
> Circuit has recently, for the first time, spoken "directly on the showing necessary
> to vacate a maritime attachment under Rule E," *Aqua Stoli Shipping Ltd.,* 2006
> WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12 – holding that "once a
> plaintiff has carried his burden to show that his attachment satisfies the
> requirements of Supplemental Rule B, a district court may vacate an attachment
> only upon [certain] circumstances," which "can occur where 1) the defendant is
> present in a convenient adjacent jurisdiction; 2) the defendant is present in the
> district where the plaintiff is located; or 3) the plaintiff has already obtained
> sufficient security for a judgment." *Id.*, 2006 WL 2129336, at *1, 2006 U.S. App.
> LEXIS 19302, at *2.

*Id.* at 8. While it is a plaintiff's burden to prove that it has complied with the technical

requirements of Supplemental Admiralty Rule B, it is the moving party's burden to prove one of

the limited equitable bases for vacatur. The Second Circuit held as follows in *Aqua Stoli*:

> We therefore hold that, in addition to having to meet the filing and service
> requirements of Rules B and E, an attachment should issue if the plaintiff shows
> that 1) it has a valid prima facie admiralty claim against the defendant; 2) the
> defendant cannot be found within the district; 3) the defendant's property may be
> found within the district; and 4) there is no statutory or maritime law bar to the
> attachment. Conversely, a district court must vacate an attachment if the plaintiff
> fails to sustain his burden of showing that he has satisfied the requirements of
> Rules B and E. We believe vacatur is appropriate in other limited circumstances.
> While, as we have noted, the exact scope of a district court's vacatur power is not
> before us, we believe that a district court may vacate the attachment if the
> defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a
> convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam
> jurisdiction over the defendant in the district where the plaintiff is located; or 3)
> the plaintiff has already obtained sufficient security for the potential judgment, by
> attachment or otherwise. n.5.

n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Aqua Stoli*, 460 F.3d at 445. Former Local Rule 12, to which the Second Circuit cited in note 5

of *Aqua Stoli*, provided as follows:

Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the part of the plaintiff, be entitled to an order requiring that plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with these rules or the supplemental rules.

*Id.*

The Second Circuit emphasized that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." *Id.* at 447. Moreover, the Second Circuit held that upon the plaintiff's showing that the attachment was properly ordered, and that it complied with the requirements of Rules B and E, the "defendant bears the burden of "establish[ing] any equitable grounds for vacatur." *Id.* at 436. As explained above, the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but merely to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff establishes that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *Id.* at 444. Once a plaintiff has established the technical requirements required by Rule B, the burden then shifts to the defendant to establish the three limited bases for vacatur. *Id.* As indicated above, *Aqua Stoli* held that it is improper for a

district court to engage in a fact-intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing.

Further, in *Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A.*, 2007 U.S. Dist. LEXIS 50260, 2007 AMC 1993 (S.D.N.Y. 2007), Judge Preska recently summarized that "[a]lthough the Court of Appeals has not stated exactly what a plaintiff must show to make out a '*prima facie* admiralty claim,' many district courts that have examined this issue since *Aqua Stoli* have adopted the 'limited inquiry contemplated by *Aqua Stoli*' and have adopted a basic definition of the term *prima facie.*" *Id. Transportes Navieros Y Terrestes* confirmed that a plaintiff need not prove its case or present evidence.    All that is required is a proper verified complaint.

Additionally, Chief Judge Wood and Judge Castel both have held that it is unnecessary to examine the factual underpinnings of a plaintiff's alter-ego claims in a Rule (E)(4)(f) post-attachment hearing. *See Tide Line, supra. See also Transcript of Rule E(4)(f) hearing dated September 29, 2006 in Route Holding Inc. v. IOOI, 06 Civ. 3428 (PKC)* annexed to Murphy Declaration as Exhibit 1.  The facts presented in *Tide Line* and *Route Holding* cases are similar to the instant matter, and their respective holdings, denying the defendants' alter ego based challenges, decisively establish that Pink Goose has met its burden in this case. As confirmed by Chief Judge Wood in *Tide Line* and Judge Castel in *Route Holding*, a plaintiff no longer needs to show that it had "reasonable grounds" or "probable cause" to make alter ego claims against a defendant in order to maintain the attachment.  Rather, at the Rule E(4)(f) hearing a plaintiff must only show that has alleged a *prima facie* valid alter ego claim in order to satisfy Rule B. Both the *Tide Line* and *Route Holding* cases are instructive on this point and will be briefly summarized below.

In *Tide Line*, the plaintiff obtained a Rule B order of maritime attachment against the vessel charterer, Eastrade, and its alleged alter-ego, Transclear. Subsequently, Transclear moved to vacate the attachment claiming that it was not an alter-ego of Eastrade. Tide Line then produced evidence that Transclear had paid Eastrade's debts where it had no connection to the underlying contract. Transclear then claimed that is had a legal basis upon which to make the payments on Eastrade's behalf. In response, Judge Wood determined that all of these factual arguments were unnecessary and irrelevant in the context of a post-attachment hearing. Particularly, she found that in light of *Aqua Stoli*, the Court should exercise a very limited inquiry into the underlying facts. She reasoned that when applying for a Rule B attachment, a plaintiff need not provide any supporting evidence; its complaint should suffice. In keeping with this principal, she held that *Aqua Stoli* implies that a plaintiff is likewise not required to provide evidence showing that it has a claim against defendant, to carry its burden under Supplemental (E)(4)(f) at the post-attachment hearing. Judge Wood noted that "in seeking to have an attachment vacated, a defendant may argue that a plaintiff does not have a "valid prima facie admiralty claim against the defendant." However, she further clarified that such a challenge must be based on insufficiency of pleading. *See Tide Line, Inc.*, 2006 U.S. Dist. LEXIS 95870 at *22. (S.D.N.Y. 2006)("it does not appear that the basis of defendant's argument may be that plaintiff has not provided sufficient evidence of such a claim"). Thus, the only way for a defendant to show that a plaintiff does not have a maritime claim against an alter ego is to prove that the pleadings themselves are insufficient to state such a claim.

Likewise, in *Route Holding*, following the *Tide Line* precedent, the district court limited its analysis to determining whether the plaintiffs had sufficiently pled their alter ego claims. The plaintiffs had alleged that defendant Marina World was an alter-ego because it dominated and

11

controlled the principal, IOOI. The district court found that plaintiffs' pleadings were enough to uphold the attachment, finding that "the plaintiff alleges that MWS is the alter-ego of IOOI, but it does not simply leave it as a conclusory allegation. It goes on to allege that the reason it believes it is the alter-ego is because IOOI dominates an disregards MWS' corporate form to the extent that MWS is actually carrying on IOOI's business and operations as if the same were its own. It further goes on to allege that MWS, acting as paying agent, acts a paying agent or arranges for other nonparties to satisfy the debts and obligations of IOOI.  It seems to me a sufficient allegation." *See Transcript of Route Holding at 12, lines 14-24, attached to Murphy Declaration a Exhibit 1.*

The case of *Wajilam Exports Singapore Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275 (S.D.N.Y. 2006) is also relevant. In *Wajilam Export* the defendant moved to dismiss the plaintiff's complaint pursuant to *inter alia* Rule 12(b)(6) and moved to vacate plaintiff's maritime attachment on the basis that the complaint against it failed to sufficiently allege an alter ego claim. Judge Lynch converted the motion into a motion for judgment on the pleadings under Rule 12(c) and then denied the motion because plaintiff's allegations were sufficient for the defendant to commence an investigation of the facts and to frame a responsive pleading. Judge Lynch held that this was especially true because the relevant allegations concerned the defendant's own corporate relationships and practices, such that there was no apparent reason why the defendant should have difficulty investigating plaintiff's claims. *Id.* at 282-283.

Moreover, Judge Berman recently reached the same conclusion in *Flora Maritime Ltd. v. Inter Eltra Int'l GMBH,* 06 Civ. 6372 (RMB)(S.D.N.Y. June 21, 2007)(copy attached to Murphy Declaration as Exhibit 2.) and held as follows:

> The Third Amended Verified Complaint cites several grounds for Plaintiff's claim
> that Defendants are alter egos of Inter Eltra, including, among others, "such unity

12

of ownership" that "the corporate form of [Inter Eltra] has been disregarded"; "overlapping ownership, management, personnel and purposes" such that Inter Eltra and Defendants "did not operate at arm's length"; "common addresses [and] common contact information"; and "intermingling of funds." These factors are "among the list of factors a court may consider when alter ego status has been pled, and are sufficient to state a valid admiralty claim." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 06 Civ. 15375, 2007 U.S. Dist. LEXIS 18562, at *11 (S.D.N.Y. Mar. 15, 2007); *see also Wm. Passalacqua Builders v. Resnick Developers*, 933 F. 2d 131, 139 (2d Cir. 1991). Defendants "can hardly argue that [they] ha[ve] been unable to commence an investigation of the facts and frame a responsive pleading, because [they] ha[ve] already done both." *Wajilam Exp. (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

*Flora Maritime Ltd.* at 5. Citing *Wajilam*, the *Flora Maritime* court held that "In conformity with the requirements of Rule B and E, Plaintiff has 'allege[d] sufficient facts to support an inference' of alter ego liability. *Wajilam Exports Singapore Pte*, 475 F.Supp. 2d at 283.'" As such, the *Flora Maritime Ltd.* court upheld the maritime attachment.

As applied to the facts of the instant case, it is clear that Pink Goose's allegations, which are summarized *supra* in its Statement of Facts section, including the alter-ego allegations against Sunway Group, clearly set forth a valid *prima facie* admiralty claim within the holdings of *Aqua Stoli, Tide Line, Route Holdings, Transportes Navieros Y Terrestes, S.A.*, *Wajilam Exports Singapore Pte. Ltd.*, and *Flora Maritime Ltd.* To wit, Pink Goose has specifically alleged *inter alia* that Sunway Group, as the alter ego or successor-in-interest of Sunway Traders, is liable for Sunway Traders' breach of the charter party with Pink Goose. The Verified Complaint described in detail such facts as common offices, overlapping directors and managers, and the manner in which Sunway Traders attempted to frustrate creditors, such as Pink Goose, by continuing its same fruit importation business but in the name of Sunway Group.

It is not disputed that Pink Goose has obtained an arbitration award against Sunway Traders for breach of the charter party dated July 4, 2001 and that Pink Goose is currently

seeking confirmation of that award in this Court.  Should confirmation in New York prove

impossible, Pink Goose shall soon be seeking confirmation of the award in a foreign court such

as the High Court of Justice in England.  Significantly, Sunway Group's challenge that Pink

Goose's admiralty claim, which was the basis for the arbitration award, somehow loses its

maritime flavor during the confirmation stage is totally unsupported by any U.S. authority.  In

fact, the basis of Sunway Group's challenge is specifically undercut by *Victrix S.S. Co. S.A.*,

*supra*, wherein the Second Circuit Court of Appeals held that a claim for enforcement of a

British judgment, which judgment confirmed a London arbitration award, asserted a maritime

claim because an admiralty court has jurisdiction over a claim to enforce a foreign judgment that

is itself based on a maritime claim.  Similarly, Sunway Group's argument that an English action

to confirm the award could not be considered admiralty in nature is inaccurate.  The Declaration

of Michael Smith explains precisely why a claim to confirm the arbitration in an English court

can be considered an admiralty claim under English law.

### POINT TWO

### PLAINTIFF HAS ALLEGED AN ADMIRALTY CLAIM
### AGAINST SUNWAY GROUP FOR BREACH OF CHARTER PARTY

The fact that Plaintiff has already obtained an award against Sunway Group's alter ego is

not a valid basis for vacatur of the maritime attachment.  Sunway Group is incorrect that Pink

Goose loses its admiralty claim upon the issuance of the London Arbitration award.[2]  Stated

differently, it is well-settled that this Court has admiralty jurisdiction to recognize a foreign

judgment that confirms a maritime arbitration award.  It is likewise well-settled that Rule B is an

---

[2] It is noteworthy that the arbitration is not closed insofar as the arbitration award dated 7 August 2002 at page 10 provided that Sunway Traders shall pay Pink Goose's costs and that the arbitrator retained jurisdiction to make an award of costs.  Pink Goose's costs in prosecuting the arbitration are about £17,500.  No part of the award has been paid.

appropriate remedy to enforce a maritime arbitral award or foreign judgment confirming a maritime arbitral award.

In *Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir 1987) the United States Court of Appeals for the Second Circuit held that the United States District Court for the Southern District of New York had admiralty jurisdiction over a claim to enforce a British judgment that confirmed a London arbitration award. In *Victrix*, plaintiff Victrix chartered its ship to defendant Salen. Salen breached the charter party and subsequently filed bankruptcy in Sweden. The Swedish bankruptcy court suspended all creditor suits against Salen. Although Victrix filed a claim in the bankruptcy proceeding, it also commenced London arbitration pursuant to the charter party and obtained an award against Salen. Subsequently, the High Court, Queen's Bench Division, entered judgment on the award under Section 26 of the British Arbitration Act, 1950. Thereafter, Victrix filed suit in the Southern District of New York and obtained a Rule B attachment against Salen. Victrix moved to confirm the London arbitration award and to enforce the British judgment. Salen cross-moved to vacate the attachment on the basis of the stay issued by the Swedish bankruptcy court. On the basis of the bankruptcy proceeding, Judge Carter vacated the attachment. The district court did not decide whether to enforce the London arbitration award or the British judgment, deferring decision on these matters to the Swedish bankruptcy court. No order was entered with respect to the attached funds, which by stipulation had been paid into the registry of the district court. Victrix appealed from the order vacating the attachment.

In *Victrix*, the Second Circuit Court of Appeal defined the issue as whether comity considerations oblige the courts of this country to defer to a bankruptcy proceeding of another country as to the enforcement of an arbitration award and a money judgment based on maritime

claims entered against the bankrupt in a third country. The Court affirmed the order vacating

attachment and remanded to the district court with directions to enter an order transferring the

attached funds to the liquidator for disposition pursuant to subsequent orders of the Swedish

bankruptcy court. In reaching its conclusion, however, the Court held that Victrix's Rule B

attachment action that sought enforcement of the British judgment that confirmed the maritime

arbitration award constituted a valid admiralty claim. Specifically, the Second Circuit Court of

Appeals held as follows:

> *The federal suit was initially a proper invocation of the District Court's admiralty
> jurisdiction since it presented a claim for breach of a charter party...The
> additional claim for enforcement of the British judgment asserted a maritime claim
> since an admiralty court has jurisdiction of a claim to enforce a foreign judgment
> that is itself based on a maritime claim. International Sea Food Ltd. v. M/V
> Campeche,* 566 F.2d 482 (5th Cir. 1978).

* * *

> Under federal law, the recognition of foreign judgments and proceedings is
> governed by principles of comity. *See Hilton v. Guyot,* 159 U.S. 113, 164, 40 L.
> Ed. 95, 16 S. Ct. 139 (1895). Federal courts generally extend comity whenever the
> foreign court had proper jurisdiction and enforcement does not prejudice the rights
> of United States citizens or violate domestic public policy. *See id.* at 202-03;
> *Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., supra,* 773 F.2d 452 at
> 457.

*Victrix S.S. Co. S.A.*, 825 F.2d at 713 (emphasis added). Based on the foregoing, therefore, a

district court has admiralty jurisdiction over a claim to enforce a British judgment that confirms a

London maritime arbitration award.

Also instructive is the case of *Good Challenger Navagante S.A., v. Metalexportimport

S.A.*, 06 CV 1847 (KMK)(S.D.N.Y. July 17, 2006)(copy attached to Murphy Declaration as

Exhibit 3), wherein the district court recently sustained a maritime attachment obtained to

enforce an English Judgment that confirmed a 1983 London arbitration award. Like in this case,

16

defendant argued that the attachment should be vacated on time-bar grounds. Specifically, Judge

Karas sustained the attachment and held as follows:

> Defendant first argues that plaintiff's attempts to attach the remaining funds awarded in the 1983 arbitration are untimely. Specifically, Defendant argues that under the United Nations Convention of Recognition and Enforcement of Foreign Arbitration Awards ("Convention"), the arbitration award cannot be enforced in the United States, as more than three years have passed since it was awarded. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."). According to Defendant, this dispute falls under the Convention because Good Challenger seeks enforcement or recognition of an arbitration award in a nation other than the nation where the award was made. *See Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 196 (3d Cir. 1999)(citing Convention).
>
> In this case, the arbitration award was originally granted in 1983. However, Plaintiff's Complaint seeks to enforce the judgment of the arbitration award, granted by the English court in 1993 and served on S.C. Metalexportimport on August 15, 2001, with permission from the English courts. This judgment was entered on January 17, 2003. A further award of costs was ordered in 2005. Section 207, however, "applies only to 'enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards,'" which are governed by principles of comity. *Sarhank Group v. Oracle Corp.*, No. 01 Civ. 1285, 2004 WL 324881, at *3 (S.D.N.Y. Feb. 19, 2004). Therefore, the time limitations for Plaintiff's action would not be governed by § 207, and instead, would be governed by New York's statute of limitations.
>
> Defendant, however, argues that the statute of limitations to enforce the English judgment has run. While the New York statute of limitations is twenty years, N.Y.C.P.L.R. § 211(b), New York's borrowing statute dictates that where the Plaintiff is not a resident of New York, the Court should apply whichever statute of limitations is shorter after comparing New York and the jurisdiction where the action arose. *See* N.Y.C.P.L.R. § 202. Both the arbitration award and the judgment that Plaintiff seek to enforce were obtained in England, thus, the six-year English statute of limitations applies. As the judgment was entered in England in 2003, this statute of limitations has not yet run.

*Good Challenger Navagante S.A.*, 06 CV 1847 (KMK)(S.D.N.Y. July 17, 2006) at 2-5. Thus,

the *Good Challenger* case stands for the propositions that (1) a plaintiff is entitled to Rule B

attachment in an action to enforce an English judgment that confirmed a London maritime

17

arbitration award, and (2) that a defendant to a Rule B action may not successfully challenge the attachment on the basis that the arbitration award is more than three years and, thus, not entitled to confirmation under the New York Convention.

A similar result was reached in *Flame Maritime Ltd. v. Hassan Ali Rice Export Co.*, 2007 U.S. Dist. LEXIS 64470, No. 07 Civ. 4426 (S.D.N.Y. Sep. 3, 2007). In 1999 the plaintiff obtained a London maritime arbitration award against the defendant. Six years later, a Pakistani court confirmed the arbitration. Subsequently in 2007, Judge Pauley issued an ex parte order of maritime attachment to secure the plaintiff's arbitration award and the Pakistani judgment. In response to defendant's challenge that the arbitration award could not be confirmed under the New York Convention due to its age, the Court sustained the attachment on the basis that an action in New York to confirm the Pakistani judgment that confirmed the arbitration award constituted a valid *prima facie* admiralty claim under *Aqua Stoli.*

Finally, in *MTC Levant-Line GmbH, Breman, v. Pan-Pacific Int'l & Transportation Co. Ltd.*, 06 CV 3506 (JGK)(S.D.N.Y. Jan. 15, 2008)(copy attached to Murphy Declaration as Exhibit 4), Judge Koeltl recently denied a motion to vacate under facts similar to the ones in the instant case. In *MTC Levant-Line*, plaintiff commenced London arbitration against defendant for breach of charter party. The plaintiff then filed an action in this Court against the defendant, as well as several others who plaintiff alleged were the alter egos of defendant, seeking a Rule B attachment to obtain security for the claim in London arbitration. After Judge Koeltl issued the attachment order, the London arbitration award issued in favor of plaintiff as against the primary defendant. Plaintiff succeeded in attaching the funds of one of the alter ego defendants. The alter ego defendant then moved to vacate the attachment on two grounds. First, it argued that the attachment must be vacated because it was not a party to the arbitration. Second, the defendant

argued that it was not the alter ego of the judgment debtor and thus plaintiff failed to make a

prima facie claim under Rule B. Judge Koeltl sustained the attachment.

In denying defendant's motion to vacate the attachment, the *MTC Levant-Line* court held

as follows:

> The defendant argues that the attachment should be vacated because Finecom was not named as a party in the underlying arbitration. Specifically, the defendant contends that the Court may not use Rule B to attach the funds of a foreign defendant who is alleged to be the alter ego of a party to a foreign arbitration wherein an award was issued. The defendant's argument is not properly focused on the issue before the Court at this time.

> The plaintiff asserts that it will seek to have the underlying arbitration award against the defendant Pan-Pacific Transportation confirmed against Finecom on the basis that Finecom was an alter ego of the other defendant. The issues on this motion are limited to whether the plaintiff satisfies the elements of a Rule B attachment. Claims based on allegations of alter ego may satisfy the prima facie admiralty case prong if the plaintiff seeks to enforce an arbitration award in an admiralty case against an alter ego of a party against whom the arbitration award was made. *See SPL Shipping Ltd. v. Gujatat Cheminex Ltd.*, No. 06 CV 15375, 2007 WL 831810 at *3, Southern District of New York, March 15, 2007. If the plaintiff has made out a prima facie case, the attachment may not be vacated at this stage, even though the defendant was not a named party to the London arbitration.

> \* \* \*

> The defendants do not cite any cases standing for the proposition that the plaintiff may not enforce an arbitration award against an alter ego where the Court's jurisdiction is based on its admiralty jurisdiction, and several judges in this court have affirmed maritime attachments against alleged alter egos of parties against whom arbitration awards were entered. *See SPL Shipping, Ltd.*, at *3, collecting cases. In any event, the only question presently before the Court, as in *Tide Line*, is whether the plaintiff has made a prima facie alter-ego claim sufficient to attach the funds of the defendant under Rule B.

*MTC Levant-Line GmbH,* 06 CV 3506 (JGK)(S.D.N.Y. Jan. 15, 2008) at 27, 30-31. The Court

proceeded to hold that the factual allegations in the verified complaint stated a valid alter ego

claim and, therefore, sustained the maritime attachment.

When the *Victrix*, *Good Challenger*, *Flame Maritime*, and *MTC Levant-Line* holdings are applied to Sunway Group's motion to vacate, it becomes clear that the age of the 2002 London arbitration award against Sunway Traders is not a basis to vacate the maritime attachment. That is, the above-cited cases hold that even when a London arbitration award is more than three years old, and thus not entitled to confirmation of the New York Convention, Rule B attachment is appropriate to secure a plaintiff's admiralty claim. Stated differently, a plaintiff does not lose its admiralty claim when it is forced to seek confirmation of an arbitration award in a foreign country. Recall that in *Good Challenger*, the Court upheld the attachment even though the London arbitration award was eighteen years old.

For the foregoing reasons, Sunway Group's motion to vacate should be denied.

## POINT THREE

### SUNWAY GROUP'S RELIANCE ON *STOLT-NIELSON V. EDIBLE OIL TRADING* IS MISPLACED BECAUSE ITS FACTS ARE EASILY DISTINGUISHABLE

In *Stolt-Nielson Transportation Group B.V., v. Edible Oil Trading Corp.*, 2008 U.S. Dist. LEXIS 19787, 06 Civ. 703 (NRB)(S.D.N.Y. March 7, 2008), Judge Buchwald recently denied a plaintiff's Rule 15(a) motion to amend its complaint to add an allegation for Rule B relief. In *Stolt-Nielson*, the plaintiff vessel owner obtained a London arbitration award against the defendant vessel charterer. Subsequently, the plaintiff filed an action in this Court to confirm the arbitration against the defendant charterer as well as against an alter ego defendant. Most importantly, at the time when plaintiff commenced its action in this Court it *did not* seek a Rule B attachment. Subsequently, this Court entered judgment against both defendants. After the Court had issued judgment against both defendants, it then denied plaintiff's request to amend the complaint to add a prayer for Rule B attachment. The *Stolt-Nielson* court reasoned as follows:

Rule B has two purposes: [F]irst, attachment provides a means to assure satisfaction *if a suit is successful*; the second purpose is to insure a defendant's appearance in an action . . . ." Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002)(internal quotation marks and citation omitted)(emphasis added). These purposes show that the rule's impact is designed to be prospective in nature: the goal is to create incentives that will bring both the parties and their assets before a court so that a decision can be rendered that will resolve the dispute. The phrase "if a suit is successful" underscores this prospective outlook because it envisions that the property will be available before any judgment is made and thus, execution of that judgment will be relatively simple.

In contrast with this function, petitioner seeks to use Rule B retroactively. Although it asserts that "[t]he complaint praying for attachment need not be the initial complaint," Pet. Br. 6 (quoting the Advisory Committee Notes to the 2005 Amendments to the Fed. R. Civ. P.), petitioner does not address the fact that it has already obtained a default judgment (for the full amount demanded in the petition) against Edible and that its alter ego, LIO, is also in default. Given this posture, petitioner's motion is essentially a plea for us to allow it to use Rule B as judgment collection device. Under the circumstances of this case, Rule B is not available for such a purpose.

Neither purpose of Rule B - i.e., to bring respondents and their property before this Court - will be advanced by a Rule B attachment at this point. Having already defaulted, the respondents have no reason to appear and challenge the petition. In addition, respondents presumably know that a judgment exists against them in this forum; thus, it is highly unlikely that they would send assets to or through New York.

*Stolt-Nielson Transportation Group B.V.,* 2008 U.S. Dist. LEXIS 19787 at *4-*6. The Court proceeded to explain that the plaintiff was not permitted to amend its complaint to add a prayer for Rule B relief after the Court had already rendered judgment against the defendants.

The *Stolt-Nielson* court noted that plaintiff might be forced to seek collection of its judgment in Turkey, commenting that "pursuing foreign defendants in their home countries is simply a cost of international business and we do not find it appropriate to stretch American admiralty rules and to distort the judgment collection procedures of New York state so that a Dutch company has a better chance of collecting from a Turkish company." *Id.* at *9. Importantly, however, Judge Buchwald's discussion of the availability of Rule B attachment

21

retrospectively should not be confused with the Second Circuit's discussion of the availability of Rule B as a pre-judgment remedy. In *Aqua Stoli*, the Court held as follows:

> If [defendant] Gardner Smith's assets are presently located in the Southern District and Gardner Smith cannot be "found" within the district, [plaintiff] Aqua Stoli is entitled under Rule B to attach those assets in aid of jurisdiction and to serve as security. The fact that Gardner Smith has substantial assets in another country is of no moment. Federal admiralty law allows a plaintiff to seize assets and bring suit wherever such assets may be found precisely because, while other assets may be available, plaintiffs may encounter difficulties in tracking them down. Should it wish, Gardner Smith has the option of relieving itself of this particular attachment by posting other security. Rule E does not require Aqua Stoli to go to Australia or any other country to sue Gardner Smith or to obtain security as long as Gardner Smith's assets are available to Aqua Stoli here.

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 444.

The instant case is distinguishable from *Stolt-Nielson* because Pink Goose has not yet obtained a judgment against Sunway Traders or Sunway Group. Instead, Pink Goose has properly used Rule B as a pre-judgment remedy to provide security for its admiralty claim that was the subject of the London arbitration. The attachment is necessary because *inter alia* it provides security for any judgment that Pink Goose may obtain from this Court recognizing any foreign judgment that confirms the award. It likewise secures any judgment that this Court may issue finding that Sunway Group is the alter ego of Sunway Traders. For these reasons, Sunway Group's reliance on *Stolt-Nielson* is misplaced.

## POINT FOUR

### ASSUMING *ARGUENDO* THAT PINK GOOSE MUST CONFIRM THE AWARD IN THE UNITED KINGDOM UNDER ENGLISH LAW, THE ATTACHMENT SHOULD BE SUSTAINED BECAUSE A CLAIM TO CONFIRM WOULD BE PURSUANT TO THE CHARTER PARTY

For a discussion of the relevant issues of English law, Pink Goose respectfully refers the Court to the accompanying Declaration of Michael Smith, English Solicitor and partner of Mills & Co., which it offers in reply to the Declaration of Anthony Robert Swinnerton.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons Pink Goose respectfully requests that this

Court deny Sunway Group's Motion to Vacate Maritime Attachment.

Dated: May 9, 2008
     New York, NY

                      LENNON, MURPHY & LENNON, LLC
                      *Attorneys for Plaintiff*
                      *Pink Goose (Cayman) Ltd.*

                      By: _____
                          Charles E. Murphy (CM 2125)
                          Anne C. LeVasseur (AL 3333)
                          420 Lexington Avenue, Suite 300
                          New York, NY 10170
                          (212) 490-6050 – phone
                          (212) 490-6070 – facsimile
                          cem@lenmur.com
                          acl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on May 9, 2008 a copy of the foregoing MEMORANDUM OF LAW

IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT was filed

electronically and served by mail on anyone unable to accept electronic filing. Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or

by mail to anyone unable to accept electronic filing. Parties may access this filing through the

Court's CM/ECF system.

                      By: _____
                          Charles E. Murphy