UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PINK GOOSE, (CAYMAN) LTD.,

           Plaintiff,

-against-

SUNWAY TRADERS LLC,
SUNWAY GROUP, SUNWAY TRADING
GROUP LTD., SUNWAY GROUP
INTERNATIONAL HOLDINGS,
SUNWAY GROUP IMPORT, SUNWAY
LOGISTICS, and LINTON EQUITIES B.V.I.,

           Defendants.
------------------------------------------------------------x

ECF CASE

08 Civ. 02351 (HB)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE MARITIME ATTACHMENT

Pursuant to Supplemental Rule E(4)(f) of the Federal Rules of Civil Procedure, Defendant Sunway-Group Co. Ltd. ("Sunway-Group"), by and through its undersigned counsel, Richard A. Zimmerman and Patrick C. Crilley, *of counsel,* respectfully submits this Reply Memorandum of Law in Support of its Motion to Vacate the attachment of its property unjustly restrained in connection with the Court's Order of Attachment issued on March 6, 2008, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). As a result of the ex-parte Order of Attachment issued in this case, the Plaintiff, Pink Goose, (Cayman) Ltd. ("Pink Goose") has restrained funds in the amount $988,606.86 in this district belonging exclusively to Sunway-Group.

Pink Goose cannot allege a valid admiralty claim in seeking recognition of its 2002 London arbitration award here in the United States. Pink Goose, for reasons unknown, sat on its

1

rights to bring any such confirmation proceedings in this country. Its rights to do so have expired. Pink Goose does not dispute this fact.

Rather, almost six years after the fact, Pink Goose alleges that it still can bring confirmation proceedings in some undisclosed jurisdiction of its choosing, without any support whatsoever that the proceedings would not be similarly time barred in that undisclosed jurisdiction. As explained in the May 2nd, 2008 Declaration of Mr. Swinnerton, and further supported in the May 16th, 2008 Second Declaration of Mr. Swinnerton (submitted herewith) it is certain that any confirmation proceedings brought in London to reduce the award to a judgment would not be considered an admiralty action in that jurisdiction. It logically follows that if, under English law, Pink Goose's potential action to confirm its award to a London judgment would not support an arrest or attachment in England, that same action should not support an arrest or attachment proceeding in this District. The attachment of Sunway-Group's property should be vacated.

## ARGUMENT

### Point I

### PINK GOOSE CANNOT ALLEGE A VALID ADMIRALTY CLAIM AGAINST SUNWAY-GROUP FOR BREACH OF A CHARTER PARTY

The Plaintiff in a maritime attachment action carries the burden at a post-attachment hearing to prove *inter alia* that "it has a valid prima facie admiralty claim against the defendant." See *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Pink Goose claims that disputes under an admiralty contract, the July 4, 2001 Charter Party between it and the separate and long since defunct defendant Sunway Trading Ltd., is support enough for an admiralty claim against Sunway-Group. In fact, this Court will not in any way be concerned in

these proceedings with disputes arising under the July 4, 2001 Charter Party. The disputes concerning that contract have already been arbitrated and an award issued in August 2002.

This Court will in no way be required to interpret peculiar or specialized maritime issues between the parties under that Charter Party contract. Nor can it be said that any of the terms and conditions of that contract are in any way relevant to the present action in this District. All of those issues have already been determined in the London arbitration.

Rather, the issue before this Court is a simple common law question with respect to piercing the veil of corporate identity to hold an alleged "alter ego" or "successor-in-interest" liable for the debts of another. There is no particular "admiralty" nature in such a proceeding.[1]

As Pink Goose is statutorily time barred from bringing an action for recognition of a foreign arbitration, it must instead rely solely on the possibility that it might be able to obtain a judgment on the arbitration award in London (or some other undisclosed jurisdiction).

Unfortunately for Pink Goose, an action on the award in England is distinctly not recognized under English law as an "admiralty action" and would not support an arrest or attachment action in the United Kingdom.[2] We respectfully refer the Court to the Second Declaration of Mr. Swinnerton (submitted herewith) for a detailed discussion of the present English law on this issue, which fully supports the conclusion that under English law today, an

---

[1] We do not argue that timely enforcement of the London arbitration award under The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards would not support an "admiralty" claim in this District, however, as Pink Goose is time barred from such a proceeding, as it does not deny, that issue is not before the Court.

[2] Pink Goose, in its Opposition Memorandum, asserts that it can bring an action to recognize the London arbitration in any jurisdiction or country of its choosing, which we surmise to mean that it may well be able to find a jurisdiction somewhere in the world that might recognize such an action as an "admiralty action." It seems patently unfair, almost six years after the rendering of the award, to require a defendant to guess where such an action might be brought so as to research if such an action would actually be considered "admiralty" in nature in that jurisdiction. We have limited our argument herein to Pink Goose's lack of an "admiralty claim" under U.S. law and English law. Pink Goose bears the burden, which it has not met, of showing that some other presently unknown jurisdiction might recognize an action on an award as an "admiralty" action. *See Shipping Financial Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (stating that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.")

3

action on an arbitration award is simply not an "admiralty action" and will not support an arrest or attachment in the United Kingdom. It should certainly not support an attachment action in this District.

POINT II

NONE OF PINK GOOSE'S CITED CASES ADDRESSED
THE ISSUE OF THE NON-ADMIRALTY NATURE OF AN
ACTION ON AN ARBITRATION AWARD UNDER ENGLISH LAW

All of the cases cited in Pink Goose's Opposition Memorandum are distinguishable from the present case as none of the defendants in those previous cases ever raised the issue of the nature of an action on an arbitration award under English law. Accordingly, the various courts did not hear argument on that issue and, it would seem, the parties involved wrongly assumed that an action to confirm an arbitration award in England maintained its "admiralty nature." As so eloquently explained by Mr. Swinnerton in his two Declarations submitted on this motion, that assumption is not accurate.

Pink Goose relies on *Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987) for the proposition that an U.S. admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim. (Opp. Memo Page 14-16, *et. seq.*) There is no indication in *Victrix* that either the Second Circuit or the court below heard any argument with respect to how English courts treated an action to confirm an arbitration award. This issue was certainly not the key holding of the Second Circuit in *Victrix*, as the Court was primarily concerned with the issue of comity in a foreign bankruptcy proceeding. As stated by Circuit Judge Jon O. Newman,

> This appeal presents the issue whether comity considerations oblige the courts of
> this country to defer to a bankruptcy proceeding of another country as to the

4

    enforcement of an arbitration award and a money judgment based on maritime claims entered against the bankrupt in a third country.

*Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d at 711. The arbitration award considered by the Court in *Victrix* was not time barred, as in our case, so there could be no argument over the sufficiency of the court's admiralty jurisdiction on that basis. Nor does it appear that anyone raised the issue of whether the English judgment was in fact based on an "admiralty action" or a mere common law action. Toward that issue, it is noteworthy that the *Victrix* was decided prior to the English case, *The Bumbesti* [1999] 2 Lloyds Rep 481, which clarified that an action on an arbitration award is not an "admiralty action" under English law.

  In the *Victrix*, the Second Circuit cited *International Sea Food Ltd. v. M/V Campeche*, 566 F.2d 482 (5th Cir. 1978), a case which can also be distinguished on the basis of its differing facts and the reasons for the Court's ruling. In the *Campeche* the Fifth Circuit considered the issue if a United States district court has subject matter jurisdiction in admiralty to enforce a foreign maritime decree which awarded money damages to the plaintiff on a claim for collision. The Plaintiff's had a judgment issued by Supreme Court of Judicature, High Court (in Admiralty), of the Isle of Barbados against three shipowners in personam and against their ship, M/V Campeche, in rem. *Id.*, at 483. The Plaintiff's brought a Rule B attachment action in the Dist. Ct. of Alabama, Southern District, against the four defendants plus their marine insurance company, alleging the insurance proceeds were "credits and effects" of the original defendants within that district, and praying for a writ of foreign attachment to garnish the insurance proceeds pursuant to Admiralty *Supplemental Rule B* of the Fed.R. Civ. P. *Id.* The District Court refused to grant the writ; the Fifth Circuit reversed.

The Fifth Circuit ruled in the affirmative, finding two grounds on which to invoke the admiralty jurisdiction of the Court, neither which are found in our case.

First off, the *Campeche* Court relied upon the language of an ancient Dist. Ct. of Maine case, *The Centurion*, Case No. 2,554, District Court, D. Maine, 1839 U.S. Dist. LEXIS 16 (D.Me.1839), (where the issue was whether an admiralty court had jurisdiction to award a sum of money to a crew member whose captain refused to pay him for his participation in a salvage expedition after an arbitrator had already decided the basic salvage.) The *Campeche* Court, quoting *Centurion*, held

> In resolving the question the court distinguished the case before it involving a prior arbitration award from one involving a judgment of another admiralty court:
> "If it had been decided by a regular decree of a court of admiralty by which a specific sum were awarded to the libellant, this court could have taken cognizance of the case, <u>because a court of admiralty has jurisdiction to carry into execution the decree of another court of admiralty</u>."
> The *Centurion* court went on to find a maritime aspect which permitted it to enforce the decree, but the quoted language suggests that <u>an admiralty court has jurisdiction to enforce any judgment of another admiralty court</u> regardless of its lack of maritime flavor. [Underlining added.]

*Campeche*, at 485.

As a second basis to invoke the court's admiralty jurisdiction, the Fifth Circuit held,

> We are persuaded that jurisdiction is proper for a second reason. Foremost [the insurance company] concedes that the interpretation of the marine insurance policy held by the other defendants and the existence of any liability on the policy will be hotly contested issues when this case is eventually tried. That marine insurance is a maritime contract within the jurisdiction of an admiralty court has long been settled. *Insurance Co. v. Dunham, 78 U.S. 1, 20 L. Ed. 90 (1870)*. The marine insurance aspect of the case adds a maritime flavor and further argues for jurisdiction in an admiralty court which has expertise in such matters.
> \*\*\*
> Admiralty courts are uniquely equipped to deal with questions of marine insurance, regardless of whether state law or general maritime law is applied.

*Campeche*, at 485.

6

These reasons found in *Campeche* to invoke the admiralty jurisdiction of the court simply do not exist in our case. Unlike the plaintiff in *Campeche,* Pink Goose will not have a "judgment of another admiralty court" when or if it brings an action in England on the arbitration award. *The Bumbesti* expressly states that an action on an arbitration award is not an admiralty action.

Nor is there, or will there be, before this Court any issue of interpreting an admiralty contract, such as a marine insurance policy as found in *Campeche,* or even a charter party. The Court in this case will not be required to interpret the July 4, 2001 Charter Party, nor any other contract of a uniquely maritime flavor. Pink Goose's allegations against the "alter ego" defendants are merely common law veil piercing allegations without any unique maritime flavor.

The remaining District Court cases cited in Pink Goose's Opposition Memorandum are neither binding on this Court or in any manner particular persuasive. We shall briefly distinguish these cases as follows:

*Good Challenger Navagante S.A., v.Metalexportimport S.A.,* 06 Civ. 1847 (KMK)(S.D.N.Y. July 17, 2006) - the defendant in this action did not challenge the English judgment as having no admiralty nature. The issue was not raised by the defendant or addressed by the court. Rather the defendant challenged the attachment on the basis that the New York Convention on Recognition of Foreign Arbitral Awards time barred the claim, and on various other grounds including laches and the improper service of the writ of attachment. The court noted that the plaintiff was not even seeking to obtain recognition of the 1983 arbitration award, but rather was seeking only to enforcement of a 2001 English judgment. Contrary to Pink Goose's assertions at page 18 of its Opp. Memo., this case does not stand for the proposition that a defendant may not successfully challenge the attachment on the basis that the arbitration award is more than three years [old] and, thus not entitled to confirmation under the New York Convention. The Court

made no such ruling with respect to the Convention, it merely stated the Convention did not apply to the facts or pleadings in this case. The issue of maritime jurisdiction of the court was not raised by the defendant or addressed by the Court.

*Flame Maritime Ltd. v. Hassan Ali Rice Export Co.,* 2007 U.S. Dist. LEXIS 64470, 07 Civ. 4426 (WHP) (S.D.N.Y. August 31, 2007) – The defendant in this case called upon the equitable powers of the court to find the plaintiff's claim "frivolous" because it sought security well in excess of a Pakistani judgment in plaintiff's favor. Looking to vacate on equitable grounds, defendant alleged that the plaintiff already had full security for its claims. The court found no proof that the defendant had given any such security and refused to vacate. The court did, however, lower the quantum of security sought by the writ. This case, frankly, has nothing to do with the issues presented in our case.

*MTC Levant-Line Gmbh, Breman, v. Pan-Pacific Int'l & Transportation Co. Ltd.,* 06 Civ. 3506 (JGK) (S.D.N.Y. Jan. 15, 2008) – This case involved the defendant challenging the alter ego allegations of the complaint, which we have not challenged on this instant motion. Furthermore, the plaintiff in this case had a valid arbitration award that was not time barred by the Convention.

The balance of Pink Goose's cited cases, in fact its entire argument in Point I of its Opp. Memo., pages 6-14, discuss the validity of alter ego and successor-in-interest allegations in upholding an attachment. Again, we have not challenged the validity of the alter ego allegations on this motion, but reserved our client's rights to raise this issue on a later motion, putting the Plaintiff to its proofs of the allegations, if the attachment is not here vacated.

At this stage it is necessary for the Plaintiff to establish the subject matter jurisdiction of the court, which must be affirmatively proven by the Plaintiff. The court may not infer subject matter jurisdiction. *See Shipping Financial Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.

1998) (stating that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.")

The Plaintiff has let lapse its chance to enforce the award under the New York Convention; any action on the award in London to obtain an English judgment is not an admiralty claim; the Plaintiff has no basis to sustain a Rule B attachment here in New York to attempt collection on a six year old arbitration award and its attempt to do so is contrary to New York law.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, it is respectfully requested that this Court grant defendant Sunway-Group Co. Ltd's motion to vacate the order of attachment, release its attached funds and dismiss the Verified Complaint in this action.

Dated: May 2, 2008
       New York, NY

Respectfully submitted,

Patrick C. Crilley (PC 9057)
Of Counsel to
Richard A. Zimmerman (RZ 0963)
Attorney for Defendant
Sunway-Group Co. Ltd.
233 Broadway – Suite 2202
New York, NY 10279
(212) 619-1919

To:   Charles E. Murphy, Esq.
      Nancy R. Peterson, Esq.
      Anne C. LeVasseur
      LENNON, MURPHY & LENNON, LLC
      The Graybar Building
      420 Lexington Avenue, Suite 300
      New York, NY 10170
      (212) 490-6050