Richard A. Zimmerman, Esq.
Attorney for Plaintiff
233 Broadway – Suite 2202
New York, NY 10279
Richard A. Zimmerman (RZ 0963)
(212) 962-1818
Patrick C. Crilley (PC 9057)
*Of Counsel*
(212) 619 -1919


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**PINK GOOSE, (CAYMAN) LTD.,**

                         **Plaintiff,**

              **-against-**

**SUNWAY TRADERS LLC,**
**SUNWAY GROUP, SUNWAY TRADING**
**GROUP LTD., SUNWAY GROUP**
**INTERNATIONAL HOLDINGS,**
**SUNWAY GROUP IMPORT, SUNWAY**
**LOGISTICS, and LINTON EQUITIES B.V.I.,**

                        **Defendants.**
-------------------------------------------------------x

                 **ECF CASE**

                 **08 Civ. 02351 (HB)**

### <u>SECOND DECLARATION OF ANTHONY ROBERT SWINNERTON</u>

Pursuant to 28 U.S.C. §1746, Anthony Robert Swinnerton, Solicitor of the Supreme

Court, of Cannongate House, 64, Cannon Street, London EC4N 6AE declares in this Second

Declaration as follows:

1.     I am the same Anthony Robert Swinnerton who made a declaration in this matter

on the 2nd May 2008.

2.     This second declaration is made to respond to a declaration of Michael Smith

made on May 9, 2008, in opposition to Sunway-Group Co. Ltd's Motion to Vacate.  In particular



I wish to deal with the *"SAINT ANNA"* decision relied on by Mr. Smith. I did not refer to this decision in my first declaration because it has been overruled and is therefore, in my view, irrelevant. As this is not accepted by Mr. Smith, I have to respond to this point and explain why he is wrong.

3.      I do not agree with Mr. Smith that:

> *"there will be circumstances, when the claim leading to the award involves maritime matters, that a claim to enforce the Award will be a maritime claim"*

as stated in paragraph 2 of Mr. Smith's declaration. I find his wording vague and question whether, on his case, there are equally circumstances when a claim to enforce an award will <u>not</u> be a maritime claim and, if so, what are the criteria for deciding on which side of the line the claim falls. I submit this lack of clarity demonstrates an inherent flaw in his argument. A type of claim (such as a claim to enforce an arbitration award) either is or is not a maritime claim and if it is, then it will be a maritime claim for all purposes.

4.      Mr. Smith has correctly quoted the wording of the relevant parts of Section 20(1) of the Supreme Court Act 1981 which sets out the admiralty jurisdiction of the High Court. However I disagree with Mr. Smith where he says at paragraph 4 that, *"an arbitration award on a claim pursuant to a charterparty falls within Section 20(2)(h)"*.

5.      I note that at this stage he appears to refer to all arbitration awards in contradiction to what he says in paragraph 2.

6.      Mr. Smith seeks to argue that the decision in the *"BUMBESTI"* does not correctly reflect English Law and he relies instead on the decision in the *"SAINT ANNA"*. As Mr. Smith says, both the decisions in the *"BUMBESTI"* and the



*"SAINT ANNA"* are first instance decisions but I consider that Mr. Smith has over

generalised the position as to precedent in respect of English Court decisions.

7.    I attach as Exhibit 1 hereto a copy of the relevant paragraphs of

*Halsbury's Laws of England* dealing with the decisions of co-ordinate Courts (paragraphs

1244 to 1245) and I draw attention to the statement in paragraph 1244 to the effect that

> *"Where, however, a judge of first instance after consideration has come to a definite decision on a matter arising out of a complicated and difficult enactment, the opinion has been expressed that a second judge of first instance of co-ordinate jurisdiction should follow that decision; and the modern practice is that a judge of first instance will as a matter of judicial comity usually follow the decision of another judge of first instance unless he is convinced that the judgment was wrong. Where there are conflicting decisions of courts of co-ordinate jurisdiction the later decision is to be preferred if reached after full consideration of earlier decisions."* [Underlining added.]

8.    I also refer to paragraph 1245 which states that

> *"a long-standing decision of a judge of first instance ought to be followed by another judge of first instance, at least in a case involving the construction of a statute of some complexity, unless he is fully satisfied that the previous decision is wrong".* (Underlining added.)

9.    On this basis, as I demonstrate, Mr. Justice Aikens' decision is binding because he

has not followed the *"SAINT ANNA"* after careful consideration and his decision is the later

decision.

10.    Having set out the general principals as stated in Halsbury's Laws of England, I

analyse the decisions in the *"SAINT ANNA"* and the *"BUMBESTI"* and explain why the decision

in the *"BUMBESTI"* is to be preferred.

11.    The *"SAINT ANNA"* decision of Mr. Justice Sheen was made in 1983.  The

decision of Mr. Justice Aikens in the *"BUMBESTI"* was made in 1999.  Therefore on the basic

premise that the *"BUMBESTI"* is the later decision it should be followed in preference to the

*"SAINT ANNA"*.

12.     The *"SAINT ANNA"* was a case in which the defendant did not appear.  Whilst Counsel owes a duty to the Court, if he is unopposed, to address the Court on any arguments that he believes his opponent could have made, obviously there will be a difference to the extent of argument where there is no opposition in the case.  That must be contrasted with the *"BUMBESTI"* where both parties appeared by Counsel.  The *"SAINT ANNA"* was before the Court for one day whereas the *"BUMBESTI"* occupied three days suggesting, again, that the *"BUMBESTI"* was more carefully argued.

13.     The fact that the matter was not fully argued may be the reason why there are fewer authorities referred to in the judgment in the *"SAINT ANNA"*.  As can be seen from the front of the report Mr. Justice Sheen referred only to 5 cases in his Judgment whereas Mr. Justice Aikens referred to a total of 14 authorities.

14.     Of the cases referred to by Mr. Justice Sheen in the *"SAINT ANNA"*, Mr. Justice Aikens referred to the *"BELDIS"*; *Bremer Oeltransport v. Drewry*; and the *"ESCHERSHEIM"*. Mr. Justice Aikens does not refer to the *"HENRICH BJORN"* or *Tarmarea S.R.L. v Rederiaktiebolaget Sally*, to which Mr. Justice Sheen referred (although this does not mean that the cases were not cited to him in argument); but he does refer to a further 11 cases which were not referred to in Mr. Justice Sheen's Judgment.

15.     It is clear Mr. Justice Aikens gave careful consideration to Mr. Justice Sheen's decision in the *"SAINT ANNA"*.

16.     The decision in the *"BUMBESTI"* runs to about twice the length of the decision in the *"SAINT ANNA"* which also, I respectfully submit, suggests that Mr. Justice Aikens had given the matter more detailed consideration than Mr. Justice Sheen.

17.    Mr. Justice Sheen in his decision in the *"SAINT ANNA"* stated at page 640 left hand column that:-

> *"...an action based on an award is an action for the enforcement of the contract which contains the submission to arbitration... there can be no doubt that an action for the enforcement of a voyage charter is a claim within the Admiralty jurisdiction of this Court".*

But, in his Judgment at pages 638-639 right hand column Mr. Justice Sheen acknowledged that the recital in the writ correctly stated that:-

> *"it was an implied term of the arbitration agreement contained in the charterparty that each party would pay to the other any sum found due by the arbitrators appointed in accordance with that agreement".*

Which, at the very least, is contradictory. It is a point to which I will return later in this declaration when discussing the effect of an arbitration award.

18.    Mr. Justice Sheen having noted that there was no defence to the claim in the *"SAINT ANNA"* referred to *Russell on Arbitration* 20th Edition page 350, the *"BELDIS"* and *Commercial Arbitration* which stated that an action on an award is, effectively, not a claim within the Supreme Court Act Section 20(2)(h). In order to say (wrongly in my respectful opinion) that the learned editors of the textbooks and the Court of Appeal were wrong, he then relied upon *dicta* in the *"ESCHERSHEIM"* as follows:-

> *"in my opinion there is no good reason for excluding from the expression "an agreement for the use or hire of a ship" any agreement which an ordinary businessman would regard as being within it".* (per Lord Justice Cairns in the Court of Appeal) and

> *"I see no reason in that context for not giving to them their ordinary wide meaning"* (per Lord Diplock in the House of Lords).



19.    While the these *dicta* support the view that the words of the Supreme Court Act

Section 20(2)(h) should be construed in their usual way, that is not sufficient to establish that an

Arbitration Award is a claim within Section 20(2)(h).

20.    I should, at this point, mention that *"dicta"* do not have any binding force in

relation to legal proceedings.  What is relevant is the *"ratio decidendi."*  I refer to Halsbury's

Laws of England at paragraph 1237-1238 a copy of which I attach as Exhibit 2.  This makes it

clear that the underlying principal decided in a case is the *"ratio decidendi"* and this alone has

the force of law whereas *"dicta"* (cf Halsbury's at paragraph 1238) which is also referred to as

*"obiter"* or *"obiter dicta"* are merely statements which are not necessary to the decision and

have no binding authority on another Court, although they may themselves be "persuasive".  Mr.

Justice Sheen makes it clear, himself, that each of the statements that he relies on in the

*"ESCHERSHEIM"* is *"dicta"*.

21.    Mr. Justice Sheen then refers to the nature of an action based on an arbitration

award and the decision in *Bremer Oeltransport v. Drewry* in which the Court of Appeal said that

> *"the greater weight of authority is in favour of the view that in an action on the award the action is really founded on the agreement to submit the difference of which the award is the result…"*

22.    Mr. Justice Sheen relied on that decision.  He also considered that the later

decision of the Court of Appeal in the *"BELDIS"* was not consistent with that in *Bremer*

*Oeltransport*.  In the *"BELDIS"* Lord Justice Scott in the Court of Appeal said:-

> *"in my view it will be entirely wrong to hold that an action on an award arising indirectly out of such a maritime contract was included by the words of the above sections"* (referring to the relevant section of the Admiralty Courts Acts which were being invoked in order to arrest the ship).

I attach a copy of the decision in the *"BELDIS"* as Exhibit 3 hereto.

23.    Mr. Justice Sheen, therefore, relied on the fact that there were, in his view, conflicting Court of Appeal decisions which he considered left him free to decide which authority he would follow.  This is challenged by Mr. Justice Aikens at paragraph 23(5) of his judgment where he explains, correctly in my respectful submission, that there is no inconsistency between the decisions and that both cases establish that the submission to arbitration must be pleaded and proved.

24.    Accordingly, while Mr. Justice Sheen referred to the fact that the decision in *Bremer Oeltransport* was not referred to in the *"BELDIS"* it is, in my respectful opinion, not a case where Mr. Justice Sheen was free to decide which authority he should follow.  He should have followed the later authority, i.e. the *"BELDIS"*.

25.    The reason underlying Mr. Justice Sheen's judgment can be seen from the final paragraph of the decision where he said:-

> *"I cannot pretend that it does not give me pleasure to be able to decide this point as I have done, because the result enables this Court to do justice in a way which would be denied to it if creditors could not bring proceedings in rem merely because they faithfully honoured their agreement to submit to arbitration a dispute which is clearly within the Admiralty jurisdiction.  I have only heard argument from one side, but that argument was fully and fairly presented by Mr. Charlton, to whom I am indebted."*

26.    It seems, therefore, that Mr. Justice Sheen was anxious to do what he considered to be justice and, with the greatest respect, this may have coloured his decision in the case.

27.    Before leaving Mr. Justice Sheen's judgment I also refer, briefly, to the *"BELDIS"* (Exhibit 3).  This was a decision of the Court of Appeal.  As appears from the judgment of Sir Boyd Merriman at page 263 the issue as to whether or not the action arose out of a Charterparty or the Award appears to have surfaced in the Court of Appeal.  At the bottom of page 263 right hand column continuing on to page 264 left hand column the President stated:-



*"...as the validity of the arrest is at the root of the proceedings and raises <u>a point</u> <u>of great importance which has been very well argued by Counsel</u> on each side, I propose also to state my reasons for thinking that the judgment of the County Court Judge cannot in any event be supported."*[Underlining added.]

28.  He then stated at page 264:-

*"But in my opinion the claim in this action was not based upon that foundation at all.  It was an action upon the award."*

29.  He further stated at page 264:-

*"...I should not be prepared to hold, even if the matter were free from authority, that a claim upon an award held under the arbitration clause in a charter-party is a claim arising out of any agreement made in relation to the use or hire of a ship. I think that it is a common law claim upon an award and nothing else.*

30.    The decision of Lord Justice Scott (read by Mr. Justice Swift) is, in my submission, of further assistance.  Lord Justice Scott identified that there was an issue whether a claim on an award came within the admiralty jurisdiction and felt that that issue should be disposed of first.

31.    At page 274 left hand column Lord Justice Scott reviewed the affect of an arbitration award at the time that the County Court Admiralty Jurisdiction Amendment Act 1869 was passed and concluded that:-

*"It was unlikely that an action on an award would in 1869 be assigned by Parliament to the High Court of Admiralty; and in the absence of clear words it would be wrong so to interpret the Act even assuming the words to be wide enough to include it...With the above history of Admiralty jurisdiction both before and since 1840, it would in my judgment be plainly wrong to say that...a County Court has admiralty jurisdiction to entertain an action on an award upon a voluntary submission, merely because the arbitration was held pursuant to an arbitration clause in a charter-party for the reference of disputes arising out of that charter-party."*

32.    Mr. Justice Swift delivered a concurring judgment.

33.    In the circumstances it is clear that the Court of Appeal in the *"BELDIS"* carefully reviewed the issue of whether or not a claim on an arbitration award came within the



admiralty jurisdiction and unanimously decided that it did not.  I submit that there was a careful

consideration even though the point had not arisen in the court below.

34.    I turn now to the decision of Mr. Justice Aikens in the *"BUMBESTI"*, a copy of

which was attached to my first Declaration and, for the Court's convenience, a second copy of

which I now attach hereto as Exhibit 4.  In my respectful view, this being the later decision and

one in which the relevant authorities have been cited and it being a case where there was

argument for both sides, it is a decision to be preferred.  It is also, with respect to the learned

Judge, analytically sound.

35.    Mr. Justice Aikens states at paragraph 8 of his judgment that the first principal

issue is the nature of the claim to enforce the Award and *"whether the Admiralty has jurisdiction*

*in rem to hear and determine a claim to enforce the arbitration Award"* and at paragraph 9 he

says that *"Principal issue one: The nature of the claim to enforce Award"*.

36.    The possibilities suggested by Mr. Justice Aikens are that it could be a claim for a

debt being the sum awarded or a claim for liquidated damages for breach of an implied

obligation to fulfil the award.  He does not suggest that the substantive claim continues to have a

life of its own.

37.    Mr. Justice Aikens preferred the decision of the Court of Appeal in *Bremer*

*Oeltransport* saying that a claim on an award is a claim for damages for breach of the implied

term that an award would be honoured.  Mr. Justice Aikens then referred to the advice of the

Privy Council (a Committee of the House of Lords dealing with Appeals from Colonial Courts)

in *J. Bloemen Pty Ltd. v. Council of the City of Gold Coast* [1973] AC 115 where Lord Pearson

said that an Award, *"cannot be viewed in isolation from the submission under which it was*

*made"*.

38.    Mr. Justice Aikens then asked whether the claim to enforce the Award came within Section 20(2)(h). He then expressly considered the decision of the *"SAINT ANNA"* which, obviously, was cited to him in support of the argument that the claim did come within the Act.

39.    Having considered the statutory history of Section 20(2)(h) Mr. Justice Aikens carefully analysed the authorities beginning at paragraph 15 of his judgment. I do not believe that I can add anything to that analysis other than to note that the decision in the *"BELDIS"* had stood from 1936 to 1983 and that Mr. Justice Brandon (a very highly regarded commercial Judge, a Judge of the Court of Appeal and subsequently a Law Lord) had said in the *"ESCHERSHEIM"* that the *"BELDIS"* did not seem to be consistent with *Bremer Oeltransport* which was apparently not cited in the *"BELDIS"*.

40.    At paragraph 20 Mr. Justice Aikens referred to the *"SAINT ANNA"* and at paragraph 21 he referred to the fact that the *"SAINT ANNA"* had been followed in Hong Kong and Singapore and there were no authorities subsequent following it or dissenting from it in England. He also referred to the fact that the *"SAINT ANNA"* was not cited in the *"ANTONIS P LEMOS"*. I would add that it was not ever referred to by Mr. Justice Sheen in his judgement in the *"ANTONIS P LEMOS"* or by the Higher Courts even though it is usual for a Judge to draw Counsel's attention to a relevant authority of which the Judge is aware which he thinks Counsel has overlooked.

41.    Mr. Smith does not refer to the fact that Mr. Justice Sheen (on whose judgment Mr. Smith relies heavily) decided the *"ANTONIS P LEMOS"* at first instance and his judgment was overturned unanimously by the Court of Appeal whose decision was upheld unanimously by

the House of Lords suggesting that on that occasion, at least, Mr. Justice Sheen's judgment did

not find favour with the Higher Courts in England.

42.    Mr. Justice Aikens then gave his reasons for not following the *"SAINT ANNA"* at

paragraph 22 all of which, with the utmost respect, I consider to be compelling.

43.    I would further respectfully submit that the decision of Mr. Justice Aikens is

correct because of the English doctrine of merger.

44.    I refer to Halsbury's Laws at paragraph 1225 (copy attached hereto as Exhibit 5)

which sets out the proposition that when a judgment has been given the cause of action is merged

in the judgment and its place is taken by the rights created by the Judgment.  This prevents a

second claim being brought on the same cause of action.

45.    The position, in my submission, is the same in arbitration.  Once the award has

been issued the cause of action is merged into the award and replaced by the rights of

enforcement that arise in relation to an award.  In this respect I would respectfully differ from the

references in the text books which were cited by Mr. Justice Sheen in the *"SAINT ANNA"*.

46.    I would add that the learned editors of Mustill & Boyd on *Commercial

Arbitration* (Lord Mustill and Stuart Boyd Q.C.) in the 2001 Companion to the Second Edition

correct the note which they had previously made following the *"SAINT ANNA"* and refer to the

decision in the *"BUMBESTI"* which they consider to reflect the law (paragraph 418, copy

attached as Exhibit 6).

47.    Furthermore, the Second Edition of *Commercial Arbitration* Mustill & Boyd at

page 26 (copy attached as Exhibit 7) states that

> *"a valid award confers on the successful claimant a new right of action, in
> substitution for the right on which the claim was founded.  Every submission to
> arbitration contains an implied promise by each party to abide by the award of
> the arbitrator, and to perform his award.  It is on this promise that the claimant*

*proceeds, when he takes his action to enforce the award…the successful claimant is precluded by the award from bringing the same claim again in a fresh arbitration or action".*

48.    The decision in the *"BUMBESTI"* is also cited by Nigel Meeson QC in his textbook on *Admiralty Jurisdiction and Practice* (third edition) at paragraphs 2.76 and 2.78 where footnotes 190 and 195 state that the *"BELDIS"* was followed in the *"BUMBESTI"* and the *"SAINT ANNA"* was wrongly decided. I would emphasis the Mr. Meeson's book is the leading textbook on the subject of Admiralty Jurisdiction and Practice.

49.    The *"BUMBESTI"* has also received some support in New Zealand where it was relied on in the case of the *"IRINA ZHARKIKH"* [2001] 2 Lloyd's Law Reports 319 (copy attached as Exhibit 8; see page 327).

50.    I would now like to refer to the three matters which Mr. Smith relies on to say that the decision of Mr. Justice Sheen is to be preferred over that of Mr. Justice Aikens.

51.    In his paragraph 5(a) Mr. Smith says that Mr. Justice Aikens' views were *obiter*. With the greatest respect, I do not accept that the relevant parts of the decision are *obiter*. Mr. Justice Aikens found two reasons for dismissing the claim and it is wholly incorrect to say that one is *ratio decidendi* and the other is *obiter*. The reason for this is that he might have been appealed on one or both of the points. He made two findings and it is more than clear that the findings in relation to the claim not being within Section 20(2)(h) were *ratio decidendi*.

52.    In his paragraph 5(b) Mr. Smith refers to the fact that Mr. Justice Sheen was an Admiralty Judge. This is correct. Mr. Justice Sheen was well known for his "wet" work and as Admiralty Judge his work was predominantly connected with collision cases as can be seen from the list of decided cases reported in Lloyds Law Reports a copy of which is attached as Exhibit 9. With the greatest respect I do not consider that this means that his views on the meaning of the



statute have more weight than those of Mr. Justice Aikens who is, indeed, a well respected Commercial Court Judge. I refer to the judgment of the Master of the Rolls Lord Phillips in the Court of Appeal in *Times Newspapers and others -v- R* (copy attached as Exhibit 10) where, at paragraph 2 the Master of the Rolls praised the clarity of Mr. Justice Aikens' judgment.

53.     Mr. Justice Aikens sits in the Commercial Court which deals with complex cases arising out of business disputes, both national and international. There is particular emphasis on international trade, banking, commodity and arbitration disputes giving Mr. Justice Aikens no less standing than Mr. Justice Sheen.

54.     I attach as Exhibit 11, a list of the decisions reported in Lloyd's of Mr. Justice Aikens and, who was appointed as a High Court Judge in July 1999. This is shorter than that of Mr. Justice Sheen who sat as Admiralty Judge for 15 years up to his retirement just before his 75th birthday, but it is still an impressive list. Mr. Justice Sheen was not promoted either to the Court of Appeal or to the House of Lords. In addition, a perusal of Mr. Justice Aikens' list of decisions reveals the complexity of the cases which he has handled.

55.     Finally, while the reasons referred to under Mr. Smith's paragraph 5(c) have been dealt with above, I would like to respond to the specific decisions that Mr. Smith relies on in a little more detail.

56.     First Mr. Smith relies on the wide interpretation which the House of Lords said is applicable to Section 20(2)(h) in the *"ANTONIS P LEMOS"*. While in the *"ANTONIS P LEMOS"* Mr. Justice Sheen found, wrongly, that a sub-charterer's claim in tort for damages as a result of the vessel exceeding the maximum arrival draft at the discharge port was not a claim arising out of any agreement relating to the carriage of goods in a ship or the use or hire of a ship, the Court of Appeal and the House of Lords both found that it was. However the



distinction that has to be made is that the claim in that case had not been merged either into a judgment or an arbitration award and it is clear that the House of Lords and the Court of Appeal were seeking to give a broad meaning to the words so that they had commercial effect and so that a sub-charterer who could bring the claim in tort for negligence would not be shut out of his arrest.

57.    In addition, the *"BELDIS"* was not referred to in the *"ANTONIS P LEMOS"* and therefore was not expressly overridden by that case.

58.    The decision in the *"ANTONIS P LEMOS"* therefore does not assist Mr. Smith's argument.

59.    In this respect, I submit that the reasoning of Mr. Justice Aikens in paragraph 22(1) to (4) of the *"BUMBESTI"* is unassailable. It is clear that the claim is the action on the award, and following the Court of Appeal decision in *Bremer Oeltransport*, a claim on an award arises out of or is in connection with the agreement to refer disputes to the arbitration. This is not an agreement in relation to the use or hire of a ship.

60.    Whilst Mr. Smith, as he says in paragraph 12 of his statement, may believe that Mr. Justice Aikens was wrong, the *"BUMBESTI"* has not been appealed and, therefore, the Claimants who were represented by Messrs. Hill Dickinson (a highly eminent firm of maritime lawyers) and experienced Counsel appear not to have chosen to appeal the decision in the *"BUMBESTI"* suggesting that they accept that it was correct.

61.    The citation which Mr. Smith makes from the *Bremer Oeltransport* case at paragraph 16 of his report is, with respect, somewhat abbreviated. I set out below the full paragraph.

> *"The few cases which appear to support the view that an action may be brought upon the award in my view do not exclude in any event an action brought upon*

> *the agreement to refer differences, and for this purpose, in my view, the submissions are here sufficiently stated to be in the charter-party of Nov. 19, 1929. Without, therefore, finally determining whether an action may or may not be brought on an implied contract in the award itself, I am clearly of opinion that it may be brought upon an agreement containing a term to refer disputes, and that the present claim is properly pleaded as arising from such an agreement."*

62.    I believe that the first part of the paragraph is relevant showing the extreme degree of hesitancy which Lord Justice Slesser felt, and it is important to note that his wording is clearly *dicta* as he says he does not determine whether or not an action may be brought on an implied contract in the award and he is merely giving an opinion which is, certainly, not of any binding effect.

63.    This, in my respectful view, is not as forceful as the clear statements in Mustill & Boyd as to the effect of an arbitration award and also the parallel with the merger of the cause of action in a judgment as set out in Halsbury's Laws.

64.    The decision in *F.J. Bloemen Pty Ltd* on which Mr. Smith relies at paragraph 18 is one which was considered by Mr. Justice Aikens and is dealt with in paragraph 10 of his judgment. What the Privy Council is saying in *Bloemen* is that the award cannot be viewed in isolation from the submission, and that the party seeking to enforce the award must prove the agreement to arbitrate which gives the arbitrators their power to make the award. The decision is limited to the finding that where the contract provided at clause 35(c) that the claimant was entitled to interest and the claim for interest had not been referred to the arbitrator or dealt with by him then it was still open to the claimant to issue a Writ claiming the interest. However the claimant failed in *Bloemen* on the further ground that it had accepted a repudiatory breach and could not, therefore, claim interest.

65.    *Bloemen* was a case where the arbitrator did not have the power to award interest and therefore it was still open to look at the underlying contract in relation to the interest claim.

66.    While I agree that an arbitration award is a consensual resolution whereas a Court judgment is imposed I do not consider that the Privy Council's opinion detracts from my submission that the cause of action is merged in an arbitration award in the same way as it is merged in a judgment of the Court.

67.    I do not, therefore, consider that the *Bremer Oeltransport* case was endorsed by the Privy Council other than to the limited extent that the submission was contained in a contract made in London and was therefore made within the jurisdiction.

68.    For all the above reasons it is my respectful submission that the decision of Mr. Justice Aikens in *"BUMBESTI"* should be followed and that, accordingly, the application to enforce an arbitration award is not an Admiralty action within the meaning of Section 20(2)(h) of the Supreme Court Act 1981.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


_____

Anthony Robert Swinnerton


Executed on May 16, 2008.

London, England